UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11, Subchapter V |
| SMART COMMUNICATIONS HOLDING, INC., | Case No. 8:24-bk-7106-RCT |
| SMART COMMUNICATIONS HOLDING, LLC, | Case No. 8:24-bk-7108-RCT |
| Debtors._____/ | *Jointly Administered under Case No. 8:24-bk-7106-RCT* |

## JOINT CHAPTER 11 CASE MANAGEMENT SUMMARY

Smart Communications Holding, Inc. ("**Smart Comm FL**") and Smart Communications Holding, LLC ("**Smart Comm DE**" and collectively, the "**Debtors**"), pursuant to Local Rule 2081-1, hereby file their Joint Chapter 11 Case Management Summary (the "**Summary**"). For their Summary, the Debtors state the following:

### Introduction

On November 30, 2024 (the "**Petition Date**"), the Debtors filed with this Court Voluntary Petitions for Relief under Chapter 11 of Title 11 of the United States Code and made elections to proceed under Subchapter V pursuant to the Small Business Reorganization Act of 2019, as amended.

### Case Management Items

**Description of the Debtors' Businesses**

**Smart Comm FL**. Smart Comm FL is a Florida corporation formed in December of 2014. Smart Comm FL is the parent company and sole member of Smart Comm DE. Jonathan Logan ("**Jon Logan**") is the founder of the Smart Communications business (which was started in 2009), and is the sole officer and sole director of Smart Comm FL.

**Smart Comm DE**. Smart Comm DE is a Delaware limited liability company formed in August of 2023. Smart Comm DE was established to be an intermediate holding company, and was set up to receive a transfer of transferrable assets from Smart Comm FL in exchange for the equity interests in Smart Comm DE issued to Smart Comm FL pursuant to a Transfer Agreement between Smart Comm DE and Smart Comm FL. Smart Comm DE is wholly-owned by Smart Comm FL as its sole member. Jon Logan is the sole manager of Smart Comm DE.

**Summary of Business Operations**. The Smart Communications corporate group, comprising the Debtors and certain non-debtor subsidiaries,[1] is a top technology supplier to corrections facilities across the country. Smart Communications provides its customers with comprehensive inmate communications systems including telephone, video visitation, electronic messaging, streaming media platforms, and other services that are fully integrated through a single web-based dashboard, providing a single location for authorized staff to access all system administration, monitoring, reporting, data sharing and investigation tools. Smart Communications' client footprint has grown organically for 13 years, from a single account to more than 120 facilities throughout 29 states. Smart Communications' client footprint continues to grow, and the Debtors are focused on that trajectory.

Headquartered in Seminole, Florida, with various satellite offices located throughout the country, Smart Communications employs over 100 individuals, including strategically located and experienced account and technical service representatives.

As described more fully below, the technology used by the Debtors and their subsidiaries is owned and held by HLFIP Holdings, LLC ("**HLFIP**"), a Delaware limited liability company owned by Jon Logan, and is used by the Debtors under an exclusive licensing agreement with

---

[1] The non-debtor subsidiaries are Smart Communications Collier, Inc. ("**Smart Collier**"), Smart Communications Pasco, Inc., and Smart Communications US, Inc.

4880-6725-3495, v. 5

HLFIP (the "**Exclusive License**"), all as more fully described below. Under the exclusive license agreement, HLFIP is owed a royalty fee of 40 percent of Smart's net sales, which accrued fees are in excess of $80 million and growing. HLFIP made a demand for the Debtors to pay the outstanding amounts by the end of 2024 or the license would be terminated. In part because of the state court litigation described below, both because of certain interim orders entered and because of the enormous drain of time, energy, attention, and legal fees, the Debtors have been unable to make payments to HLFIP.

**Location of Debtors' Operations and Whether Leased/Owned**

The Debtors' operations are conducted largely from their principal offices located at 10491 72nd St., Seminole, FL 33777. The offices are leased from LOCO Florida, LLC, a Delaware limited liability company, an entity owned by Jonathan Logan.

