UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11, Subchapter V |
| SMART COMMUNICATIONS HOLDING, INC., | Case No. 8:24-bk-7106-RCT |
| SMART COMMUNICATIONS HOLDING, LLC, | Case No. 8:24-bk-7108-RCT |
| Debtors._____/ | *Jointly Administered under Case No. 8:24-bk-7106-RCT* |

### DEBTORS' MOTION TO ENFORCE THE AUTOMATIC STAY

Smart Communications Holding, Inc. ("**Smart Comm FL**") and Smart Communications Holding, LLC ("**Smart Comm DE**" and collectively, the "**Debtors**"), hereby file this Motion to Enforce the Automatic Stay and for Sanctions (the "**Motion**"), and in support thereof state as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

### GENERAL BACKGROUND

*Introduction*

2. On November 30, 2024 (the "**Petition Date**"), the Debtors filed with this Court Voluntary Petitions for Relief under Chapter 11 of Title 11 of the United States Code and made elections to proceed under Subchapter V pursuant to the Small Business Reorganization Act of 2019, as amended.

3.     In summary, and as set forth in more detail in the Debtors' Joint Chapter 11 Case Management Summary (Doc. No. 12), the Smart Communications corporate group, comprising the Debtors and certain non-debtor subsidiaries, is a top technology supplier to corrections facilities across the country. Smart Communications provides its customers with comprehensive inmate communications systems including telephone, video visitation, electronic messaging, streaming media platforms, and other services that are fully integrated through a single web-based dashboard, providing a single location for authorized staff to access all system administration, monitoring, reporting, data sharing and investigation tools. Smart Communications' client footprint has grown organically for 13 years, from a single account to more than 120 facilities throughout 29 states.

4.     The technology used by the Debtors and their subsidiaries is owned and held by HLFIP Holdings, LLC ("**HLFIP**"), a Delaware limited liability company owned by Jon Logan, and is used by the Debtors under an exclusive licensing agreement with HLFIP (the "**Exclusive License**"), all as more fully described in the Case Management Summary. Under the exclusive license agreement, HLFIP is owed a royalty fee of 40 percent of Smart's net sales, which accrued fees are in excess of $80 million and growing. HLFIP made a demand for the Debtors to pay the outstanding amounts by the end of 2024 or the license would be terminated.

*The Pending State Court Litigation*

5.     The Debtors have been mired in state-court litigation for the last two years since the untimely passing of James Logan, Jon Logan's father and business partner, in October 2022. Prior to his passing, James transferred his 50% interest in Smart Comm FL to the James Logan Family Trust, dated February 10, 2021 (the "**Trust**"). Soon after James Logan's passing, and following her assumption of the role of Trustee of the Trust, Janice Logan (James Logan's window

and Jon Logan's estranged mother) weaponized the Trust's interest in Smart Comm FL in an attempt to extract grotesque sums of money from the business.

6. The litigation[1] with Janice, the Trust, and others involves core and critical bankruptcy issues that are inextricably intertwined with the administration of this bankruptcy case. First, those claims and issues include the assumption and cure terms for the Exclusive License, under § 365 and the treatment of those claim under the Debtors' plan. The Exclusive License is an agreement between the Debtors and HLFIP to which the Trust is not a party or beneficiary, other than as a creditor of the Debtors. Those claims and issues involve control and administration of property of the Debtors' estate—the rights under the Exclusive License, claims against the estates by HLFIP, assumption of executory contracts by the estates, and other core bankruptcy issues that this Court has exclusive subject matter jurisdiction to adjudicate.

7. Second, the claims and issues in the litigation involve claims by a creditor (the Trust) against the Debtors, and counterclaims against that creditor. This is true regardless of the characterization of who has the claims and who has the counterclaims. The liquidation of the amount necessary to satisfy the unliquidated liability associated with the buyout right triggered and demanded by the Trust, consistent with the Bankruptcy Code, and the various offsets or claims against the Trust or others impacting that amount, are core claims. And, those core claims will be impacted by confirmation of the Debtors' plan and thus greatly impact the administration of these bankruptcy cases.

8. Third, the claims and issues in the litigation involve claims that are property of the estates or which are related to the Debtors and the claims of, by, or against the Debtors that would

---

[1] The litigation is pending in the Circuit Court of the Twelfth Judicial Circuit in Sarasota County, Florida, styled *Jonathan Logan and Smart Communications Holding, Inc. v. Janice Logan, individually and as Truste of the James Logan Family Trust, dated February 10, 2021, the Estate of James Logan, Justin Peterson, Alexis Logan, and Unnamed Curator*, Case No. 2023-CA-1002-NC (consolidated with Case No. 2023-CA-1280-NC).

have a significant effect on the Debtors-related claims. Those claims include claims that are property of the estate that, prior to the filing, were being pursued by the Trust and/or Janice specifically as derivative, not direct, claims.

