IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| **In re:** | **Chapter 11, Subchapter V** |
| Smart Communications Holding, Inc. | Case No. 8:24-bk-07106 |
| Smart Communications Holding, LLC | Case No. 8:24-bk-07108 |
| **Debtors.** _____ / | *Jointly Administered under* 8:24-bk-07106 |

### CREDITOR JANICE LOGAN'S MOTION TO DISMISS CASES

Creditor Janice Logan, as Trustee of the James Logan Family Trust, dated February 10, 2021 ("Janice") hereby Moves to Dismiss, pursuant to 11 U.S.C. § 1112(b)[1], Smart Communications Holding, Inc. ("SmartComm") and Smart Communications Holding, LLC's ("SmartComm DE") jointly administered bankruptcy petitions because they were filed in bad faith. In support thereof, she states as follows:

### INTRODUCTION

1. Tangled in a charade in which he acts every part, Jonathan Logan ("Jon") placed the Debtors in bankruptcy because he wants this Court to rule that SmartComm and SmartComm DE, which he owns in equal shares with his mother, owe their entire profit for the past 10 years to HLFIP Holding, LLC ("HLFIP"), which he alone owns. Jon is attempting to manipulate the Chapter 11 process to legitimize a fraudulent debt, bankrupting solvent companies in order to enrich himself at his mother's expense. Jon seeks reorganization of the purported Debtors because he wants this Court, rather than a Sarasota County court (the "Sarasota Court") that has already rejected one agreement he forged, to endorse a $90 million liability ("IP Liability") from

---

[1] Debtors do not dispute that Janice is a creditor, which provides her standing to bring this Motion as a party in interest under 11 U.S.C. 1112(b) and 11 U.S.C. 1109(b).

SmartComm to himself (via HLFIP). Debtors, which Jon solely controls, filed their petitions days after the Sarasota Court denied their request to delay a February trial to decide whether the IP Liability is valid.

2.      Jon brings Debtors to this Court without any *bona fide* need for reorganization, but instead to avoid the efficient adjudication and resolution of a two-sided dispute *that Jon and the Debtors initiated* in the Sarasota Court. Chapter 11 and bankruptcy case law will not countenance such a maneuver. The jointly administered cases should be dismissed pursuant to 11 U.S.C. § 1112(b).

## BACKGROUND

### The SmartComm Ownership Dispute

3.      Since SmartComm co-founder, co-director, and co-owner James Logan ("Jim") died in October 2022, Jon has exerted sole control of SmartComm, SmartComm DE (formed in the midst of the Sarasota Action), HLFIP, and their myriad waves of attorneys. Janice, the beneficial heir to her late husband's 50% stake in SmartComm, simply seeks the fair value of her husband's legacy. Jon and SmartComm elected to invoke Florida's statutory procedure to purchase Janice's shares. *See* Fla. Stat. § 607.1436 Election to Purchase Shares (filed June 20, 2024), *Jonathan Logan and Smart Commc'n Holding, Inc. v. Janice Logan, et al.* ("Sarasota Action"), No. 2023-CA-1002 & 2023-CA-1280 (consolidated into 1002), *attached hereto as* **Exhibit 1**.[2] Jon, however, refuses to pay his widowed 71-year-old mother the fair value of those shares because he thinks she does not deserve it—regardless of what his father intended.

---

[2] This Court can take judicial notice of filings in other courts. *Progressive Mountain Ins. Co. v. Middlebrooks*, 805 F. App'x 731, 733 (11th Cir. 2020) ("We can reasonably take judicial notice of these state court filings as public records."); *see also* Fed. R. Evid. 201. Janice hereby requests that the Court take judicial notice of all exhibits herein that were filed or entered in the Sarasota Action, the Delaware Action, and any other state or federal courts of the United States, including the Middle District of Florida. Janice does not request that the Court take judicial notice of disputed facts. Janice requests only that the Court take judicial notice of the fact of filings, the existence of certain allegations within those filings, and the content of orders and rulings issued by courts of competent jurisdiction.