The Debtors also have operations from leased locations, the leases for which are in the name of Smart Comm FL as the tenant:

1. A call center location at an approximately 4,100 square foot space in St. Marys, Georgia, leased from Watson Realty Corp, with a rent of approximately $4,200 per month;

2. A facility in Moorestown, New Jersey, with approximately 4,750 square feet leased from GGC Brennan Industrial LLC with a rent of approximately $5,000 per month; and

3. A facility in Vancouver, Washington, with approximately 4,000 square feet, leased from Mt View Business Plaza, LLC; Richard Jones as landlord, with a rent of approximately $4,500 per month.

**Reasons for Filing Chapter 11**

The Debtors have been mired in state-court litigation for the last two years since the untimely passing of James Logan, Jon Logan's father and business partner, in October 2022. Prior to his passing, James transferred his 50% interest in Smart Comm FL to the James Logan Family Trust, dated February 10, 2021 (the "**Trust**"). Soon after James Logan's passing, and following

3

her assumption as role of Trustee of the Trust, Janice Logan (James Logan's window and Jon Logan's estranged mother) weaponized the Trust's interest in Smart Comm FL in an attempt to extract grotesque sums of money from the business. By attempting to hold the Trust's interest in Smart Comm FL hostage and initiating scorched earth litigation against the company and her son, she hoped to achieve a buyout of untold multiples more than fair market value. After two years of litigation, the only result has been an obscenely wasteful diversion of time, attention, and resources, while the company has been handcuffed through injunctions and rebuffed by lending partners. Coupled with the threat of losing its exclusive license to HLFIP's technology, the ongoing, protracted litigation risks the viability of the Debtors and their ability to generate future revenue through third-party contracts with new and existing customers.

In addition to conceiving the original business idea and writing the business model for Smart Communications, Jon Logan is the founder and CEO of Smart Communications. He originated the business ideas and models for Smart Communications, and invented and developed all the intellectual property it uses. Jon Logan developed the idea for Smart Communications in 2008, and his father James Logan helped Jon Logan grow it. When Smart Communications began operating in 2009, Alexis Logan, James Logan's daughter, assisted with some administrative tasks and temporarily held the company stock in Trust for both Jim and Jon while Jim resolved some of his previous tax liabilities. After a falling-out in 2014 caused by Alexis's breach of the agreement to return the stock to Jon and his father James Logan, Alexis threatened to destroy the company if her new demand for retaining a 10% stock ownership interest was not met. Seeing that Jon needed to protect his ownership rights in any future business inventions, ideas or business models, in 2015 Jon Logan created his own company (HLFIP) to protect his future IP and innovative developments.

In 2015 Jon Logan, James Logan, and Alexis Logan agreed that Jon Logan would exclusively own and control any new intellectual property that he created from that day forward (the "**IP**").

In 2015, Smart Communications was a small company with only one stream of revenue (inmate email services) from a handful of correctional facility customers. At that time, Smart Communications had only a handful of employees. After the 2015 IP contract was signed, Smart Communications—under Jon Logan's leadership and with the benefit of the Exclusive License with HLFIP for the new Intellectual Property that Jon created and continued to create—transformed into an industry-leading provider of integrated correctional facility communications, safety, investigative, and automation technologies and services that reshaped how correctional facilities operated. In fact, upon implementing HLFIP's new technology, Smart Communications added, on average, 20 new correctional facility customers per year, including large correctional institutions such as the Pennsylvania Department of Corrections and the Federal Bureau of Prisons. With the technologies, know-how, products, and services that Jon Logan devised and the enhancements and new features that he came up with, the Exclusive License enabled Smart Communications to expand its offerings from a relatively simple kiosk-based inmate email system to a suite of proprietary communications technologies deployed on a custom-designed, correctional-grade tablet system with proprietary wireless charging stations. Smart Communications' marketing materials and contracts with government agency customers have highlighted Smart Communications' Exclusive License with HLFIP as part of its offerings.