9. The Debtors filed these cases and will file shortly a plan that will obviate the wasteful costs, expenses, and delays of the state court litigation while preserving going-concern value for the Debtors. The Debtors, here, seek to accomplish through the plan most of the material demands made in the state court litigation involving the Debtors in a more efficient manner, through one of two alternative paths.  In the event the Debtors are required to pay a cure to assume the HLFIP license, the plan will restructure the agreements between the Debtors and HLFIP and the claims against the Debtors to allow the Debtors to operate moving forward, and provide plan treatment agreed upon by HLFIP and proposed treatment for the Trust and all remaining creditors. Alternatively, in the event the Debtors are not obligated to fund any obligations to HLFIP to use the license in the Debtors' operations, the Debtors will fund their projected disposable income over a three to five year period as the Court determines and will liquidate the amount the Court determines to be necessary to satisfy the liability associated with the buyout right triggered and demanded by the Trust, consistent with the Bankruptcy Code.

***The Trust's Stay Violation***

10. The Trust and Janice have chosen to attempt to continue to litigate claims against the Debtors or claims or rights belonging to the Debtors in state court, in violation of the automatic stay. The Trust filed a *Response to Notice of Suggestion of Bankruptcy and Request to Retain Trial Dates*, a copy of which is attached hereto as **Exhibit A**.

11. The filing of that response in itself is a violation of the automatic stay, and the Court should enforce the stay and clarify that any further actions in the state court litigation are enjoined.

Alternatively or additionally, to provide clarity, the Court should extend the stay to any aspects of the state court litigation and prevent piecemeal litigation of issues that are central to the administration of these cases.

## LEGAL ARGUMENT

## THE AUTOMATIC STAY APPLIES TO THE STATE COURT ACTION

A.  **The Trust's Pursuit of the State Court Action Seeks to Assert Claims Against the Debtors or Exercise Control Over Property of the Estates in Violation of Section 362(a) of the Bankruptcy Code.**

12. Section 362 of the Bankruptcy Code imposes an automatic stay on all collection actions, enforcement of judgments, and litigation pursuits against the Debtors once bankruptcy petitions are filed. The automatic stay applies to efforts to control property of the estate, and applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Section 362(a)(6) of the Bankruptcy Code also prohibits any act to assess a claim against a debtor that arose pre-petition.

13. One of the most fundamental protections of the Bankruptcy Code, the automatic stay in bankruptcy serves as a way to centralize all claims against the debtor and provide a systematic, equitable distribution of the debtor's assets. *See In re Patel*, 642 B.R. 187, 196 (Bankr. N.D. Ga. 2022) ("The automatic stay is considered one of the fundamental debtor protections provided by the bankruptcy laws, and one of its primary purposes is to provide the debtor 'breathing room' upon filing a bankruptcy petition"); *In re Howard*, 391 B.R. 511, 520 (Bankr. N.D. Ga. 2008) ("[the automatic stay] performs the important function of protect[ing] creditors by avoiding the piece-meal or distressed liquidation of the debtor's assets and a race to the courthouse, thus furthering administration of assets in an orderly fashion to achieve an equitable distribution within the framework of the Bankruptcy Code.")

14. The automatic stay prevents parties from exercising control over property of the estate. Section 541 provides that "[p]roperty of the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case "wherever located and by whomever held." "This includes legal causes of action the debtor had against others at the commencement of the bankruptcy case." *In re Icarus Holding, LLC*, 391 F.3d 1315, 1319 (11th Cir. 2004).

15. The "bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted had it not been thrown into bankruptcy." *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1202 (11th Cir. 2003). Causes of action that belong to the bankruptcy estate must be pursued by the applicable estate fiduciary—here the Debtors and debtors in possession. *Mennen v. Onkyo Corp.*, 248 F. App'x 112, 113 (11th Cir. 2007) ("[i]f a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim.").