4. Blind to the rights intrinsic to Janice's shares, Jon has endangered SmartComm and wasted millions in company money on attorneys' fees by repeatedly attempting to cheat Janice of the shares' value. First, he forged a shareholders' agreement and sued his mother in the Sarasota Court to enforce it. *See* Emergency Mot. for Relief from Automatic Stay, ECF No. 26, ¶¶ 10–24. After that court set a trial date on the validity of his forgery, Jon attempted to move SmartComm's assets and the litigation to Delaware. *Id.* After the Delaware *and* Sarasota courts rejected that ploy and the latter invalidated the forged shareholder agreement and set a trial on the validity of the self-dealing, backdated IP Liability, Jon placed the otherwise solvent and profitable companies in bankruptcy. *Id.* Now Jon seeks here what he failed to obtain in Sarasota or Delaware: this Court's imprimatur on his value-stripping scheme.

### The Purported IP Liability

5. The IP Liability stems from a 40% net sales royalty rate in the August 29, 2023 Exclusive Intercompany Intellectual Property License Agreement, which Jon created and executed while the Sarasota Action was pending on behalf of both SmartComm and HLFIP and then backdated to 2015 in SmartComm's financial statements. *See* License Agreement, *attached hereto as* **Exhibit 2**; *see also* 2022 Audited Financial Statements (prepared in October 2023), *attached hereto as* **Exhibit 3**.

6. Forty percent is SmartComm's entire profit margin. *See* SmartComm 2022 Financial Presentation, *attached hereto as* **Exhibit 4**, at slide 12. Jon thus effectively signed SmartComm's entire value away to himself (via HLFIP) as IP "royalties"—just eleven days after the Federal Circuit affirmed the invalidation of SmartComm's flagship patent. *See HLFIP Holding, Inc. d/b/a Smart Communications IP Holdings v. York Cnty., PA, et al.*, 600 F. Supp. 3d 526 (Case No. 1:20-cv-00186, ECF 135) (M.D. Pa. April 25, 2022) *aff'd sub nom. HLFIP Holding, Inc. v. York Cnty., PA*, 2022-1940, 2023 WL 5316529 (Fed. Cir. Aug. 18, 2023). In

separate verified interrogatory responses (both verified by Jon), SmartComm and HLFIP each identify Jon as the only person who negotiated the 40% license on their behalves. *See* SmartComm's Responses to Janice's 4th Interrogatories, Sarasota Action, *attached hereto as* **Exhibit 5**, at Interrogatory No. 2; *see also* HLFIP's Responses to Janice's 1st Interrogatories, Sarasota Action, *attached hereto as* **Exhibit 6**, at Interrogatory No. 17.

7. After Jon "negotiated" the IP Liability with himself and signed for both the Licensor and Licensee, he wrote himself a demand letter: "HLFIP made a demand for the Debtors to pay the outstanding amounts by the end of 2024 or the license would be terminated." *See* Mot. to Enforce Stay, ECF No. 19, at ¶ 4; *see also* Emergency Mot. for Relief, ECF No. 26, ¶ 22 & Ex. 14.

8. Both here and in the Sarasota Action, Jon is causing SmartComm to defend a liability that would gut its value for his sole benefit. *See* Mot. to Enforce Stay, ECF No. 19, at ¶¶ 4, 6 ("Under the exclusive license agreement, HLFIP is owed a royalty fee of 40 percent of Smart's net sales, which accrued fees are in excess of $80 million and growing. … First, those [Sarasota Action] claims and issues include the assumption and cure terms for the Exclusive License, under § 365 and the treatment of those claim under the Debtors' plan.").