Since 2015, Jon Logan assigned and continues to assign the rights to his intellectual property to HLFIP, and HLFIP has exclusively licensed and continues to exclusively license that intellectual property to Smart Communications through a license that is subject to a royalty-based fee. Initially, HLFIP and Smart Communications operated under an oral license that gave Smart

Communications an exclusive right to use the Intellectual Property, which was repeatedly referenced and acknowledged over the years, including by the late James Logan. That exclusive oral license agreement remained in place until August 2023, when it was reduced to writing. The license provided Smart Communications with an uninterrupted and exclusive license to the Intellectual Property.[2]

Both Smart Communications and HLFIP have made public statements that evidence the Exclusive License. As discussed above, Smart Communications' marketing and contract materials with its potential and actual customers describe the license and Smart Communications' use rights. Smart Communications' 2022 Independent Auditor's Report dated October 25, 2023, its 2022 Federal Corporation Income Tax Return dated October 30, 2023, its 2023 Independent Auditor's Report dated September 27, 2024, and its 2023 Federal Corporation Income Tax Return all acknowledge a debt to HLFIP for a royalty payment of 40 percent of Smart Comm's net sales. In fact, Smart Communications took expense deductions from revenue for the royalties owed to HLFIP on its tax returns. On its part, HLFIP has reported royalty *income* on its tax returns; that income created significant tax liabilities for HLFIP. In sum, Smart Communications and HLFIP reported royalty expense and income, respectively, based on section 482 of the Internal Revenue Code (26 U.S.C. §482), and its attendant regulations. If it were determined that Smart Communications owes a lesser amount to HLFIP for royalties, Smart Communications would likely owe tax, penalties, and interest for prior years.

Following James Logan's passing, and for the last several years, the Debtors have been involved in litigation with Janice and Alexis over the Intellectual Property, the ownership and

---

[2] The oral and written licenses are collectively referred to as the "Exclusive License."

4880-6725-3495, v. 5

value of the Debtors, and the assets of the companies that have been and are being used to fund Janice and Alexis's luxurious lifestyles.

For example, in the litigation,[3] Smart Comm FL seeks to recover money used by James Logan to purchase luxury automobiles and exotic sports cars, cosmetic surgery, and personal items for Alexis, in addition to the $5,000 monthly allowance that Alexis received from Smart Communications without Jon Logan's knowledge (despite performing no services for Smart Communications) and the nearly $1 million in cash and checks taken from the company. Smart Communications also seeks recovery for Janice's unauthorized possession and use of the $4 million, 20-acre mansion that Smart Communications owns in Sarasota. Janice also refuses to relinquish company-owned cars, and other payments that are completely unconnected with any services or value provided to the Debtors.

From Janice's perspective, the state court litigation seeks to accomplish three primary things. First, the litigation seeks to determine what amounts are owed by the Debtors to HLFIP under the Exclusive License. Second, the litigation seeks to recover certain property which the Trust contends was improperly or fraudulently transferred by Smart Comm FL. Third, the Trust sought a dissolution, resulting in Smart Comm FL's election to purchase the Trust's shares under the provisions of § 607.1436 of the Florida Statutes.

The Debtors have filed these cases and will file shortly a plan that accomplishes the aforementioned litigation goals, thus obviating the wasteful costs, expenses, and delays of the state court litigation while preserving going-concern value for the Debtors. The Debtors, here, seek to accomplish through the plan most of the material demands made in the state court litigation

---

[3] The litigation is pending in the Circuit Court of the Twelfth Judicial Circuit in Sarasota County, Florida, styled *Jonathan Logan and Smart Communications Holding, Inc. v. Janice Logan, individually and as Truste of the James Logan Family Trust, dated February 10, 2021, the Estate of James Logan, Justin Peterson, Alexis Logan, and Unnamed Curator*, Case No. 2023-CA-1002-NC (consolidated with Case No. 2023-CA-1280-NC).