16. The person against whom relief is named or sought is not dispositive concerning whether the action violates the automatic stay. *See Purvis v. Blitz, U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 25343 at *3 (M.D. Ga. February 28, 2012) (imposition of the automatic stay may be appropriate even though debtor not named as a defendant). The reasoning behind this finding is set forth in greater detail in *In re Kaiser Aluminum Corp., Inc.*, 315 B.R. 655 (D. Del. 2004), where the court found:

> the protection of the automatic stay extends to any action or proceeding against an interest of the debtor. *The scope of this protection is not determined solely by whom a party chose to name in the proceeding, but rather, by who is the party with a real interest in the litigation*. [T]he automatic stay provision applies to suits against non-debtor defendants who are related to the debtor and *to suits the resolution of which may have a significant impact on the debtor*….

*In re Kaiser Aluminum Corp., Inc.*, 315 B.R. at 658 (emphasis added) (internal citations omitted).

17. The *Kaiser Aluminum* court explained that it is the impact on a debtor which the resolution of a cause of action could have that matters with respect to an action, not which party is formally named as a defendant in the complaint. *Id*.

18. In this regard, the Third Circuit's holding in *McCartney v. Integra National Bank North,* 106 F. 3d 506 (3d Cir. 1997) is also compelling. In *McCartney*, the debtor was a guarantor of indebtedness owed by the non-debtor obligor. *Id*. at 508. The debtor argued that his liability under the guaranty was extinguished under applicable law because the lender had failed to pursue a deficiency claim against the primary obligor. *Id*. The lender argued that it was barred by the automatic stay from pursuing such a deficiency claim against the non-debtor obligor. *Id.* at 511. The Third Circuit agreed with the lender, noting that "[the debtor], as guarantor, would have been liable for satisfying any deficiency claim asserted by [the lender]". *Id.* Accordingly, the Third Circuit concluded that "[the lender] was stayed from pursuing a deficiency judgment action against the nondebtor third party Lamar's because [the debtor] was, in essence, the real party in interest." *Id.*

19. The court reached a similar conclusion in *In re Jefferson County, Ala.*, 491 B.R. 277 (Bankr. N.D. Ala. 2013). In that case, a reinsurer had accepted risk related to certain interest rate swap transactions between Jefferson County and JPMorganChase ("**JPMorgan**"), that Jefferson County would not fail to pay principal and interest on the warrants related to the swap transactions. Following Jefferson County's bankruptcy, this reinsurer commenced a proceeding against JPMorgan in New York State Supreme Court, not naming Jefferson County, in which it

alleged fraud, and aiding and abetting fraud, against JPMorgan relating to Jefferson County's financing arrangements with JPMorgan.

20. The bankruptcy court found that it was "obvious that the [debtor] is a party in interest…" in the reinsurer's New York state court action against JPMorgan. *Id.* at 286. Judge Bennett went on to note that the reinsurer's complaint "contains numerous material allegations implicating conduct by the [debtor]. Indeed, one of the two claims [the reinsurer] asserts against JPMorgan is that it aided and abetted the [debtor's] fraud. In order to succeed on that claim, it will have to prove that the [debtor] committed the underlying fraud…." *Id.*

21. Further, in *In re Fiddler's Creek, LLC*, 2010 WL 6618876 (Bankr. M.D. Fla. 2010), Judge Rodney May held that an action against a non-debtor principal violated the automatic stay because the proof to substantiate the claims against the non-debtor principal would be identical to the proof required to show whether the debtors breached their contractual obligations. *Id.* at *4.

22. And, this Court held in *In re The Centers for Special Needs Trust Administration, Inc.*[2] that class action complaints filed on behalf of beneficiaries of trusts administered by the debtor violated the automatic stay where the claims made in those complaints were based on the same harm and misconduct being pursued by the bankruptcy estate fiduciary, and sought to recover the same funds being pursued by the bankruptcy estate. This Court found that the trustee had "adopted a measured strategy designed to minimize litigation costs" and the efforts by creditors to pursue litigation in other courts interfered with the proceedings in bankruptcy court. *Id.* at 10.

---

[2] *In re The Centers for Special Needs Trust Admin., Inc.*, Case No. 8:24-bk-00676-RCT, Doc. No. 314 (Aug. 5, 2024).

4932-6935-1427, v. 3

23. Here, although the Trust purports to characterize its stay violations as an attempt to continue litigation only against Jon and HLFIP (*see* Response, p. 3), in actuality the Trust has continued litigation against the Debtors or as to property of the estates. The Trust has asked the State Court to rule on amounts owed under an agreement to which the Debtors are parties with HLFIP and which will need to be cured in the Bankruptcy Case under § 365, and to which agreement the Trust is not a party. A more clear example of an effort to exercise control over property of the estate is hard to imagine.