**SmartComm's Financials**

9. SmartComm's financials demonstrate the company is solvent and highly profitable but for the phony IP Liability. In the last SmartComm financials prepared before Jon and SmartComm filed the Sarasota Action on February 27, 2023—SmartComm's Audited 2021 Financial Statements (prepared in December 2022)—SmartComm reported $4.5 million in net income on $32.3 million in revenue with $19.5 million of assets. *See* 2021 Audited Financial Statements, *attached hereto as* **Exhibit 7**. According to the financials filed here, Debtors, despite nearly *doubling* revenue between 2021 ($32.3 MM) and 2023 ($56.2 MM) and having an

additional $5 million in assets ($24.8 MM up from $19.5 MM in 2021), are supposedly unable to meet their obligations because of a "long-term" $80 million IP Liability as of year-end 2023 that does not appear in any financial statements prepared before the Sarasota Action. *Compare* Ex. 7, *with* ECF No. 6. Without that IP Liability, SmartComm would be solvent—SmartComm's List of 20 Largest Unsecured Creditors evidences no other liabilities over six figures. *See* ECF No. 2.

10. The absence of the IP Liability in pre-litigation financials is notable because in Jon's telling, the IP Liability began in 2015:

> 6. Admit that there are no documents in your custody, possession, or control from prior to August 29, 2023, that reference a 40% net sales intellectual property royalty license from SmartComm to HLFIP.
> Response to RFA No. 6: HLFIP denies this Request because while there may be no documents from before August 29, 2023, that use the term "royalty" or "royalty fee," in 2015, James Logan, Jon Logan, Alexis Logan, Smart Communications US, and Smart Communications Holding entered into a written agreement that expressly recognized that "Jonathan Logan exclusively owns and will retain exclusive ownership" of the intellectual property for which Jon was the "inventor." Jon's ownership of the intellectual property that Jon invented or developed necessarily entitles him to reap the economic benefits of that intellectual property. Therefore, that 2015 agreement necessarily implies that SmartComm owed and owes royalties to Jon Logan (via what is now his wholly owned entity, HLFIP).

*See* HLFIP's Responses to Janice's First RFAs, Sarasota Action, *attached hereto as* **Exhibit 8**, at RFA No. 6. (In fact, the purported 2015 "agreement" is an email from Jon that says nothing whatsoever about an IP license, let alone a royalty that would impoverish SmartComm. *See* 2015 Email "Agreement," Sarasota Action, *attached hereto as* **Exhibit 9**.).

11. If SmartComm had been liable to HLFIP for 40% of its net sales starting in 2015, it would have been insolvent since 2015 and would have dissolved long ago. A 2023 SmartComm document applies the 40% net sales royalty rate to SmartComm's revenue from 2022 all the way back to 2015. *See* Smart Communications Holding, Inc. Calculation of IP License Fee 40% Rate,

5

*attached hereto as* **Exhibit 10**. When the IP license figure is compared against SmartComm's total net income by year (as reported by SmartComm), it is obvious the 40% rate is untenable:

|  | **2015** | **2016** | **2017** | **2018** | **2019** | **2020** | **2021** | **2022** |
|---|---|---|---|---|---|---|---|---|
| **IP Liability** | $866,524 | $1,215,257 | $1,537,708 | $3,837,994 | $6,385,644 | $8,445,875 | $12,685,029 | $17,874,784 |
| **Reported Net Income** | $153,738 | $191,545 | -$4,401 | $121,655 | $1,340,052 | $5,687,149 | $4,510,714 | $5,073,132 |
| **Difference** | ($712,786) | ($1,023,712) | ($1,542,109) | ($3,716,339) | ($5,045,592) | ($2,758,726) | ($8,174,315) | ($12,801,652) |

*Compare* Ex. 10, *with* SmartComm's 2015–2022 Consolidated Audited Financial Statements, *attached hereto as* **Exhibits 11** (2015), **12** (2016), **13** (2017), **14** (2018), **15** (2019), **16** (2020), **7** (2021), **3** (2022). What is more, Jon clearly knew the IP Liability was untenable because he omitted it from the financials SmartComm provided to prospective customers while including it in the financials provided to Janice. *Compare* Clay County Request for Proposal Response, Sarasota Action, *attached hereto as* **Exhibit 17**, at p. 7, *with* Ex. 3.