involving the Debtors in a more efficient manner, through one of two alternative paths. In the event the Debtors are required to pay a cure to assume the HLFIP license, the plan will restructure the agreements between the Debtors and HLFIP and the claims against the Debtors to allow the Debtors to operate moving forward, and provide plan treatment agreed upon by HLFIP and proposed treatment for the Trust and all remaining creditors. Alternatively, in the event the Debtors are not obligated to fund any obligations to HLFIP to use the license in the Debtors' operations, the Debtors will fund their proposed disposable income over a three to five year period as the Court determines and will liquidate the amount the Court determines to be necessary to satisfy the liability associated with the buyout right triggered and demanded by the Trust, consistent with the Bankruptcy Code.

Under either alternative plan treatment proposed by the Debtors' plan, non-insider creditors that are critical vendors to the Debtors' business operations will be funded and the Debtors will fully honor and assume all existing agreements necessary for the Debtors' operations to continue. This Court is the best, and only, venue to ensure continuing going-concern viability and provide appropriate procedures for resolving all disputes for the benefit of all creditors and stakeholders in a single venue and time/cost efficient manner.

**List of Officers and Directors and Their Salaries and Benefits at Time of Filing and During the One Year Prior to Filing**

Jonathan D. Logan is the sole Director of Smart Comm FL. Mr. Logan is also the sole officer of Smart Comm FL, and holds all of the officer positions. Mr. Logan is the sole manager of Smart Comm DE.

For many years following the inception of Smart Communications, Mr. Logan received no salary for his work and contributions, choosing instead to invest in the future and grow his business. For the last several years and through May, 2024, Mr. Logan took only a nominal annual

gross salary of $120,000. For the last several months, since June, 2024, and two years after assuming the full weight of running the business by himself, Mr. Logan began receiving an annual gross salary of approximately $1.2 million for his services as the sole officer, director, and manager of the Debtors, and the sole operating shareholder going back years. Mr. Logan also participates in an incentive bonus program based on achieving objective metrics on a quarterly basis. Mr. Logan's bonus compensation for the last quarter was earned but under Mr. Logan's direction was deferred and yet paid. Like all other employees of Smart Communications, Mr. Logan's payroll is processed and paid through Smart Collier.

As discussed above, the Debtors intend to file a plan quickly, and proceed to confirmation quickly. Pending confirmation of the plan on that schedule, Mr. Logan has agreed to defer his compensation entirely. The Debtors position is that Mr. Logan's compensation is at or under what a market compensation would be for the services performed by Mr. Logan for operations like the Debtors, that the compensation is a necessary component of the Debtors' operating expenses, and the agreed deferral is not an admission or acknowledgment as the reasonableness of compensation to Mr. Logan.

Although neither the Trust nor any trustee or beneficiary other than Mr. Logan performs any active role or function for the Debtors, Janice individually or as trustee of the Trust is currently receiving several benefits from the Debtors , including use (by Janice) of a mansion (a 7,000 sq ft house on a 20 acre lot located at 1660 Ranch Club Blvd, Sarasota, Florida) owned by Smart Comm FL (the "**Ranch Club Mansion**"), and expenditures for improvement and maintenance for the mansion (like approximately $84,000 in landscaping charges incurred by Janice for payment by the Debtors), and the use of vehicles purchased with corporate funds. The Debtors believe those are improper and that the payments are recoverable, and is pursuing those claims as part of the

underlying litigation. The Debtors do not believe that the payments are salary or other compensation, and will not be seeking approval to continue to maintain any of those payments.

**Debtors' Annual Gross Revenues**

On a consolidated basis, including its non-debtor subsidiaries, the Debtors' annual gross revenue for 2023 was approximately $56 million. Year-to-date gross revenue for 2024 is projected to be approximately $70 million.