24. Also, the State Court is asked to rule on claims against Debtors' affiliated entities and Jon, in his role as an officer and director of Debtors, which will necessarily involve factual determinations addressing claims by or against the Debtors. Any findings of the State Court in this respect may be binding upon the Debtors pursuant to applicable doctrines of *res judicata* and claims preclusion, thereby depriving this Court of its exclusive authority to assess and liquidate these claims by or against the Debtors.  In short, the claims by the Trust or Janice against Jon and the Debtors' affiliated entities, and the claims of or against the Debtors are inextricably interwoven and therefore the automatic stay applies pursuant to the cases cited above.

25. The Trust's continued pursuit of the State Court Action constitutes an act to assess a claim against the Debtors or to exercise control over property of the estate in direct violation of Section 362(a) of the Bankruptcy Code.

**B.**     **Should Willful Violations Continue, Sanctions will be Appropriate.**

26. Should the Trust continue its willful violations of the automatic stay, sanctions will be appropriate and should be considered by the Court, including but not limited to the attorneys' fees and costs associated with the prosecution of this Motion. The Eleventh Circuit has characterized the automatic stay as "essentially a court-ordered injunction, [and] any person or

entity who violates the stay may be found in contempt of court." *In re Walton*, 454 B.R. 537, 545 (Bankr. M.D. Fla. 2011), *quoting Ellison v. Nw. Eng'g Co.*, 707 F.2d 1310, 1311 (11th Cir. 1983). And, a federal court has the inherent power to control the matters, parties and attorneys appearing before it. *E.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). The Court has the ability to sanction willful violations of the automatic stay, and if violations continue, it should exercise that authority.

## ALTERNATIVELY, THE STAY SHOULD BE EXTENDED

27. As an alternative, to the extent that all of the actions sought to be pursued by the Trust are not directly subject to the stay, the Court should extend the stay to prevent piecemeal litigation that will impact the Debtors' reorganization efforts.

28. "[T]he court has ample other powers to stay actions not covered by the automatic stay. Section 105 ... grants the power to issue orders necessary or appropriate to carry out the provisions of title 11." H.R. Rep. No. 95-595, 342 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6298. In considering a motion to extend the automatic stay to a nondebtor, courts should apply a two-step analysis: (a) whether related-to jurisdiction exists regarding the third-party claims in question; and (b) the traditional preliminary-injunction standard, focusing on whether the debtor is likely to successfully reorganize, whether the debtor will suffer irreparable harm if the third-party stay is not imposed, whether the balances of the harms weigh in favor of imposing the third-party stay, and whether public interest sides with extending the stay

29. Here, the actions are related-to the Debtors' bankruptcy cases, for the reasons discussed above. And Jon, as the owner, director, and officer of Smart Comm FL and manager of Smart Comm DE fits squarely within the type of person who courts protect from distracting litigation during the reorganization process.

WHEREFORE, the Debtors request that the Court grant the Motion, enforce the automatic stay as to any attempts by the Trust to litigate claims outside this Court in the State Court Action or to otherwise exercise control over property of the estates, reserve jurisdiction to award sanction, as an alternative extend the stay, and grant such other relief to which the Debtors may be entitled.

Dated:  December 6, 2024

      */s/ Daniel R. Fogarty*
Daniel R. Fogarty (FBN 0017532)
Stichter Riedel Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida  33602
(813) 229-0144 – Phone
(813) 229-1811 – Fax
Email: dfogarty@srbp.com
Attorneys for Debtors

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct of the foregoing *Debtors' Motion to Enforce the Automatic Stay* has been furnished on December 6, 2024, by the Court's CM/ECF Noticing System to those parties receiving notices electronically, by U.S. Mail to the Local Rule 1007-2 Parties in Interest List, and by E-Mail service to counsel for the Trust in the State Court Litigation, as follows:

| | |
|---|---|
| Andrew L Franklin | afranklin@shb.com |
| | jvail@shb.com |
| Peter F. O'Neill | PFONEILL@shb.com |
| | mclick@shb.com |
| Anitra Raiford Clement | aclement@shb.com |
| | mclick@shb.com |
| | lmaranto@shb.com |
| David E Schoenfeld | dschoenfeld@shb.com |
| | dbrehmer@shb.com |
| Kailin Liu | kliu@shb.com |
| John D. Garretson | jgarretson@shb.com |