  12. Yet, SmartComm did not file for bankruptcy between 2015 and 2022 for two obvious reasons: *first*, the 40% royalty did not exist, and *second*, SmartComm was not on the brink of a trial that was going to value *its own election* to pay the fair value of 50% of its shares to Janice.

**The Sarasota Action**

  13. SmartComm faces no liquidity issues or inability to pay obligations as they come due. SmartComm has never made any payments on the IP Liability and is currently barred from doing so. *See* Stipulated Injunction, Sarasota Action, *attached as* **Exhibit 18**; *see also* Ex. 6 (HLFIP Verified Interrogatory Responses), at Interrogatory No. 16 ("SmartComm has never paid HLFIP….").

14. Instead, its Chapter 11 petition plainly is a bad faith tactic to avoid trial in the Sarasota Action. Debtors filed their bankruptcy petitions five days after the Sarasota Court set a February trial on (1) whether the IP Liability exists, and (2) the appropriate valuation date to use in SmartComm Fla. Stat. § 607.1436 election to purchase Janice's shares. *Compare* Order Bifurcating Phase 2 Trial, *Jonathan Logan and Smart Commc'n Holding, Inc. v. Janice Logan, et al.*, Nos. 2023-CA-1002 & 2023-CA-1280, *attached hereto as* **Exhibit 19** (entered Nov. 25, 2024), *with* ECF No. 1 (filed Nov. 30, 2024).

15. The Debtors' petitions halted scheduled depositions of SmartComm's in-house accountant (Dec. 5), outside accountant (Dec. 19), Jon (Dec. 17), SmartComm and HLFIP corporate representatives, and non-party Marcum (Dec. 16), which HLFIP retained to write a *post facto* report attempting to justify the 40% royalty rate. *See* Notices of Depositions and Subpoenas, Sarasota Action, *attached hereto as* **Exhibits 20** (NOD for Noreen Gunning, SmartComm's Accountant), **21** (Jon), **22** (Smart & HLFIP 1.310(b)(6) Notices), **23** (Marcum Subpoena), **24** (Order Appointing Commissioner & Subpoena for Mike Shreve, SmartComm & HLFIP's Outside Accountant). The Debtors and HLFIP also have used the petitions to avoid answering Janice's Second Amended Complaint and Counterclaims. *See* SmartComm and HLFIP's Motions for Extension of Time to Answer, Sarasota Action, *attached hereto as* **Exhibits 25** (SmartComm) and **26** (HLFIP).

## **LEGAL STANDARD**

Chapter 11 provides this Court with the power to dismiss SmartComm and SmartComm DE's bankruptcy petitions upon notice and hearing:

> (b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that

7

> the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112.

In the Eleventh Circuit, bad faith "may constitute cause for dismissal of a petition." *In re Nat. Land Corp.*, 825 F.2d 296, 297 (11th Cir. 1987). "An intent to abuse the judicial process and the purposes of the reorganization provisions may constitute a lack of good faith." *In re Bal Harbour Club, Inc.*, 316 F.3d 1192, 1194 (11th Cir. 2003). This Court has "broad discretion to evaluate the totality of the circumstances in each case and to determine whether those circumstances indicate a petition was filed in bad faith." *In re Schroeder*, 2021 WL 5749836, *14 (Bankr. M.D. Fla. 2021).

There is not "any single factor that will necessarily lead to a finding of bad faith." *Nat. Land Corp.*, 825 F.2d at 298. Instead, this Court can consider and rely on many factors to make such a determination, including:

> (1) the lack of a realistic possibility of an effective reorganization; (2) evidence that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights; (3) whether the debtor is seeking to use the bankruptcy provisions to create and organize a new business, not to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business; (4) the timing of the debtor's relevant actions; (5) whether the debtor appears to be merely a shell corporation; and (6) whether the debtor was created, or the subject property transferred to the debtor, for the sole purpose of obtaining protection under the automatic stay [of Chapter 11] by filing bankruptcy.