**Amounts Owed to Various Classes of Creditors**

The creditors of the Debtors include the following:

**Priority Claims:**

The Debtors do not have any priority claims. Claims that otherwise would be priority claims might consist of (1) employee wage and benefits and related claims; (2) federal or state taxes. The Debtors are current on tax claims to their knowledge, or such claims would be paid as they come due in the ordinary course. The payroll obligations are owed by Smart Collier, a non-debtor.

**Secured Claims:**

Secured obligations are comprised of financing secured by certain Ford vans, in the outstanding amount of approximately $7,500.

**Unsecured claims:**

Unsecured claims are comprised of the following:

(1) Third-party unrelated creditors comprising the ordinary accounts payable, including customers, suppliers, vendors, and professionals, totaling approximately $1.3 million, many of which are due under executory contracts or otherwise due to critical vendors, and a few disputed, contingent, and unliquidated claims;

10

(2) Amounts due to Loco Florida, LLC, the affiliate/insider landlord on the principal office location;

(3) IP license fees and interest due to HLFIP in excess of $80 million, as discussed above; and

(4) The unliquidated buyout amount of the Trust's 50% shareholder interest in Smart Communications Holding, Inc.

**General Description and Approximate Value of the Debtor's Current & Fixed Assets**

On a consolidated basis including the non-debtor subsidiaries, which report for tax purposes as a consolidated group, the Debtors' assets and their respective approximate net book value are primarily cash ($1 million), third-party accounts receivable ($1.4 million), inventory ($3 million), and furniture, fixtures, and equipment (fully depreciated). The Debtors' assets include rights under the Exclusive License, subject to agreed-upon restructured treatment with HLFIP under a plan. The Debtors' assets include existing contract rights with various customers, the value of which is undetermined and depends on the valuation context. The Debtors' assets include non-core assets, including but not limited to the Ranch Club Mansion. And, the Debtors' assets include various litigation claims against the Trust and related parties in the state court litigation, including any claims asserted or which could be asserted on a derivative basis.

**Number of Employees and Amount of Wages Owed as of Petition Date**

The Debtors collectively employ directly or indirectly over 100 persons, on an employee or independent contractor basis. Those employees are paid by Smart Collier. The next payroll due to the employees, to be paid by Smart Collier, is due December 13, 2024, for the current bi-weekly period. As discussed above, that payroll run will not include any amounts for Jon Logan or Janice Logan.

**Status of Debtor's Payroll and Sales Tax Obligations, if applicable**

The Debtors are current on payroll and sales tax obligations.

**Anticipated Emergency Relief Within 14 Days of Petition Date**

The Debtors anticipate filing the following motions seeking emergency or expedited relief: motion to pay expenses in the ordinary course of business.

**Debtors' Strategic Objectives**

The Debtors filed these cases with the goal of reorganizing and providing for payments over time to creditors—HLFIP, the Trust, ordinary course operational creditors, and any others—under a plan of reorganization, which the Debtors expect to file in the first week of these cases, with the plan to be funded by continued operations using the license with HLFIP on agreed-upon terms, sales of non-core assets such as the Ranch Club Mansion and other assets used by Janice, Jim, or Jon, and issuance of equity in the reorganized companies in satisfaction of royalty claims.

WHEREFORE, the Debtors respectfully submit this as their Joint Chapter 11 Case Management Summary.

>   */s/ Daniel R. Fogarty*
>   Daniel R. Fogarty (FBN 0017532)
>   Stichter Riedel Blain & Postler, P.A.
>   110 East Madison Street, Suite 200
>   Tampa, Florida   33602
>   Telephone: (813) 229-0144
>   Email:  dfogarty@srbp.com
>   Attorneys for Debtors

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing *Joint Chapter 11 Case Management Summary* has been furnished on December 3, 2024, by the Court's electronic mail to all parties receiving CM/ECF electronic noticing.

>   */s/ Daniel R. Fogarty*
>   Daniel R. Fogarty

4880-6725-3495, v. 5