          */s/ Daniel R. Fogarty*
          Daniel R. Fogarty (FBN 0017532)

4932-6935-1427, v. 3

| | | |
|---|---|---|
| Label Matrix for local noticing<br>113A-8<br>Case 8:24-bk-07106-RCT<br>Middle District of Florida<br>Tampa<br>Fri Dec  6 15:04:31 EST 2024 | Assets America, Inc.<br>800 5th Ave #101<br>Seattle, WA 98104-3102 | CDW Direct LLC<br>200 N Milwaukee Ave,<br>Vernon Hills, IL 60061-1577 |
| Cents LLC<br>6801 Holabird Ave.<br>Dundalk, MD 21222-1746 | Florida Custom Mold, Inc<br>1806 Gunn Hwy,<br>Odessa, FL 33556-3524 | GGC Brennan Industrial, LLC<br>Attn: Michael W. Brennan<br>9450 W. Bryn Mawr, #750<br>Rosemont, IL 60018-5253 |
| HLFIP Holding LLC<br>c/o Donald R. Kirk, Esq.<br>Carlton Fields, P.A.<br>P.O. Box 3239<br>Tampa, FL 33601-3239 | I.D. Tel<br>55 Canal S.<br>Staten Island, NY 10304-3809 | Janice Logan, as Trustee<br>of the James Logan Family Trust<br>c/o David E. Schoenfeld, Esq.<br>100 N. Tampa St., #2900<br>Tampa, FL 33602-5810 |
| Lattice Incorporated<br>7150 N. Park Dr., #500<br>Pennsauken, NJ 08109-4203 | McNees Wallace & Nurick LLC<br>100 Pine Street<br>Harrisburg, PA 17101-1288 | Melvin W. Engelke, III<br>c/o Dean Kent, Esq.<br>101 E. Kennedy Blvd., #2700<br>Tampa, FL 33602-5150 |
| Mt. View Business Plaza, LLC<br>P.O. Box 821048<br>Vancouver, WA 98682-0024 | Priority1<br>401 W. Capitol Ave.<br>Little Rock, AR 72201-3421 | ShenZhen Meridian Technology Co. Ltd.<br>Room 2809, West Building, Qui Shi Bldg.<br>Zhu Zi Ling, Fu Tian District<br>Shenzhen, CHINA 51804 |
| Swank Motion Pictures, Inc.<br>10795 Watson Road,<br>St. Louis, MO 63127-1012 | Versa Technology, Inc.<br>5224 Bell Ct.<br>Chino, CA 91710-5701 | Westfield Insurance<br>One Park Circle<br>P.O. Box 5001<br>Westfield Center, OH 44251-5001 |
| Wintel Corp.<br>2741 NW 82nd Ave<br>Doral, FL 33122-1041 | xByte Technologies<br>4614 19th St Ct E.<br>Bradenton, FL 34203-3768 | End of Label Matrix<br>Mailable recipients    19<br>Bypassed recipients     0<br>Total                  19 |

# EXHIBIT A

# IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
# IN AND FOR SARASOTA COUNTY, FLORIDA

JONATHAN LOGAN and SMART
COMMUNICATIONS HOLDING, INC.,

        Plaintiffs,

v.                                                                                                          Case No. 2023-CA-1002-NC

JANICE LOGAN, individually, as Trustee of
the James Logan Family Trust, dated
February 10, 2021, and as Personal
Representative of the ESTATE OF
JAMES LOGAN, JUSTIN PETERSON, and
ALEXIS LOGAN,

        Defendants.
_____/

JANICE LOGAN, as Trustee of the James
Logan Family Trust, dated February 10,
2021,

        Counterclaim Plaintiff,

v.

JONATHAN D. LOGAN, SMART
COMMUNICATIONS HOLDING, INC.,
SMART COMMUNICATIONS HOLDING, LLC,
and HLFIP HOLDING, LLC,

        Counterclaim Defendants.
_____/

JANICE LOGAN, as Trustee of the James                                    (CONSOLIDATED)
Logan Family Trust, dated February 10,
2021, and derivatively on behalf of Smart
Communications Holding, Inc.,

        Plaintiff,                                                       Case No.: 2023-CA-1280-NC

v.