*Id.* at 298 (cleaned up).

Dismissal of a petition on bad faith grounds is reviewed for abuse of discretion. *See In re Piazza*, 719 F.3d 1253, 1271 (11th Cir. 2013). "An abuse of discretion occurs when a court applies the wrong principle of law or makes clearly erroneous findings of fact." *Id*.; *see also In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 379 (8th Cir. 2000) ("Whether a bankruptcy case has been filed

8

in bad faith is a question of fact, and a dismissal will only be reversed if the court abused its broad discretion.").

## ARGUMENT

I. **Debtors' Cases Should Be Dismissed As Bad Faith Filings.**

In filing these petitions, Jon fulfilled a threat that Janice recounted in her early papers nearly two years ago: "88. Jon breached those fiduciary duties by, among other things … Threatening to harm Smart Communications, and therefore the value of the shares, if Janice and the Trust do not comply with his wishes." *See* Janice's Verified Complaint (filed March 10, 2023), Sarasota Action, *attached hereto as* **Exhibit 27**.

The cases should be dismissed because: (A) the timing of the petitions reveal Jon's purpose of avoiding the outcome of the Sarasota Action; (B) Jon did not even have the authority to file for bankruptcy on behalf of SmartComm; (C) these cases are merely a tactic in a two-sided state law dispute; and (D) SmartComm, in agreeing to pay Jon all of its profit, transferred all of its value not long before filing its petition.

    A. **The Timing of the Petitions Warrants Dismissal.**

Debtors' petitions should be dismissed because the timing of filing reveals their bad faith. The timing of filing for Chapter 11 can be a sufficient ground for bad faith dismissal. *See Nat. Land Corp.*, 825 F.2d at 298; *see also Matter of 299 Jack-Hemp Assocs.*, 20 B.R. 412, 412 (Bankr. S.D.N.Y. 1982) ("… the movant asserts as cause the lack of good faith the petition needs to begin the unfolding of the Chapter 11 process. Support for this conclusion is found in the undisputed chronology….").

### 1. The Petitions Are Premature: Debtors Are Enjoined from Paying the IP Liability.

The IP Liability, which is Debtors' only significant liability, cannot independently justify filing now because SmartComm has never made a single payment on the IP Liability and because it is enjoined from doing so. *See* Ex. 6, at Interrogatory No. 16; *see also* Ex. 18. As explained above, if Jon's telling of the IP Liability is true and the 40% net sales royalty has existed since 2015, then Debtors have been insolvent for almost a decade and yet continued to operate and grow. *See supra* ¶ 11.

"Good faith necessarily requires some degree of financial distress on the part of a debtor." *In re LTL Mgmt., LLC*, 652 B.R. 433, 443 (Bankr. D.N.J. 2023), *aff'd sub nom. In re LTL Mgmt. LLC*, No. 23-2971, 2024 WL 3540467 (3d Cir. July 25, 2024). In *LTL Mgmt.*, the bankruptcy court dismissed debtors' petition because "the emphasis on certainty and immediacy of financial distress closes the door of chapter 11 … at this juncture." *Id.* at 448–49. There, the bankruptcy court, consistent with a prior Third Circuit decision in a related case, dismissed the bankruptcy because it was not yet clear that liabilities related to talc lawsuits would result in financial distress. *Id*. It was only an "attenuated possibility." *Id*.; *see also In re Dixie Broad., Inc.*, 871 F.2d 1023, 1027 (11th Cir. 1989) (naming financial distress as a factor to consider when deciding bad faith in the similar relief from automatic stay analysis).

So too here. Even in Jon's telling, the IP Liability has gone unpaid for almost a decade without consequence. There is no new urgency to pay it. Moreover, the IP Liability's validity is hardly a certainty. Effectively admitting the obligation is a made-for-litigation fraud, SmartComm does not even disclose it to prospective customers. *See* Ex. 17 (2024 SmartComm Customer Proposal Omitting IP Liability). It is such an "attenuated possibility" that Jon suddenly chose bankruptcy rather than try the merits of its validity in the Sarasota Action. *See* Ex. 19.