JONATHAN D. LOGAN, SMART
COMMUNICATIONS HOLDING, INC., nominal
defendant, SMART COMMUNICATIONS
HOLDING, LLC, HLFIP HOLDING, LLC,
LOCO FLORIDA LLC, and SMART
COMMUNICATIONS YACHT HOLDING, LLC,

        Defendants.
_____/

## JANICE LOGAN'S RESPONSE TO NOTICE OF
## SUGGESTION OF BANKRUPTCY AND REQUEST TO RETAIN TRIAL DATES

Janice Logan, as Trustee of the James Logan Family Trust, dated February 10, 2021 ("Janice"), responds as follows to the Notice of Suggestion of Bankruptcy filed by Smart Communications Holding, Inc. ("SmartComm") and Smart Communications Holding, LLC ("SmartComm DE"). DIN 887.[1]

SmartComm and SmartComm DE contend that their bankruptcy petitions stay this proceeding as to the "Smart Entities." *Id.* at 2 (citing 11 U.S.C. § 362). In addition, they contend that once the Chapter 11 petitions were filed, the claims asserted against the "Smart Entities" became the property of their Bankruptcy Estates and the Trust no longer has standing to pursue claims against the "Smart Entities."

Janice intends to seek relief from the automatic stays under § 362(a) on an expedited basis. *See* 11 U.S.C. § 362(d). Among other things, Janice intends to inform the bankruptcy court that the alleged insolvency giving rise to the bankruptcy arises solely from the self-dealing IP royalty agreement, the validity of which this Court set for January 2025 trial in its Order Bifurcating Phase 2 Trial entered on November 25, 2024—five days prior to the bankruptcy petition. *See* DIN 870. Janice also intends to advise the bankruptcy court of the parties' *agreed injunction* in this case preventing any payments on the IP-related liabilities, which effectively preserves the solvency of the Debtor entities pending this Court's determination as to the validity of the purported IP royalty agreement. DIN 489.

---

[1] This response is meant solely to apprise the Court of Janice's intentions, and is not intended to waive any right or argument Janice may have in this case or in the bankruptcy proceedings.

Moreover, the automatic stay applies only to the parties who filed the petitions—that is, SmartComm and SmartComm DE. *Puig v. PADC Mktg.*, LLC, 26 So. 3d 45, 47 (Fla. 3d DCA 2009) ("Both federal and state courts in Florida have followed the general rule that the United States Bankruptcy Code generally stays proceedings against the debtor alone."). Therefore, proceedings against Jon and HLFIP are *not* stayed. As the Court noted in its Order Bifurcating Phase 2 Trial (DIN 870), the "license/royalty" issue set for trial in Part 1 of Phase 2 is asserted by HLFIP, which is 100% controlled by Jon Logan, for HLFIP's benefit. *Id.* at p. 2.

Finally, regardless of the stay, the Trust retains standing to pursue direct claims against Jon Logan and HLFIP. SmartComm has no interest in the Trust's direct claims, so those claims are not property of the bankruptcy estate. *See* 11 U.S.C. § 541(a). The filing of the Chapter 11 petitions does not preclude this Court from trying this issue in the January trial period as against Jon and HLFIP alone.

As there is no stay in effect as to either Jon or HLFIP, Janice respectfully requests that this Court retain its January trial date to try, at minimum, the narrow "license/royalty" issue as framed by HLFIP and the Court's Order Bifurcating Phase 2 Trial as to Jon and HLFIP. If the bankruptcy court grants Janice's motion for relief from the automatic stay as to the valuation date issue, Janice also will respectfully request that the Court try that issue as scheduled.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been electronically filed and served on all counsel of record via the Florida Court's e-filing portal on December 4, 2024.

Dated: December 4, 2024

Respectfully submitted,

By: /s/ *David E. Schoenfeld*
Anitra R. Clement
Florida Bar No. 100354
**SHOOK, HARDY & BACON L.L.P.**
100 N. Tampa St., Ste. 2900
Tampa, FL 33602
Telephone: (813) 202-7100
aclement@shb.com

David E. Schoenfeld (FL PHV # 1047561)
Peter F. O'Neill (FL PHV # 1043125)
Andrew L. Franklin (FL PHV # 1035737)
Kailin Liu (FL PHV # 1051416)
**SHOOK, HARDY & BACON L.L.P.**
111 S. Wacker Dr., Ste. 4700
Chicago, IL 60606
Telephone: (312) 704-7700
dschoenfeld@shb.com
pfoneill@shb.com
afranklin@shb.com
kliu@shb.com

John D. Garretson (FL PHV #1057004)
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
jgarretson@shb.com

*Counsel for Janice Logan, individually, as Trustee of the James Logan Family Trust, dated February 10, 2021, and as Personal Representative of the Estate of James Logan*