### 2. The Petitions Were Filed Specifically to Avoid Trial in the Sarasota Action.

Jon filed these cases to take the gavel from the Sarasota Court five days after it set a February trial on the IP Liability and Fla. Stat. § 607.1436 election to purchase valuation date, which is patent bad faith. *See* Ex. 19. "[I]nstitution of a Chapter 11 case for the sole purpose of invoking the automatic stay without the intent or the ability to reorganize was held to be a bad faith filing which warranted a dismissal." *Matter of Herndon Exec. Ctr., Inc.*, 36 B.R. 803, 806 (Bankr. M.D. Fla. 1984). "Additionally, petitions are routinely dismissed for lack of good faith where the case was filed as a litigation tactic." *In re Petersen*, 228 B.R. 19, 24–25 (Bankr. M.D. Fla. 1998); *see also In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 625 (3d Cir. 2009) ("[F]iling a Chapter 11 petition merely to obtain tactical litigation advantages is not within the legitimate scope of the bankruptcy laws[.] Where the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith.") (cleaned up).

Here, Debtors' pre-emptive Motion to Enforce or Extend Stay to non-debtors Jon and HLFIP evinces the true intent of the filings: holding off the Sarasota Action (including discovery, depositions, answers, and imminent trial) long enough to get this Court to recognize the fake debt.

The tactical nature of filing is further evidenced by SmartComm's selective notice and enforcement of the automatic stay. Jon and SmartComm filed their Notice of Suggestion of Bankruptcy in the Sarasota Court the Monday after their Saturday, November 30 filing. *See* Notice of Suggestion of Bankruptcy (filed December 2, 2024), Sarasota Action, *attached hereto as* **Exhibit 28**. Yet, SmartComm did not file a Notice of Suggestion of Bankruptcy or seek to inform the court of the automatic stay in *Smart Commc'n Holding, Inc. v. Correct Solutions, LLC et al.* where it was subject to multiple counterclaims. No. 8:20-cv-01469-WFJ-TGW, M.D. Fla.

11

(Removed to Federal Court on June 26, 2020). SmartComm likely did not notify that court of the automatic stay because it thought it was going to win there.³ And SmartComm continues aggressively litigating elsewhere—filing a new lawsuit against the City and County of Denver four days after filing their petitions. *See Smart Commc'n Holding, Inc. v. City and Cnty. of Denver*, No. 2024CV33720 (Colo. Dist. Ct. Dec. 3, 2024), *attached hereto as* **Exhibit 32**.

The timing of these petitions on the heels of an order setting trial, combined with Jon's selective signaling about the cause and effect of the bankruptcy, point unavoidably to the conclusion that the cases were filed in bad faith.

### B. Relatedly, Jon Is Not Yet the 100% Owner of SmartComm, and Therefore Did Not Have Authority to File.

SmartComm's furtive Chapter 11 filings the Saturday after Thanksgiving without notice to 50% owner Janice show their bad faith. As Janice pointed out in her Emergency Motion for Relief from Automatic Stay, SmartComm was not even forthright with this Court about its ownership status. *See* ECF No. 26, p. 15. Jon is not yet the 100% owner of SmartComm, and SmartComm's election to purchase does not provide a credible basis for asserting that he is before the Sarasota Court has performed a valuation and entered a purchase order. *See id.* at ¶¶ 15, 16.

---

³ Ultimately, in Findings of Fact and Conclusions of Law handed down in that case on Friday, Dec. 13, 2024, both SmartComm and Correct won on certain claims with the Court deciding not to award any damages to either party. In his findings of fact, Judge Jung became yet another jurist to discredit Jon Logan's sworn testimony:

> The main defender of the Smart products was Jon Logan, Smart's principal. The Court did not find this witness to be accurate or worthy of credit—the Court makes an adverse credibility finding. His testimony about the tablets was contradicted by multiple credible witnesses. He stated the customers who complained extensively were lying, and they were all engaged in a "sham" or a multi-faceted anti-Smart conspiracy. Or they were "idiots," Dkt. 381-9 at 78, or stupid. *Id.* A great weight of evidence contradicted this witness. Mr. Logan's testimony as to the tablets and relevant history was greatly outweighed by contrary evidence, and was materially contradicted by six or more credible witnesses.

Findings of Fact and Conclusions of Law, *Smart Commc'n Holdings, Inc. v. Correct Solutions, Inc., et al.*, No. 8:20-cv-01469-WFJ-TGW, ECF No. 387 (M.D. Fla. Dec. 13, 2024), *attached hereto as* **Exhibit 29**; *see also* Phase I Partial Final Judgment, Sarasota Action, *attached hereto as* **Exhibit 30**; *see also* Letter Order on Motion to Dismiss or Stay, *Jonathan Logan v. Loco Florida, LLC, et al.*, No. N23C-10-208 (Del. Super. Ct. March 20, 2024), *attached hereto as* **Exhibit 31**, at p. 10 (criticizing Jon's lack of candor in his unsworn filings).

12

Still, without notice to or getting the requisite permission from 50% shareholder Janice, SmartComm filed its petitions. Fla. Stat. § 607.1202 provides that a corporation may "dispose of all, or substantially all, of its property (with or without good will), otherwise than in the usual and regular course of business" only if "the board of directors proposes and its shareholders approve the proposed transaction." *Id*. § 607.1202(1). Florida courts have held that, because filing for bankruptcy disposes of all of a company's assets by placing them in a bankruptcy estate (11 U.S.C. § 541), the requirements of Fla. Stat. § 607.1202 apply. *See In re Zebranek & Doughten P.A.*, No. 01-04461-6B7, 2001 WL 1825793, at *2 (Bankr. M.D. Fla. July 31, 2001) (§ 607.1202's requirements must be fulfilled for Chapter 7 petition). Far from approving the filing, Janice had no knowledge that SmartComm would file the Chapter 11 petition.

Therefore, Jon did not even have the authority to file SmartComm's hasty petition, which is another sufficient basis for dismissal.

### C.     Chapter 11 Is an Inappropriate and Inefficient Vehicle for This Two-Sided Dispute.

Bankruptcy courts have seen this show before: discontented state court litigants abuse the Chapter 11 process hoping for different fortunes in a new forum. SmartComm is no different, and there is no reason to offer them a reprieve here. In affirming a bankruptcy court's dismissal of a bad faith petition, a Georgia district court observed that the reorganization sought to resolve what was essentially a "two-party dispute." *In re Nw. Place Ltd.*, 108 B.R. 809, 815 (N.D. Ga. 1988). There, the petitioner had attempted use Chapter 11 to undo a sale it had tried and failed to back out of—the state court had previously decided the sale documents were valid and binding. *Id*. at 811–12. The Georgia district court also agreed there was "an overwhelming amount of evidence supporting a finding of bad faith filing." *Id*. at 815. The bankruptcy court had held that it would "not allow a party to a state court litigation to seek refuge within the Bankruptcy laws of the United

States in order to undo what it agreed to do in a consent order signed by the state court, particularly when it will only benefit the debtor and related entities." *Id*. It also held:

> (1) that the transfer which was the object of the adversary proceeding affected only the debtor itself and other related entities;
> (2) that there were only a few other inconsequential unsecured creditors, and none had voiced any opposition to the [] Motion to Dismiss;
> (3) that the whole case was essentially a two-party dispute;
> (4) that the debtor was attempting to "escape" from the state court;
> (5) and that the debtor had failed to propose an effective plan of reorganization.

*Id*. at 812.

Similarly here, SmartComm seeks to escape the Sarasota Action, which is essentially (disregarding Jon's litigation-driven proliferation of Potemkin corporate identities) a two-party dispute in which it is now locked into purchasing Janice's shares. Ready proof that SmartComm merely wants a new judge for an old dispute is that Jon and SmartComm's Sarasota Action counsel ignore the clear conflict between Jon and the Debtor estates by seeking to appear on behalf of the estates here. *See* Application to Employ Eyal Berger and Dustin Hillsley of Akerman LLP, ECF No. 32.[4]

Dismissal of the petitions and adjudication of the Sarasota Action would benefit both SmartComm and its creditors. Freeing SmartComm of a fraudulent $90 million debt would maintain both the net income and assets to pay its creditors without reorganization. *See* ECF No. 6. The *only* potential loser if the cases are dismissed is Jon as the sole owner of HLFIP.

The stark and incurable conflict between Jon's interests and SmartComm's interests is yet another reason Chapter 11 is a poor fit for the purported Debtors. Indeed, Chapter 11 gives the

---

[4] Akerman represents both Jon and SmartComm in the Sarasota Action, which is itself plainly a conflict of interest (SmartComm has never been independently represented in the Sarasota Action). *See* Akerman Notice of Appearance, Sarasota Action, *attached hereto as* **Exhibit 33**. Janice will be filing an objection to that application shortly because Jon and SmartComm's interests are diametrically opposed here.

debtor-in-possession considerable power, and Jon (who benefits from saddling SmartComm with the IP Liability) is in sole control of SmartComm. Moreover, the Sarasota Court is positioned to imminently decide the IP Liability while giving Jon and HLFIP their day in Court to defend its validity. *See* Ex. 19.

It would be needlessly inefficient for this Court to familiarize itself with the IP Liability when the Sarasota Court understands the parties and the issues, and has already framed this particular matter for trial in February. *See* Ex. 19. This transparent attempt to escape what is essentially a two-party dispute in Florida should be dismissed as a bad faith abuse of the Chapter 11 process.

### D. In Further Evidence of Bad Faith, SmartComm, in Concocting the IP Liability, Effectively Transferred Its Assets Prior to Filing Its Petition.

Finally, while the IP Liability should be tried and invalidated in the Sarasota Action, it is in itself evidence of bad faith filing. "[A] transfer of one's assets to a non-debtor on the eve of the Chapter 11 filing has been considered to be evidence of bad faith filing and requires careful scrutiny." *Matter of Herndon Exec. Ctr., Inc.*, 36 B.R. at 806. That is precisely what happened here.

SmartComm essentially attempted to remove all of the value from SmartComm via the IP Liability, created on August 29, 2023 for SmartComm's entire 40% EBITDA margin and then backdated to 2015, before setting the Company ablaze so that Janice could not recover anything. *See supra*, ¶¶ 5–6. And, Jon did so in favor of shell company HLFIP, which he exclusively owns, that had been largely inactive prior to the Sarasota Action.

## CONCLUSION

WHEREFORE Creditor Janice Logan, as Trustee of the James Logan Family Trust, dated February 10, 2021, respectfully requests that this Court dismiss Debtors' Cases pursuant to 11 U.S.C. § 1112(b), and grant such further relief as it deems just and appropriate.

Dated:  December 17, 2024

/s/  *Edward J. Peterson*
Edward J. Peterson
Johnson Pope Bokor Ruppel & Burns, LLP
400 N. Ashley Drive, Suite 3100
Tampa, Florida 33602
Telephone:  (813) 225-2500
Email:  edwardp@jpfirm.com

*Attorney for Janice Logan, as Trustee of the James Logan Family Trust, dated February 10, 2021*

-AND-

David E. Schoenfeld (*pro hac vice*)
Illinois Bar No. 6197020
Email:  dschoenfeld@shb.com
Shook, Hardy & Bacon L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, Illinois 60606
Telephone:  (312) 704-7700

*Attorney for Janice Logan, as Trustee of the James Logan Family Trust, dated February 10, 2021*

## PROOF OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the Court's CM/ECF service to those parties receiving such service in the ordinary course of business on this 17th day of December 2024.

/s/  *Edward J. Peterson*
Edward J. Peterson