# EXHIBIT 1

## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## IN AND FOR SARASOTA COUNTY, FLORIDA

JONATHAN LOGAN and SMART
COMMUNICATIONS HOLDING, INC.,

        Plaintiffs,

v.

JANICE LOGAN, individually and as Trustee of the
James Logan Family Trust, dated February 10, 2021;
and ALEXIS LOGAN,

        Defendants.

_____/

JANICE LOGAN, as Trustee of the James Logan       Case No.: 2023-CA-1002-NC
Family Trust, dated February 10, 2021,

        Counterclaim Plaintiff,

v.

JONATHAN D. LOGAN, SMART
COMMUNICATIONS HOLDING, INC., SMART
COMMUNICATIONS HOLDING, LLC, HLFIP
HOLDING, INC., and HLFIP HOLDING, LLC,

        Counterclaim Defendants.

_____/

JANICE LOGAN, as Trustee of the James Logan Family     (CONSOLIDATED)
Trust, dated February 10, 2021, and derivatively on
Behalf of Smart Communications Holding, Inc.,

        Plaintiff,               Case No.: 2023-CA-1280-NC

v.

JONATHAN D. LOGAN,
SMART COMMUNICATIONS HOLDING, INC.,
nominal defendant, SMART COMMUNICATIONS
HOLDING, LLC, HLFIP HOLDING, INC., HLFIP
HOLDING, LLC, LOCO FLORIDA LLC, and
SMART COMMUNICATIONS YACHT
HOLDING, LLC,

        Defendants

_____/

## SMART COMMUNICATIONS HOLDING, INC.'S ELECTION TO PURCHASE
## PURSUANT TO FLORIDA STATUTE § 607.1436

Smart Communications Holding, Inc. ("Smart Communications" or the "Company"), pursuant to § 607.1436, Fla. Stat., elects to purchase all shares of the Company owned by the James Logan Family Trust, dated February 10, 2021, at fair value.

Smart Communications reserves all rights available to it under § 607.1436, or otherwise, including its right to deny, contest and/or object to the allegations raised in the Second Amended Complaint dated May 29, 2024.

Dated:  June 20, 2024

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
Highpoint Center
106 East College Avenue - Suite 700
Tallahassee, FL 32301
Telephone: (850) 580-7200
gburhans@stearnsweaver.com

By: *s/ Glenn Burhans, Jr.*
Glenn Burhans, Jr.
Florida Bar No. 605867

-and-

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
200 East Las Olas Boulevard, Suite 2100
Fort Lauderdale, Florida 33301
Telephone:  (954) 462-9500
mharwin@stearnsweaver.com
mhernandez@stearnsweaver.com

By: */s/Michael J. Harwin*
Michael J. Harwin
Florida Bar No.: 1018578

**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, FL 33602-5250
Office: (813) 23-7333
Fax: (813)218-5495
mark.bernet@akerman.com
caren.deruiter@akerman.com

By:*/s/ Mark J. Bernet*
Mark J. Bernet, Esq.
Florida Bar No. 606359

-and-

**AKERMAN LLP**
201 East Las Olas Boulevard
Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 463-2700
Fax: (954) 463-2224

Jason S. Oletsky, Esq.
Florida Bar No. 9301
jason.oletskey@akerman.com
jill.parnes@akerman.com
Dustin B. Hillsley, Esq.
Florida Bar No. 1018589
dustin.hillsley@akerman.com
deborah.karlson@akerman.com
Max C. Rudolf, Esq.
Florida Bar No. 98766
max.rudolf@akerman.com
deborah.karlson@akerman.com

*Counsel for Smart Communications Holding, Inc.*

76886216;1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on June 20,

2024, via electronic mail through the Florida Court's E-Portal to:


Anitra R. Clement
Florida Bar No. 100354
**SHOOK, HARDY & BACON L.L.P.**
100 N. Tampa Street, Suite 2900
Tampa, FL 33602
Telephone: (813) 202-7100
aclement@shb.com

David E. Schoenfeld (FL PHV # 1047561)
Peter F. O'Neill (FL PHV # 1043125)
Andrew L. Franklin (FL PHV # 1035737)
Kailin Liu (FL PHV # 1051416)
**SHOOK, HARDY & BACON L.L.P.**
111 S. Wacker Drive, Suite 4700
Chicago, IL 60606
Telephone: (312) 704-7700
dschoenfeld@shb.com
pfoneill@shb.com
afranklin@shb.com
kliu@shb.com

/s/*Mark Bernet*
Mark Bernet, Esq.

76886216;1

# EXHIBIT 2

**CONFIDENTIAL LICENSE AGREEMENT**

# EXCLUSIVE INTERCOMPANY
# INTELLECTUAL PROPERTY LICENSE AGREEMENT

This Exclusive Intercompany Intellectual Property License Agreement ("**Agreement**"), effective as of August 29, 2023 (the "**Effective Date**"), is by and between HLFIP Holding, LLC, a Delaware limited liability company ("**Licensor**") and Smart Communications Holding, LLC, a Delaware limited liability company ("**Licensee**") (collectively, the "**Parties**," or each, individually, a "**Party**").

WHEREAS, Licensor is the sole owner of all right, title, and interest in certain intellectual property, including proprietary technology, patents, patent applications, registered and common law names, trademarks, service marks, logos, federal trademark registrations, and know-how (including those items set forth on **Schedule 1**, which may be supplemented or amended from time to time) aimed at inmate communications technology and services, including to eliminate contraband in postal mail at correctional facilities, improve the safety of inmates and correctional facilities, improve correctional facility and inmate surveillance, and improve communication systems to be used by inmates and their friends and families (collectively, the "**Licensed Intellectual Property**");

WHEREAS, Licensee desires to distribute and sell inmate communication systems and services to correctional facilities in the United States (the "**Business**");

WHEREAS, Licensee specifically acknowledges that Licensor has valuable goodwill associated with its names, trademarks, service marks, and logos used as trademarks in connection with inmate communication systems and services;

WHEREAS, Licensee wishes to license the Licensed Intellectual Property to facilitate Licensee's conduct of the Business;

WHEREAS, Licensor is willing to grant to Licensee an exclusive license to use the Licensed Intellectual Property on the terms set forth herein;

WHEREAS, the parties desire to allocate rights to the intellectual property developed by, or acquired by either of them for inmate communication systems and services developed under this Agreement in accordance with the terms and conditions set forth herein; and

WHEREAS, Licensor and Licensee are commonly controlled.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. <u>License.</u>

 1.1 <u>License Grant</u>. Subject to the terms and conditions of this Agreement, Licensor hereby grants to Licensee during the Term (as defined below) an exclusive, non-transferable,

## CONFIDENTIAL LICENSE AGREEMENT

non-sublicensable license to make, have made, use, import, export, sell, and offer for sale the Licensed Intellectual Property in connection with the conduct of the Business in the United States and in accordance with standards, specifications, and/or instructions approved by Licensor, from time to time.

1.2     Ownership. Licensee acknowledges and agrees that Licensor shall retain all right, title, and interest in and to the Licensed Intellectual Property and all rights relating thereto; that the license and rights granted in this Agreement will not be construed to confer any rights upon Licensee by implication, estoppel, or otherwise as to any technology not identified in **Schedule 1**; that all use and goodwill symbolized by and connected with the use of the Licensed Intellectual Property by Licensee shall inure solely to the benefit of Licensor; and that Licensee acquires no ownership right in or to the Licensed Intellectual Property as a result of this Agreement.

1.3     Prosecution and Maintenance. Licensor has the sole right, in its discretion and at its Licensee's expense, to file, prosecute, and maintain all applications, registrations, and patents relating to the Licensed Intellectual Property. Licensee shall provide, at the request of Licensor and at Licensee's expense, all necessary assistance with such filing, maintenance, and prosecution.

1.4     Recordation of License. Licensor shall make all necessary filings to record this Agreement in the United States Patent and Trademark Office and in the corresponding offices or agencies where it may be required under applicable law, including as a prerequisite to enforcement of the Licensed Intellectual Property or enforceability of this Agreement in the courts, and any recordation fees and related costs and expenses will be at Licensee's expense.

1.5     Assignments and Sublicensing. The license hereby granted is and shall be personal to the Licensee, and unless Licensor consents in writing, shall not be assignable by any act of Licensee or by operation of law. Furthermore, the license and rights granted hereunder may not be sublicensed, conveyed, assigned, or otherwise transferred by Licensee to any third party. Any purported sublicense, conveyance, assignment, or transfer will be void and of no force and effect.

1.6     Prior Exclusive License Agreement. Licensee acknowledges that Licensor previously exclusively licensed the Licensed Intellectual Property to another party, and that under that pre-existing license agreement, the prior licensee executed contracts that extend beyond the Effective Date of this Agreement. Licensee hereby acknowledges that despite Licensor's exclusive license grants to Licensee under this Agreement, Licensor has also agreed to allow the prior licensee to continue to use the Licensed Intellectual Property beyond this Agreement's Effective Date, until the prior contracts naturally expire. Licensee hereby consents to this limited period of overlap of the Licensed Intellectual Property license grants.

1.7     Reservation of Rights. Licensor hereby reserves all rights not expressly granted to Licensee under this Agreement.

2.      Use of Licensed Intellectual Property.

2

CONFIDENTIAL
SMART_B&R 000533

## CONFIDENTIAL LICENSE AGREEMENT

2.1 <u>Notices</u>. Licensee shall ensure that all use of Licensed Intellectual Property hereunder is accompanied by or marked with the appropriate proprietary rights notices, symbols, and legends as may be reasonably necessary under applicable law to maintain the Licensed Intellectual Property and Licensor's proprietary rights therein and in such order and manner as may be reasonably specified by Licensor. Without limiting the foregoing, Licensee shall comply with the patent marking provisions of 35 U.S.C. § 287(a) by marking all Licensed Products/patented products covered by any Licensed Intellectual Property with the word "patent" or the abbreviation "pat." and either the relevant patent numbers or a web address that is freely accessible to the public and that lists the relevant patent numbers.

2.2 <u>Modifications</u>. As between the Parties, Licensor owns any improvement, enhancement, or other modification of or derivative work based on any of the Licensed Intellectual Property made by or on behalf of Licensee or Licensor (each, a "**Modification**"). Licensee shall immediately notify Licensor of any Modification made by or on behalf of Licensee (each, a "**Licensee Modification**"). Licensee hereby assigns to Licensor all of its right, title, and interest in and to all Licensee Modifications, including all rights to apply for any patents, trademarks, or other intellectual property registrations with respect to such Licensee Modifications and all enforcement rights and remedies for past, present, and future infringement thereof and all rights to collect royalties and damages therefor. All patent applications and trademark applications filed by Licensor with respect to any such Licensee Modification and all patents or trademark registrations issuing therefrom shall automatically be included in the Licensed Intellectual Property and subject to the license granted to Licensee under Section 1.1. At the request of Licensor, Licensee shall promptly execute and deliver such documents as may be necessary or desirable to effect and perfect the foregoing assignment of rights.

2.3 <u>Quality</u>. Licensee acknowledges and is familiar with the high standards and reputation for quality symbolized by the trademarks, service marks, and logos included in the Licensed Intellectual Property as of the Effective Date ("**Licensed Marks**"). Licensee agrees to conduct the Business and use the Licensed Marks in a manner at least consistent with such quality standards and reputation. Licensee shall comply with Licensor's guidelines and specifications regarding the style, appearance, and usage of the Licensed Marks. Licensor may exercise quality control over all uses of the Licensed Marks under this Agreement to maintain the validity of the Licensed Marks and protect the goodwill associated therewith. If Licensor determines that the quality and nature of the goods and services with which the Licensed Marks are used by Licensee do not meet the standards and requirements set forth by Licensor, Licensee agrees to meet or exceed the standards and requirements set forth by Licensor within thirty (30) days of receiving written notification of a failure to meet the standards and requirements for the quality and nature of the goods with which the Licensed Marks are used. Approval of any use by Licensee of the Licensed Marks, once given by Licensor, will continue in effect, without need for future approval, so long as Licensee's use of the Licensed Marks in connection with the goods and services of the Business continues to be substantially consistent with such previously approved use.

3. <u>Improvements</u>.

3.1 <u>Ownership of Improvements</u>. Each Party shall advise the other of any technical improvements, modifications, or enhancements relating to the Licensed Intellectual Property

3

CONFIDENTIAL
SMART_B&R 000534

## CONFIDENTIAL LICENSE AGREEMENT

created from time to time and useful to effectively operate the Licensed Intellectual Property (collectively referred to as "**Improvements**"). Any and all such Improvements shall be the property of Licensor. All Improvements made by Licensor shall be included in the license grant of Section 1.1. All Improvements made by Licensee shall be the property of Licensor and shall be licensed to Licensee for its use. Improvements that are made jointly by the parties shall be owned by Licensor. Each Party agrees to execute any and all documents requested by the other to perfect rights to jointly made Improvements.

4.    Actions by Third Parties.

     4.1    Infringement Actions. Licensee shall promptly notify Licensor in writing of any actual, suspected, or threatened infringement, misappropriation, or other violation of any Licensed Intellectual Property by any third party of which it becomes aware. Licensor has the sole right, in its discretion, and at Licensee's expense, to (a) bring any action or proceeding with respect to any such infringement; (b) defend any declaratory judgment action concerning any Licensed Intellectual Property; and (c) control the conduct of any such action or proceeding (including any settlement thereof). Licensee shall provide Licensor with all assistance that Licensor may reasonably request, at Licensee's expense, in connection with any such action or proceeding. Licensor and Licensee will evenly split any monetary recovery resulting from any such action or proceeding (including any settlement thereof) for each's own account, subject to reimbursement of Licensee's costs, fees or expenses incurred in such action.

     4.2    Other Actions by a Third Party.  Each Party shall promptly notify the other in the event of any legal or administrative action by any third party involving the Licensed Intellectual Property of which it becomes aware, including any opposition, cancellation, or revocation proceeding. Licensor shall have the right, but not the obligation, to defend against any such action involving the Licensed Intellectual Property, and any such defense shall be at Licensee's expense. If Licensor fails to defend against any such action, then Licensee shall have the right to defend such action, in its own name, and any such defense shall be at Licensee's expense.

5.    Payment.

     5.1    Royalty. On or before the last business day of each calendar year during the term of this Agreement, Licensee shall pay to Licensor a royalty of 40 percent (40%) of the Net Sales of products and services sold by Licensee to any third party ("**Royalty Fee**"). "**Net Sales**" means, for any period of determination, the aggregate amount invoiced by Licensee to a third party for Business in the United States, less any credits, refunds, customary and usual trade discounts, rebates, discounts, charge-backs, and sales taxes, excluding net income tax. The amounts of any deductions shall be determined from books and records maintained in accordance with International Financial Reporting Standards, consistently applied.

     5.2    Maintenance of Books and Records; Record Inspection and Audit. Licensee shall keep complete and accurate books and records as reasonably necessary for the calculation the Royalty Fee payable under Section 5.1. Licensee further agrees it shall make these records available for inspection, from time to time, by Licensor, or a third party retained by Licensor, at Licensee's site and at Licensee's cost. Any audit and/or inspection shall be conducted during

CONFIDENTIAL
SMART_B&R 000535

## CONFIDENTIAL LICENSE AGREEMENT

regular business hours at Licensee's facilities upon at least seven (7) days prior written notice. Such examination shall be conducted in such a manner as to not unduly interfere with Licensee's business. If the audit reveals an underpayment of Royalty Fee by Licensee under this Agreement, Licensee shall pay to Licensor the full amount of any underpayment revealed by the audit, plus interest at the per annum prime rate in effect at the Chase Manhattan Bank, N.A., New York, New York, on the due date.

6.    Confidentiality. Each Party acknowledges that in connection with this Agreement it will gain access to certain confidential and proprietary information of the other Party (collectively, "**Confidential Information**"). Without limiting the foregoing, for purposes of this Agreement, all trade secrets and confidential information included in the Licensed Intellectual Property, including unpublished patent applications, will be deemed Confidential Information of Licensor. Each Party shall maintain the Confidential Information in strict confidence and not disclose any Confidential Information to any other person, except to its employees who (a) have a need to know such Confidential Information for such Party to exercise its rights or perform its obligations hereunder; and (b) are bound by written nondisclosure agreements. Each Party shall use reasonable care, at least as protective as the efforts it uses with respect to its own confidential information, to safeguard the Confidential Information from use or disclosure other than as permitted hereby.

7.    Indemnification. Licensee shall indemnify, defend, and hold harmless Licensor, its Affiliates, officers, directors, employees, agents and representatives against all losses, liabilities, claims, damages, actions, fines, penalties, expenses or costs (including court costs and reasonable attorneys' fees) arising out of or in connection with any third-party claim, suit, action, or proceeding relating to any breach of this Agreement by Licensee and use by Licensee of any Licensed Intellectual Property under this Agreement.

8.    Term and Termination. This Agreement begins on the Effective Date and will remain in force until terminated ("**Term**"). Licensor may terminate this Agreement at any time without cause, and without incurring any additional obligation, liability, or penalty. Licensee may terminate this Agreement at any time with prior written notice to Licensor.

9.    General Provisions.

9.1    Amendments. No amendment to this Agreement will be effective unless it is in writing and signed by both Parties.

9.2    No Third-Party Beneficiaries. This Agreement solely benefits the Parties and their respective permitted successors and assigns and nothing in this Agreement, express or implied, confers on any other person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

9.3    Counterparts. This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together are deemed to be one and the same agreement.

9.4    Severability. If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability will not affect

CONFIDENTIAL
SMART_B&R 000536

## CONFIDENTIAL LICENSE AGREEMENT

any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

9.5 <u>Governing Law</u>. This Agreement, including all exhibits, schedules, attachments, and appendices attached to this Agreement and thereto, and all matters arising out of or relating to this Agreement, are governed by, and construed in accordance with, the laws of the State of Delaware, without regard to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of Delaware.

9.6 <u>Waiver</u>. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any rights, remedy, power, or privilege arising from this Agreement will operate or be construed as a waiver thereof, nor will any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

9.7 <u>Notices</u>. All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified):

If to Licensor:

HLFIP Holding, LLC
10491 72nd Street
Seminole, Florida 33777
Email: jon.logan787@gmail.com
Attention: Jon Logan

If to Licensee:

Smart Communications Holding, LLC
10491 72nd Street
Seminole, Florida 33777
Email: legal@smartcommunications.us
Attention: Legal Dept.

9.8 <u>Entire Agreement</u>. This Agreement, including and together with any related exhibits, schedules, attachments, and appendices, constitutes the sole and entire agreement of Licensor and Licensee with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, regarding such subject matter.

[SIGNATURE PAGE FOLLOWS]

6

CONFIDENTIAL
SMART_B&R 000537

## CONFIDENTIAL LICENSE AGREEMENT

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed as of the August 29, 2023, by their respective officers thereunto duly authorized.

HLFIP Holding, LLC

By _____

Name: Jon Logan

Title: President

Smart Communications Holding, LLC

By _____

Name: Jon Logan

Title: CEO

7

CONFIDENTIAL
SMART_B&R 000538

**CONFIDENTIAL LICENSE AGREEMENT**

**SCHEDULE 1: LICENSED INTELLECTUAL PROPERTY**

| PATENTS | | | | |
|---|---|---|---|---|
| Assignee | Country | Title | Publication No. | Patent No. |
| HLFIP Holding, LLC | USA | CORRECTIONAL POSTAL MAIL CONTRABAND ELIMINATION SYSTEM | 2020/0128014 A1 | 11457013 |
| HLFIP Holding, LLC | USA | CORRECTIONAL POSTAL MAIL CONTRABAND ELIMINATION SYSTEM | 2016/0337360 A1 | 10291617 |
| HLFIP Holding, LLC | USA | CORRECTIONAL INSTITUTION LEGAL POSTAL MAIL PROCESSING SYSTEM AND METHOD | 2020/0280645 A1 | 11637940 |
| HLFIP Holding, LLC | USA | CORRECTIONAL INSTITUTION LEGAL POSTAL MAIL PROCESSING SYSTEM AND METHOD | 2019/0268488 A1 | 10659630 |
| HLFIP Holding, LLC | USA | COMMUNICATION TRACKING SYSTEM FOR CORRECTIONAL FACILITIES | 2019/0386996 A1 | 10862891 |
| HLFIP Holding, LLC | USA | SYSTEMS AND METHODS FOR PROCESSING REQUESTS TO SEND PRIVATE POSTAL MAIL TO AN INMATE | 2020/0396347 A1 | 11201974 |

8

CONFIDENTIAL
SMART_B&R 000539

CONFIDENTIAL LICENSE AGREEMENT

| PATENT APPLICATIONS | | | | | |
|---|---|---|---|---|---|
| Assignee | Country | Title | Application No. | Filing Date | Publication No. |
| HLFIP Holding, LLC | USA | CORRECTIONAL POSTAL MAIL CONTRABAND ELIMINATION SYSTEM | 17/363499 | 06/30/2021 | 2022/0060475 A1 |
| HLFIP Holding, LLC | USA | COMMUNICATION TRACKING SYSTEM FOR CORRECTIONAL FACILITIES | 17/114326 | 12/7/2020 | 2021/0194878 A1 |
| HLFIP Holding, LLC | USA | SYSTEMS AND METHODS FOR PROCESSING REQUESTS TO SEND PRIVATE POSTAL MAIL TO AN INMATE | 17/549349 | 12/13/2021 | 2022/0103701 A1 |
| HLFIP Holding, LLC | USA | SMART WEARABLE DEVICE FOR TRACKING AND MONITORING INDIVIDUALS IN A CORRECTIONAL FACILITY | 17/580462 | 1/20/2022 | 2022/0225947 A1 |
| HLFIP Holding, LLC | USA | STATIONARY EXERCISE BIKE FOR USE IN A CORRECTIONAL FACILITY | 17/194190 | 3/5/2021 | 2021/0275863 A1 |

9

CONFIDENTIAL
SMART_B&R 000540

**CONFIDENTIAL LICENSE AGREEMENT**

| TRADEMARKS | | | |
|---|---|---|---|
| Owner | Country | Trademark | Reg. No. |
| HLFIP Holding, LLC | USA | MAILGUARD | 5,135,773 |
| HLFIP Holding, LLC | USA | MAILGUARD POSTAL MAIL ELIMINATION LOGO | 5,135,772 |
| HLFIP Holding, LLC | USA | MAILGUARD CONNECT | |
| HLFIP Holding, LLC | USA | MAILGUARD DIGITAL | |
| HLFIP Holding, LLC | USA | MAILGUARD TRACKER | |
| HLFIP Holding, LLC | USA | MAILGUARDLEGAL | |
| HLFIP Holding, LLC | USA | SMARTECOSYSTEM | |
| HLFIP Holding, LLC | USA | SMARTED | |
| HLFIP Holding, LLC | USA | SMARTENTERTAINMENT | |
| HLFIP Holding, LLC | USA | SMARTLAW | |
| HLFIP Holding, LLC | USA | SMARTLINK | |
| HLFIP Holding, LLC | USA | SMARTREENTRY | |
| HLFIP Holding, LLC | USA | SMARTREQUEST | |
| HLFIP Holding, LLC | USA | SMARTSUMMIT | |
| HLFIP Holding, LLC | USA | SMARTTABLET | |
| HLFIP Holding, LLC | USA | SMARTVISIT | |
| HLFIP Holding, LLC | USA | SMARTWATCH | |

CONFIDENTIAL
SMART_B&R 000541

## CONFIDENTIAL LICENSE AGREEMENT

| LICENSED KNOW HOW | |
|---|---|
| Owner | Technology |
| HLFIP Holding, LLC | MAILGUARD |
| HLFIP Holding, LLC | MAILGUARD DIGITAL |
| HLFIP Holding, LLC | MAILGUARD TRACKER |
| HLFIP Holding, LLC | MAILGUARDLEGAL |
| HLFIP Holding, LLC | SMARTECOSYSTEM |
| HLFIP Holding, LLC | SMARTED |
| HLFIP Holding, LLC | SMARTENTERTAINMENT |
| HLFIP Holding, LLC | SMARTLAW |
| HLFIP Holding, LLC | SMARTLINK |
| HLFIP Holding, LLC | SMARTREENTRY |
| HLFIP Holding, LLC | SMARTREQUEST |
| HLFIP Holding, LLC | SMARTTABLET |
| HLFIP Holding, LLC | SMARTVISIT |
| HLFIP Holding, LLC | SMARTWATCH |

11

CONFIDENTIAL
SMART_B&R 000542

# EXHIBIT 3

**Smart Communications Holding, Inc.**

**Consolidated Audited Financial Statements**

**December 31, 2022**

PRIVATE AND CONFIDENTIAL

**Prepared by:**

**M. L. Shreve  CPA, P.C.**
**7781  N. Easy Street**
**Whitehall, Michigan  49461**
**231.894.5559**

**Smart Communications Holding, Inc.**
Table of Contents
December 31, 2022

| | Page No. |
|---|---|
| **Independent Auditor's Report** | 1 - 2 |
| | |
| **Financial Statements** | |
| Consolidated Balance Sheet | 3 |
| Consolidated Income Statement | 4 - 6 |
| Consolidated Statement of Retained Earnings | 7 |
| Consolidated Statement of Cash Flows | 8 |
| Consolidated Notes to Financial Statements | 9 - 13 |

PRIVATE AND CONFIDENTIAL



**MLS**

M.L. Shreve CPA, P.C.
7781 N. Easy Street
Whitehall, Michigan 49461
231.894.5559 (phone)
231.893.2097 (fax)
www.mlshrevecpa.com
mlshrevecpa@frontier.com (email)

October 25, 2023

**Independent Auditor's Report**

To the Board of Directors
Smart Communications Holding, Inc.
Seminole, Florida 33777

*Opinion*

We have audited the consolidated financial statements of Smart Communications Holding, Inc., which comprise the consolidated balance sheet as of December 31, 2022, and the related consolidated statements of income, retained earnings, and cash flows for the year then ended, and the related notes to the consolidated financial statements.

In our opinion, the accompanying consolidated financial statements present fairly, in all material respects, the financial position of Smart Communications Holding, Inc. as of December 31, 2022, and the results of its operations and its cash flows for the year then ended in accordance with accounting principles generally accepted in the United States of America.

*Basis for Opinion*

We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Our responsibilities under those standards are further described in the Auditor's Responsibilities for the Audit of the Financial Statements section or our report. We are required to be independent of Smart Communications Holding, Inc. and to meet our other ethical responsibilities, in accordance with the relevant ethical requirements relating to our audit. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

*Responsibilities of Management for the Consolidated Financial Statements*

Management is responsible for the preparation and fair presentation of the consolidated financial statements in accordance with accounting principles generally accepted in the United States of America, and for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of consolidated financial statements that are free from material misstatement, whether due to fraud or error.

In preparing the consolidated financial statements, management is required to evaluate whether there are conditions or events, considered in the aggregate, that raise substantial doubt about Smart Communications Holding, Inc.'s ability to continue as a going concern within one year after the date that the consolidated financial statements are available to be issued.

*1*

CONFIDENTIAL
SMART_B&R 000304

***Auditor's Responsibilities for the Audit of the Consolidated Financial Statements***

Our objectives are to obtain reasonable assurance about whether the consolidated financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance but is not absolute assurance and therefore is not a guarantee that an audit conducted in accordance with generally accepted auditing standards will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the consolidated financial statements.

In performing an audit in accordance with generally accepted auditing standards, we:

Exercise professional judgment and maintain professional skepticism throughout the audit.

Identify and assess the risks of material misstatement of the consolidated financial statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the consolidated financial statements.

Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances but not for the purpose of expressing an opinion on the effectiveness of Smart Communications Holding, Inc.'s internal control. Accordingly, no such opinion is expressed.

Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the consolidated financial statements.

Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about Smart Communications Holding, Inc.'s ability to continue as a going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control-related matters that we identified during the audit.

*M. L. Shreve CPA, P.C.*

M. L. Shreve CPA, P.C.
Whitehall, Michigan 49461

2

CONFIDENTIAL
SMART_B&R 000305

**Smart Communications Holding, Inc.**
*Consolidated Balance Sheet*
December 31, 2022

## ASSETS

| | | | | |
|---|---|---:|---|---:|
| **Current Assets** | | | | |
| Cash and Cash Equivalents | $ | 865,720 | | |
| Accounts Receivable - Trade | | 462,259 | | |
| Federal Corporate Income Tax Receivable | | 1,375,000 | | |
| Florida Corporate Income Tax Receivable | | 459,114 | | |
| Technology Grant Advance | | 37,539 | | |
| Prepaid Expenses | | 723,934 | | |
| Inventory | | 690,704 | | |
| **Total Current Assets** | | | $ | 4,614,270 |
| **Fixed Assets** | | | | |
| Buildings | | 5,071,155 | | |
| Kiosk Computer System | | 2,987,602 | | |
| Computer Software | | 2,987,876 | | |
| Leasehold Improvements | | 355,751 | | |
| Vehicles | | 2,682,697 | | |
| Display System & Demo Build | | 43,780 | | |
| Equipment | | 599,469 | | |
| Furniture | | 163,692 | | |
| | | 14,892,022 | | |
| Less: Accumulated Depreciation | | (7,158,755) | | |
| **Property & Equipment, Net** | | | | 7,733,267 |
| **Other Assets** | | | | |
| Shareholder Loans | | 2,914,086 | | |
| Affiliated Entities Receivable | | | | |
| Smart Communications Yacht Holding LLC | | 5,505,639 | | |
| Mailguard Federal Inc | | 1,746,369 | | |
| Loco Florida LLC | | 1,358,011 | | |
| HLFIP | | 169,685 | | |
| **Total Other Assets** | | | | 11,693,790 |
| **TOTAL ASSETS** | | | $ | 24,041,327 |

## LIABILITIES AND EQUITY

| | | | | |
|---|---|---:|---|---:|
| **LIABILITIES** | | | | |
| **Current Liabilities** | | | | |
| Accounts Payable | $ | 1,277,645 | | |
| Accrued Credit Cards | | 182,611 | | |
| Accrued Commissions | | 971,993 | | |
| Accrued Facility Tech Grant | | 142,998 | | |
| Accrued Expenses | | 201,592 | | |
| Current Portion - Long Term Debt | | 589,405 | | |
| **Total Current Liabilities** | | | $ | 3,366,244 |
| **Long Term Liabilities** | | | | |
| Lattice Technology License | | 665,000 | | |
| Note Payable - HLFIP | | 52,848,813 | | |
| interest Payable - HLFIP | | 5,592,170 | | |
| Notes Payable - Vehicles | | 59,714 | | |
| Less Current Portion | | (589,405) | | |
| **Total Long Term Debt** | | | | 58,576,292 |
| **Total Liabilities** | | | | 61,942,536 |
| **EQUITY** | | | | |
| Common Stock | | 448,968 | | |
| Paid In Capital | | 392,151 | | |
| Retained Earnings | | (38,742,328) | | |
| **Total Equity** | | | | (37,901,209) |
| **TOTAL LIABILITIES AND EQUITY** | | | $ | 24,041,327 |

*See Notes to Consolidated Financial Statements.*

3

CONFIDENTIAL
SMART_B&R 000306

**Smart Communications Holding, Inc.**
*Consolidated Statement of Income*
**For the year ended December 31, 2022**

| | | |
|---|---:|---:|
| **Revenue** | | |
| Mail Services Income | $ | 4,512,000 |
| Messaging Sales | | 25,801,718 |
| Telephone Call Sales | | 9,982,532 |
| Telephone Service Fees | | 4,388,973 |
| Trust Account Funding Fees | | 37,076 |
| Miscellaneous Income | | 93,375 |
| | | 44,815,675 |
| Less Reurns and Allowances | | (35,341) |
| | | 44,780,334 |
| **Total Cost of Sales** | | (25,540,158) |
| **Gross Profit** | | 19,240,176 |
| | | |
| **Total Operating Expenses** | | (32,041,827) |
| | | |
| **Income /Loss from Operations** | | (12,801,651) |
| | | |
| **Other Income and (Expense)** | | |
| Interest Expense | $ (461,010) | |
| Penalties and Late Fees | (22,137) | |
| | | (483,147) |
| **Net Other Income and (Expense)** | | (483,147) |
| | | |
| **Net Income (Loss) for the Year** | $ | (13,284,798) |

.

*See Notes to Consolidated Financial Statements*      *4*

PRIVATE AND CONFIDENTIAL

**Smart Communications Holding, Inc.**
*Consolidated Statement of Income - Cost of Sales*
**For the year ended December 31, 2022**

| Cost of Sales | | | |
|---|---|---|---|
| Beginning Inventory | $ | | $ 1,894,859 |
| Computer and Tablet Purchases | 3,716,300 | | |
| Software Purchases | 171,080 | | |
| Technology Grant & Services - Facilities | 214,397 | | |
| Equipment Design | 70,000 | | |
| Watch | 144,714 | | |
| Voice Over IP | 224,730 | | |
| Freight and Shipping | 548,212 | | |
| Telecommunications Taxes Expense | 629,686 | | |
| Contractor Services | 1,605,422 | | |
| Facililtes Commissions Expense | 11,322,286 | | |
| Salesperson Commissions | 164,193 | | |
| Sublicense Royalty Fees Expense | 23,496 | | |
| Data Sorage & Server Hosting | 167,343 | | |
| Labor - Telephone CC Sales | 616,321 | | |
| Labor - Installations | 258,964 | | |
| Labor - Mail Processing | 466,778 | | |
| Labor - Repairs & Maintenance | 601,662 | | |
| Internet Services | 478,554 | | |
| Merchant Card Fees | 1,625,594 | | |
| Travel | 1,204,257 | | |
| Meals | 82,014 | | |
| | | | 24,336,003 |
| | | | 26,230,862 |
| Less Ending Inventory | | | (690,704) |
| Cost of Sales | | | 25,540,158 |

PRIVATE AND CONFIDENTIAL

*See Notes to Consolidated Financial Statements*                    5

CONFIDENTIAL
SMART_B&R 000308

**Smart Communications Holding, Inc.**
*Consolidated Statement of Income  - Operating Expenses*
**For the year ended December 31, 2022**

| Description | | Amount |
|---|---|---|
| Advertising and Promotions | $ | 187,879 |
| Bank Service Fees | | 6,804 |
| Depreciation Expense | | 1,636,576 |
| Health Insurance | | 369,967 |
| Workman Compensation Insurance | | 22,601 |
| Business Insurance Expense | | 331,853 |
| Outside Services | | 9,744 |
| Dues and Subscriptions | | 98,821 |
| Computer Expenses | | 162,968 |
| Professional Fees | | 110,937 |
| Regulatory and Registration Fees | | 587,094 |
| Legal Fees | | 2,562,058 |
| IP License Fees | | 17,874,783 |
| Officer Compensation | | 160,385 |
| Wages and Salaries | | 4,814,980 |
| Payroll Taxes Expense | | 568,542 |
| Payroll Service Fees | | 79,354 |
| Property Taxes | | 71,668 |
| Repairs and Maintenance | | 472,332 |
| Rent Expense | | 793,547 |
| Telephone Expense | | 50,197 |
| Contract Labor Expense | | 293,580 |
| Website Design and Maintenance | | 89,318 |
| Client Welfare Expense | | 142,976 |
| Recruitment Fees | | 131,372 |
| Professional Education | | 8,316 |
| Licenses and Permits | | 162 |
| Charitable Contributions | | 19,340 |
| Employee Welfare Expense | | 7,708 |
| Meals and Entertainment | | 144,538 |
| Office Expense | | 160,302 |
| Utilities | | 50,197 |
| Postage and Shipping | | 18,982 |
| Other Expenses | | 1,958 |
| **Total Operating Expenses** | | **32,041,827** |

*See Notes to Consolidated Financial Statements*                    6

CONFIDENTIAL
SMART_B&R 000309

**Smart Communications Holding, Inc.**
*Consolidated Statement of Retained Earnings*
**For the year ended December 31, 2022**

| | | |
|---|---|---:|
| Retained Earnings - Beginning of Year | $ | 15,211,356 |
| Effect on Retained Earnings for Prior Years' IP License Fee Liability and Interest | | (40,668,886) |
| Net Income for the Year | | (13,284,798) |
| Retained Earnings - End of Year | $ | (38,742,328) |

*See Notes to Consolidated Financial Statements.*          **7**

PRIVATE AND CONFIDENTIAL

CONFIDENTIAL
SMART_B&R 000310

**Smart Communications Holding, Inc.**
**Consolidated Statement of Cash Flows**
**For the year ended December 31, 2022**

| | | |
|---|---|---:|
| **Cash Flows from (Provided to) Operating Activities** | | |
| Net Income (Loss) form Operations | $ | (13,284,798) |
| Adjustments to reconcile increase in net assets | | |
| to net cash provided by (used in) operating activities: | | |
| Depreciation | | 1,636,576 |
| | | (11,648,222) |
| (Increase) Decrease in operating assets: | | |
| Accounts Receivable | | (223,173) |
| Corporate Taxes Receivable | | (1,624,177) |
| Employee Advances Receivable | | 7,149 |
| Other Receivables | | (9,364,949) |
| Prepaid Expenses | | (49,434) |
| Prepaid Corporate Taxes | | (345,697) |
| Inventory | | 1,203,684 |
| Deferred Taxes | | 90,269 |
| Increase (Decrease) in operating liabilities: | | |
| Accounts Payable | | (53,465) |
| Accrued Credit Cards Payable | | 79,693 |
| Accrued Expenses | | 278,863 |
| Accrued Federal Income Taxes | | (20,153) |
| Accrued Payroll and Withholdings | | 72,115 |
| Current Portion of Long Term Debt | | 235,595 |
| **Net Cash Flows from (Provided to) Operating Activities** | | (21,361,902) |
| | | |
| **Cash Flows From ( Provided to) Investing Activities** | | |
| Purchase of Fixed Assets - net | | (1,237,874) |
| **Net Cash Flows From (Provided to) Provided to Investing Activities** | | (1,237,874) |
| **Cash Flows From (Provided to) Financing Activities** | | |
| Note Payable - IP License Fee | | (58,440,984) |
| Payments on Notes Payable | | 18,060,844 |
| **Net Cash Flows from (Provided to) Financing Activities** | | 18,060,844 |
| | | |
| **Net Increase (Decrease) in Cash From Operating Activities** | | (4,538,932) |
| | | |
| Cash and Cash Equivalents at Beginning of Year | | 5,404,652 |
| | | |
| **Cash and Cash Equivalents at End of Year** | $ | 865,720 |

Interest Expense for the year was in the amount of $ 461,010.
Taxes Paid for the year was in the amount of $ 1,813,961.

*See Notes to Consolidated Financial Statements* 8

CONFIDENTIAL
SMART_B&R 000311

**Smart Communications Holding, Inc.**
**Notes to Consolidated Financial Statements**
**For the year ended December 31, 2022**
================================================================

**Note A – Significant Accounting Policies**

*Basis of Consolidation*
The consolidated financial statements include the financial statements of Smart Communications, U.S, Inc.; Smart Communications, Pasco, Inc.; and Smart Communications, Collier, Inc. Smart Communications Holding, Inc, owns 100 % of these companies. All transactions between Smart Communications Holding, Inc. and subsidiaries have been eliminated in the consolidated financial statements.

*Concentration of Credit Risk*
The Company normally maintains sufficient cash to meet its anticipated working capital needs. Cash in deposit accounts may, at times, exceed the Federal Deposit Insurance Corporation (FDIC) insured limit in the amount of $ 250,000. However, The Company has not experienced any losses in such accounts and therefore believes it is not exposed to any significant credit risk in these accounts.

*Cash and Cash Equivalents*
For purposes of the statement of cash flows, the Company considers all highly liquid investments, generally those assets readily convertible to known amounts of cash with a maturity of three months or less, to be cash equivalents.

*Accounts Receivable*
Accounts Receivable are customer obligations due under normal trade conditions that have been received after the year end but attributable to the current year. The Company considers these accounts receivable to be fully collectible; accordingly, no allowance for doubtful accounts is required. If amounts become uncollectible, they are charged to operations when that determination is made.

*Inventory*
Inventory consists of tablets, kiosks, and various computer parts and accessories, and is stated at the lower of cost or market using the first-in, first-out method.

*Property and Equipment*
Property and equipment is stated at cost less accumulated depreciation. Provisions for depreciation of assets are computed using the straight-line at rates which are intended to amortize the cost of such assets over their useful lives which range from 5 to 40 years. Leasehold Improvements are amortized over the service lives of the improvements, generally 40 years.

*Revenue Recognition*
Revenues are generally recognized when realized or realizable, and when earned (generally when goods are transferred or services rendered), no matter when payment is received. The Company recognizes revenue from messaging services at the point of sale, net of sales taxes (if any). Service contract revenue is recognized when the service is performed.

The Company adopted FASB ASC 606, *Revenues from Contracts with Customers*, which amended the existing standards for revenue recognition. The adoption of this new revenue standard does not have a significant impact on the amount and timing of revenue recognized in the Company's financial statements. Based on the Company's evaluation process and review of its contracts with customers, the timing and amount of revenue recognized previously is consistent with how revenue is recognized under the new standard. No changes were required to reported revenues as a result of the adoption of FASB ASC 606.

*9*

CONFIDENTIAL
SMART_B&R 000312

**Smart Communications Holding, Inc.**
**Notes to Consolidated Financial Statements**
**For the year ended December 31, 2022**
===================================================================

**Note A – Significant Accounting Policies (continued)**

*Use of Estimates*
These financial statements have been prepared in conformity with accounting principles generally accepted in the United States of America. Management is required to make certain estimates and assumptions that affect amounts reported in the financial statements. Actual results may differ from these estimates.

*Advertising Costs*
Advertising costs are charged to operations when incurred. For the year ended December 31, 2022, advertising expense amounted to $ 187,879.

**Note B – Property and Equipment**

Property and equipment are stated at cost. All property and equipment and leasehold improvements are depreciated on the straight-line method. Repairs and maintenance of property and equipment are charged to operations, and major improvements are capitalized. Upon retirement, sale or other disposition of assets, the costs and accumulated depreciation are eliminated from the accounts, and any resulting gain or loss is included in operations.

For the year ended December 31, 2022, property and equipment consists of the following:

| Description | Cost | 2022 Depreciation | 12.31.2022 Accumulated Depreciation | Net Book Value |
|---|---|---|---|---|
| Kiosk Computer System | $ 2,987,602 | $ 313,349 | $ 2,690,779 | $ 296,823 |
| Computer Software | 2,987,876 | 589,406 | 2,370,375 | 617,501 |
| Vehicles | 2,682,697 | 512,738 | 1,354,744 | 1,327,953 |
| Display System | 21,280 | 4,256 | 17,277 | 4,003 |
| Demo Build | 22,500 | 1,400 | 20,283 | 2,217 |
| Furniture and Fixtures | 163,692 | 24,972 | 114,552 | 49,140 |
| Buildings | 5,071,155 | 95,780 | 244,189 | 4,826,966 |
| Leasehold Improvements | 355,751 | 9,037 | 26,860 | 328,891 |
| Mail Service Equipment | 414,217 | 59,174 | 241,627 | 172,590 |
| Equipment | 185,252 | 26,464 | 78,069 | 107,183 |
| | $ 14,892,022 | $ 1,636,576 | $ 7,158,755 | $ 7,733,267 |

All property is depreciated using the straight-line method. Furniture and fixtures, computer software, demos, kiosks, and vehicles are depreciated over 5 years. Buildings and leasehold improvements are depreciated over 39 years, and machinery and equipment are depreciated over 7 years. Assets commence depreciation as of the first full month of usage.

*10*

CONFIDENTIAL
SMART_B&R 000313

**Smart Communications Holding, Inc.**
**Notes to Consolidated Financial Statements**
**For the year ended December 31, 2022**
===============================================================================

## Note D – Loans To Shareholder

At December 31, 2022, a 50 % shareholder owed the Company loans in the amount of $ 2,914,086. No interest has been accrued on the loans.

## Note E – Affiliated Entities

As of December 31, 2022, the Company has accounts receivable from the following affiliated entities:

| Description | | Amount |
|---|---|---|
| Smart Communications Yacht Holding LLC | $ | 5,505,639 |
| Mailguard Federal, Inc. | | 1,746,369 |
| LOCO Florida, LLC | | 1,358,011 |
| HLFIP | | 169,685 |
| | $ | 8,779,704 |

## Note F – Subsequent Events

Management has evaluated subsequent events through October 25, 2023, the date financial statements were available to be issued. No events occurred or are pending through this date which would have a material effect on the financial statements or require disclosure in the financial statements, except as noted in Footnote Disclosure Note I

## Note G – Long Term Debt

On May 19, 2020, the Company purchased three Ford Trucks at a total financing cost of $ 93,319.44. Payments on this loan commenced as of July 3, 2020 in the amount of $ 622.02 per truck, including interest at the annual rate of 7.2900%, payable monthly for 60 months for each truck. Final payment on this loan is due on June 3, 2025. As of December 31, 2022, the principal balance on the vehicle loan is in the amount of $ 59,713.92. Interest expense on this loan for the year ended December 31, 2022 is in the amount of $ 2,988.00

As of January 1, 2019, The Company entered into a Technology License Agreement with LATTICE Incorporated. The Agreement is a Licensing Agreement with LATTICE Software wherein Smart Communications Holding, Inc. pays LATTICE a license fee, in the amount of $ 2,850,000.00 payable in monthly installments of $ 47,500.00 for sixty (60) consecutive months beginning on February 1, 2019. Upon payment in full of the License fee, Smart Communications Holding, Inc. shall pay LATTICE an annual royalty payment of $ 100.00 each year (the "Royalty Fee"). The Royalty Fee shall be due on or before December 31, of each year beginning in 2025 and shall continue until the Licensing Agreement is terminated.

As of December 31, 2022, the Company owed the balance due to LATTICE on the Licensing Agreement is in the amount of $ 665,000.

*11*

CONFIDENTIAL
SMART_B&R 000314

**Smart Communications Holding, Inc.**
**Notes to Consolidated Financial Statements**
**For the year ended December 31, 2022**
===============================================================================

**Note H – Income Taxes**

Income taxes are provided for the tax effects of transactions reported in the financial statements and consist of taxes currently due. The Company is required to recognize, measure, classify and disclose in the consolidated financial statements uncertain tax positions taken or expected to be taken in the Company's tax returns. Management has determined that the Company does not have any uncertain tax positions and associated unrecognized benefits that materially impact the consolidated financial statements or related disclosures. Since tax matters are subject to some degree of uncertainty, there can be no assurance that the Company's tax returns will not be challenged by the taxing authorities and that the Company will not be subject to additional tax, penalties, and interest as a result of such challenge. Penalties and interest assessed by income taxing authorities would be included in operating expenses.

The Company is taxed as a C Corporation under the Internal Revenue Code. For the year ended December 31, 2022, the Company incurred a net operating loss in the amount of $ 12,710,042, a carryover of disallowed business interest expense, and charitable contributions in the amount of $ 19,340.

**NOTE I – Intellectual Property License**

Smart Communications Holding, Inc. provides specialized prison inmate communication technologies. A related entity, HLFIP Holding, Inc. is the owner of proprietary intellectual property, patents, trademarks, and other know how that provides the specialized communications systems (collectively known as "HLFIP IP") which connect prison inmates, correctional facility administration, courts, attorneys, and families. As such, the HLFIP IP improves the lives and safety of the incarcerated inmates, correctional facility staff, and others involved in the delivery of those specialized communications services, as well as the elimination of contraband in postal mail at correctional facilities.

HLFIP Holding, Inc. provides Smart Communications Holding, Inc. an exclusive license of its HLFIP IP for distribution and use at correctional facilities across the United States of America. During and for the year ended December 31, 2022, Smart Communications Holding, Inc. sublicensed the HLFIP IP to Smart Communications Collier, Inc. (a ubsidiary company) for distribution and use at those correctional facilities. HLFIP is the licensor and Smart Communications, Holding, Inc. is the exclusive licensee of HLFIP IP, for which a royalty rate is charged by HLFIP to the Company. The royalty rate of 40 % of net sales was charged for the HLFIP IP. The royalty rate was determined by measurement of and comparison to independent  agreements, using the method known as the Comparable Uncontrolled Transaction ("CUT"), which was selected as the best method under Internal Revenue Code Section 482 and its Treasury Regulations Section 1.482-4(c)(2). Accordingly, Smart Communications Holding, Inc. (via its subsidiary, Smart Communications Collier, Inc.) reported an IP license expense, in the amount of $ 17,874,784 for the year ended December 31, 2022. Additionally, the Company reported interest in the amount of $ 446, 870, calculated at the rate of 5 % for one-half of the year, 2022.

The Company has also reflected the prior years' use of the HLFIP IP license for the years of 2015 – 2021 as a long-term liability in the amount of $ 52,848,813, and accrued interest of $ 5,592,170. Retained earnings has been adjusted to reflect effects of this inclusion for prior year use of the HLFIP license.

CONFIDENTIAL
SMART_B&R 000315

# EXHIBIT 4



*Corrections simplified*

## Who is Smart Communications?

# THE MOST INNOVATIVE
# TECHNOLOGY COMPANY
# IN CORRECTIONS

## HISTORICALLY 3-5 YEARS AHEAD OF EVERY OTHER VENDOR IN CORRECTIONS

## How have we accomplished this?

# A HISTORY OF INDUSTRY FIRSTS

## Our Timeline of Innovation and Implementation



We are proven innovators in corrections.
Where Smart goes, our competitors follow.

# ABOUT SMART COMMUNICATIONS

**Different Culture - Different Approach - Different Outcome.**

- Founded in 2009 with a mission to change the status quo of the Corrections industry with new technology.

- Entered the Corrections industry as a true technology company, not the traditional telecommunications company.

- Created new technologies with new streams of revenue in Corrections.

- Focused on innovation and technologies that benefited families, agencies and the company- true Win-Win solutions for sustainable growth.








Smart Communications Corporate Headquarters, Seminole, FL





CONFIDENTIAL

# HISTORICAL ANNUAL SALES REVENUE AND GROWTH|

| Year | Sales Revenue | Annual Sales Growth % |
|------|---------------|----------------------|
| 2010 | $4,894.00 | - |
| 2011 | $83,826.00 | - |
| 2012 | $133,098.00 | 58.78% |
| 2013 | $390,921.00 | 193.71% |
| 2014 | $941,635.00 | 140.88% |
| 2015 | $1,418,295.00 | 50.62% |
| 2016 | $3,008,694.00 | 112.13% |
| 2017 | $3,844,365.00 | 27.78% |
| 2018 | $9,379,355.00 | 143.98% |
| 2019 | $15,648,983.00 | 66.84% |
| 2020 | $20,687,943.00 | 32.20% |
| 2021 | $31,061,300.00 | 50.14% |



Smart Communications
Sales Revenue - Actual 10 yr.
2012 -2021

| Period | Term | Average Sales Growth % |
|--------|------|------------------------|
| 2017 - 2021 | 5 Years | 64.19% |
| 2012 - 2021 | 10 Years | 87.71% |

CONFIDENTIAL

# BUILDING BLOCKS OF REVENUE |

- ## 2022 Daily Revenue Totals and Projections:

| Date | Daily Revenue Amount | Total Days | Total Revenue |
|---|---|---|---|
| 1/22/2022 | $100,442.00 | 31 | $3,113,702.00 |
| 2/22/2022 | $113,250.00 | 334 | $37,825,500.00 |

### Total Projected Annual Revenue: $40,939,202.00

- ## Annual Sales Revenue/Growth Projections:

| Project Sales Revenue/Growth 2022 - 2030 | |
|---|---|
| 2022 | $55,000,000.00 |
| 2023 | $90,303,274.00 |
| 2024 | $148,266,932.00 |
| 2025 | $243,436,170.00 |
| 2026 | $399,692,421.00 |
| 2027 | $600,000,000.00 |
| 2028 | $840,000,000.00 |
| 2029 | $1,092,000,000.00 |
| 2030 | $1,310,400,000.00 |



Project Sales Revenue/Growth 2022 - 2030

CONFIDENTIAL

# NEW CONTRACTS SIGNED IN 2022 | As of 4/15/22

| Agency Name | ADP | Projected Annual Revenue |
|---|---|---|
| Florence County Jail (SC) | 303 | $436,320.00 |
| Ottawa County Jail (MI) | 350 | $504,000.00 |
| Jackson County Jail (MI) | 350 | $504,000.00 |
| Denton County Jail (TX) | 975 | $1,404,000.00 |
| Kitsap County Jail (WA) | 300 | $432,000.00 |
| Licking County Jail (OH) | 300 | $432,000.00 |
| Monroe County Jail (OH) | 130 | $187,200.00 |
| Butler County Jail (PA) | 420 | $604,800.00 |
| Calcasieu Parish Jail (LA) | 840 | $1,209,600.00 |
| Livingston County Jail (IL) | 150 | $72,000.00 |
| Oakland County Jail (MI) | 870 | $1,044,000.00 |
| Washoe County Jail (NV) | 1,100 | $1,584,000.00 |
| Douglas County Correctional Center (NE) | 1,400 | $672,000.00 |

TOTALS:  $9,085,920.00

CONFIDENTIAL

# REVENUE/EBITDA |

- Project Sales Revenue 2023-2030 = **$4,724,098,797.00**
- **$4,724,098,797.00** X 40% (EBITDA) = **$1,889,639,520.00**

**Current technology revenue and growth schedule/ Not including new technology introduction to market.**

# THE DISTINCTIVE DIFFERENCE|

- Decade of 80% Growth
- Long Term Municipal Contracts Provide "Reoccuring Revenue"
- Near Impossible Market Entry for New Competitors
- Unstoppable Market Penetration
- Revolutionary New Technologies and Services
- Patented Technologies and Services
- Industry Flying Under Radar

# What is the next Revolution of Corrections?

*Mind*

*Body*

*Spirit*

*Smart Communications welcomes you to the future of incarceration*

# The Corrections Industry's First Offender *Smartwatch™*

- ✓ Patent Pending
- ✓ 100% Open Market
- ✓ Non-Removable
- ✓ Inmate Tracking And Intelligence
- ✓ Communication, Phone, Text, Video
- ✓ Health And Wellness Tracking And Analytics
- ✓ Spy Tools, Voice Biometrics And More.
- ✓ Incarceration Market 2.2 Million ADP
- ✓ Parole/Probation Market 4.5 Million ADP



Released To Market 3rd Quarter 2022



*Take a journey outside of prison walls on the fully interactive and integrated* **SmartCycle™**

**SmartCycle™** Patent Pending



Released To Market 1st Quarter 2023

✓ **Transform the incarceration environment from the inside out.**

✓ **Total mind, body and spirit transformation with a fully connected and interactive program specially designed for the incarceration environment.**

✓ **Earn free Communication credits with family and friends.**

✓ **Earn free tablet entertainment time, music, movies, games.**

✓ **Learn positive behavioral traits, such as Effort = Reward.**

> *Smart Communications technology leads the way for prison reform and reimaging the incarceration experience. Solving a major pain point of reform and lowering recidivism in this industry.*

# SmartReality™ VR

- **Interactive Virtual Reality Reentry Programing To Revolutionize The Way Inmates Reenter Society.**

- **Real Life Interactive Programing To Prepare Inmates For A Successful Transition Into Society, Dramatically Reducing Recidivism.**



Released To Market 1st Quarter 2024

# Accelerated growth factors for the future

- 3 new Industry changing technologies scheduled for market release over the next 3 years.

- 100% untapped market for these new technologies that integrate with existing technologies.

- Untapped market of 4.5 million ADP in Community supervision Probation/Parole with offender SmartWatch™

- Successful pilot for inmate mail processing completed in Federal Bureau of Prisons, scheduled to deploy nationwide coming year with 150k ADP.

- Patent litigation for MailGuard™ new Patent recently issued by US Patent Office – Possible market monopoly for over a decade.



This is the
**FUTURE OF INCARCERATION**
*Smart Communications*

# EXHIBIT 5

## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## IN AND FOR SARASOTA COUNTY, FLORIDA

JONATHAN LOGAN and SMART
COMMUNICATIONS HOLDING, INC.,

Plaintiffs

v.                                                        Case No: 2023-CA-1002

JANICE LOGAN, individually and as Trustee
of the James Logan Family Trust dated
February 10, 2021 and ALEXIS LOGAN,
individually,
Defendants.

_____/        CONSOLIDATED WITH

JANICE LOGAN, as Trustee of the James
Logan Family Trust, dated February 10, 2021,

Plaintiff,                                                Case No: 2023-CA-1280

v.

JONATHAN D. LOGAN and SMART
COMMUNICATIONS HOLDING, INC.,
nominal defendant, and LOCO FLORIDA, LLC,
nominal defendant

    Defendants.

_____/

## SMART COMMUNICATIONS HOLDING, INC. AND SMART COMMUNICATIONS HOLDING LLC'S NOTICE OF SERVING RESPONSES TO JANICE LOGAN'S FOURTH SET OF INTERROGATORIES

Smart Communications Holding, Inc. and Smart Communications Holding LLC (collectively "Smart"), by and through their undersigned counsel, hereby give notice that on this 27th day of August, 2024, Smart served their verified responses to Janice Logan, as Trustee of the James Logan Family Trust, dated February 10, 2021 ("Plaintiff") Fourth Set of Interrogatories dated July 24, 2024, on Plaintiff's counsel, via electronic service.

Dated:  August 27, 2024

| | |
|---|---|
| **STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.** | **AKERMAN LLP** |
| Highpoint Center | 401 E. Jackson Street, Suite 1700 |
| 106 East College Avenue - Suite 700 | Tampa, FL 33602-5250 |
| Tallahassee, FL 32301 | Office: (813) 23-7333 |
| Telephone: (850) 580-7200 | Fax: (813)218-5495 |
| gburhans@stearnsweaver.com | mark.bernet@akerman.com |
| | caren.deruiter@akerman.com |

By: _s/ Glenn Burhans, Jr._

Glenn Burhans, Jr.

Florida Bar No. 605867

-and-

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**

200 East Las Olas Boulevard, Suite 2100

Fort Lauderdale, Florida 33301

Telephone:  (954) 462-9500

mharwin@stearnsweaver.com

mhernandez@stearnsweaver.com

By: _/s/Michael J. Harwin_

Michael J. Harwin

Florida Bar No.: 1018578

_Counsel for Smart Communications Holding, Inc. And Smart Communications Holding, LLC_

By:_/s/ Mark J. Bernet_

Mark J. Bernet, Esq.

Florida Bar No. 606359

-and-

**AKERMAN LLP**

201 East Las Olas Boulevard

Suite 1800

Fort Lauderdale, FL 33301

Telephone: (954) 463-2700

Fax: (954) 463-2224

Jason S. Oletsky, Esq.

Florida Bar No. 9301

jason.oletskey@akerman.com

jill.parnes@akerman.com

Dustin B. Hillsley, Esq.

Florida Bar No. 1018589

dustin.hillsley@akerman.com

deborah.karlson@akerman.com

Max C. Rudolf, Esq.

Florida Bar No. 98766

max.rudolf@akerman.com

deborah.karlson@akerman.com

_Counsel for Smart Communications Holding, Inc. and Smart Communications Holding, LLC_

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on August

27, 2024, via electronic mail through the Florida Court's E-Portal to all counsel of record.


/s/*Max C. Rudolf*
Max C. Rudolf, Esq.

77582414;1

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA**

JONATHAN LOGAN and SMART
COMMUNICATIONS HOLDING, INC.,

      Plaintiffs

v.                                          Case No: 2023-CA-1002

JANICE LOGAN, individually and as Trustee
of the James Logan Family Trust dated
February 10, 2021 and ALEXIS LOGAN,
individually,

      Defendants.

_____/      CONSOLIDATED WITH

JANICE LOGAN, as Trustee of the James
Logan Family Trust, dated February 10, 2021,

      Plaintiff,                           Case No: 2023-CA-1280

v.

JONATHAN D. LOGAN and SMART
COMMUNICATIONS HOLDING, INC.,
nominal defendant, and LOCO FLORIDA, LLC,
nominal defendant

      Defendants.

_____/

**SMART COMMUNICATIONS HOLDING, INC. AND SMART COMMUNICATION
HOLDING, LLC'S RESPONSES TO JANICE LOGAN'S
<u>FOURTH SET OF INTERROGATORIES</u>**

     Smart Communications Holding, Inc. and Smart Communication Holding, LLC

(collectively "Smart"), by and through its undersigned counsel, hereby responds to Janice Logan,

as Trustee of the James Logan Family Trust, dated February 10, 2021 ("Janice") Fourth Set of

Interrogatories and states as follows:

**GENERAL OBJECTIONS**

1.    Smart objects to any and all Interrogatories to the extent they call for the disclosure of information that is subject to any legal privilege or doctrine which prevents or limits their disclosure to third parties including, without limitation, the attorney/client privilege or the work-product doctrine. Information subject to such protections will not be provided.

2.    Smart objects to any and all Interrogatories to the extent they call for the disclosure of information that constitutes or contains proprietary or confidential information.

4.    Smart objects to any and all Interrogatories, including the definitions therein, to the extent they vague, ambiguous and/or misleading or purport to impose any duty or obligation beyond those required by the *Florida Statutes*, the *Florida Rules of Civil Procedure*, or other applicable law.

5.    Smart objects to any and all Interrogatories, including the definitions therein, to the extent they seek information beyond the valuation time period defined by Fla. Stat. § 607.1436(4) or otherwise modified by Court order. More specifically, Smart objects to the Instruction defining the time period for these Interrogatories as spanning January 1, 2018, through the present to the extent that documents or information concern matters after May 28, 2024, the day before Janice's petition under Fla. Stat. § 607.1430 was filed, are irrelevant to a valuation analysis under Section 607.1436. *See* Fla. Stat. § 607.1436(4).

6.    The answers, and any and all documents provided in response, are made and given without the waiver of any privilege or protection raised in these answers or of any argument or objection that Smart may have with respect to the competency, authenticity, relevancy, or admissibility of such information at any stage of this or any other legal proceeding, including at trial of this matter.

7.    The responses set forth herein are based on Smart's knowledge and belief as of

77781341;1

the date of these responses, and Smart's investigation into this matter is continuing and ongoing. Accordingly, Smart reserves the right to add, change, supplement, or modify its responses to these Interrogatories should additional information be identified at a later date.

All answers are made subject to and without waiving the above General Objections.

## RESPONSE TO INTERROGATORIES

1.      Identify each and every SmartComm employee, officer, director, or agent who participated in the decision to pay HLFIP the 40% net sales intellectual property Royalty Fee.

**RESPONSE:**

Smart objects to the Interrogatory as vague, ambiguous and misleading; particularly, Smart objects to the use of the term "decision" as mischaracterizing the matter addressed by the Interrogatory. In responding, Smart identifies its employees, officers, directors, and agents involved with the process in 2023 that resulted in the Exclusive Intercompany Intellectual Property License Agreement and the Royalty Fee. For the avoidance of doubt, Smart states that it owes and owed HLFIP a royalty fee in connection with the use of HLFIP IP before 2023. Subject to the foregoing specific and general objections, Smart identifies Jon Logan. For completeness, although they are not Smart employees, officers, directors, or agents, Smart also states that advisors at Marcum LLP were involved in the process.

2.      Identify each and every SmartComm employee, officer, director, or agent who negotiated with HLFIP prior to agreeing to the 40% net sales intellectual property Royalty Fee.

**RESPONSE:**

Smart objects to the Interrogatory as vague, ambiguous and misleading; particularly, Smart objects to the use of the term "negotiated" as mischaracterizing the matter addressed by the Interrogatory. In responding, Smart identifies its employees, officers, directors, and agents

involved with the process in 2023 that resulted in the Exclusive Intercompany Intellectual Property License Agreement and the Royalty Fee referenced therein. For the avoidance of doubt, Smart states that it owes and owed HLFIP a royalty fee in connection with the use of HLFIP IP before 2023. Subject to the foregoing specific and general objections, Smart identifies Jon Logan. For completeness, although they are not Smart employees, officers, directors, or agents, Smart also states that advisors at Marcum LLP were involved in the process.

3.      Identify each and every independent third-party evaluation of the value of HLFIP's intellectual property that SmartComm commissioned, conducted, received, or reviewed prior to entering into the Exclusive Intercompany Intellectual Property License Agreement on August 29, 2023.

**RESPONSE:**

Smart objects to the Interrogatory as vague, ambiguous and misleading; particularly, Smart objects to the use of the phrase "evaluation of the value of HLFIP's intellectual property" as mischaracterizing the matter addressed by the Interrogatory. In responding, Smart identifies the analysis of whether HLFIP and Smart were transacting in a manner considered to be consistent with the arm's-length standard from a US transfer pricing perspective. Subject to the foregoing specific and general objections, Smart identifies the Marcum US Transfer Pricing Documentation Study of HLFIP Holding, Inc. For Fiscal Year Ended December 31, 2022 dated October 4, 2023 (the "Marcum Report").

4.      Identify the exact date you contend the 40% net sales intellectual property Royalty Fee was agreed upon between SmartComm and HLFIP, and the person(s) who agreed to it.

**<u>RESPONSE:</u>**

Smart objects to the Interrogatory as vague, ambiguous and misleading. "Royalty Fee" is defined in the Interrogatories as "the defined term in paragraph 5.1 of the Exclusive Intercompany Intellectual Property License Agreement" (the "License Agreement"): specifically, "Licensee [SmartComm] shall pay to Licensor [HLFIP] a royalty of 40 percent (40%) of the Net Sales of products and services sold by Licensee to any third party." The License Agreement was executed on August 29, 2023. Subject to the foregoing specific and general objections, because the License Agreement was executed as of August 29, 2023, Smart responds: August 29, 2023. In further response, Smart identifies Jonathan Logan and the advisors at Marcum LLP.

For the avoidance of doubt, though not requested, Smart states that a royalty fee was agreed upon much earlier than the "Royalty Fee" as defined in the License Agreement. In providing this additional response, Smart identifies the date on which James Logan, Jon Logan, Alexis Logan, and Smart entered into a written agreement that expressly recognized that "Jonathan Logan exclusively owns and will retain exclusive ownership" of the intellectual property for which Jon was the "inventor." Subject to the foregoing specific and general objections, that date is April 30, 2015. In further response, Smart identifies the date of the Marcum Report, which is October 4, 2023.

5. Identify the exact date(s) you contend the 40% net sales intellectual property Royalty Fee was first invoiced to, payable by, and paid by SmartComm.

**RESPONSE:**

Smart objects to the Interrogatory as vague, ambiguous and misleading; particularly, Smart objects to the use of the phrase "exact date" as mischaracterizing the matter addressed by the Interrogatory. Smart further objects to the term "invoiced to" as vague and ambiguous. The date a debt is invoiced, if it is invoiced, is not necessarily the date a debt is owed. In responding, Smart construes "invoiced" as meaning a written demand for payment of a debt. Subject to the foregoing specific and general objections, Smart identifies the date HLFIP sent its notice and demand to Smart, which is April 15, 2024. In further response, Smart identifies the date HLFIP sent Smart its letter for Limited Extension of License to IP and Notice of Default, which is April 17, 2024.

As to the date a royalty was payable by Smart to HLFIP, the Interrogatory calls for a legal conclusion and on that basis Smart objects. In further response, Smart states that the royalty fee would be payable as of the date Smart first started using HLFIP's IP. Subject to the foregoing specific and general objections, and in further response, Smart states that it has not yet paid HLFIP any of the royalty fees that it currently owes pursuant to the Court's December 15, 2023 order. However, the obligation is reflected in Smart's tax returns as a deduction for royalties payable to HLFIP.

6.    Identify each and every Royalty Fee payment SmartComm has disbursed to HLFIP, and the date and amount of each and every payment.

**RESPONSE:**

Subject to the foregoing specific and general objections, Smart states that while no payment has yet been disbursed to HLFIP in light of the December 15, 2023 order, Smart recognized a deduction for royalties payable to HLFIP on its tax returns.

7.    Identify each and every document and communication you contend evidences, demonstrates, or contains support for the existence of the Royalty Fee prior to August 29, 2023.

**RESPONSE:**

Smart objects to the Interrogatory as vague, ambiguous and misleading. "Royalty Fee" is defined in the Interrogatories as "the defined term in paragraph 5.1 of the Exclusive Intercompany Intellectual Property License Agreement" (the "License Agreement"): specifically, "Licensee [SmartComm] shall pay to Licensor [HLFIP] a royalty of 40 percent (40%) of the Net Sales of products and services sold by Licensee to any third party." The "License Agreement" as defined in the Interrogatories was executed on August 29, 2023. Notwithstanding, and subject to the foregoing specific and general objections, Smart states:

A royalty fee was agreed upon much earlier than the "Royalty Fee" as defined in the License Agreement.  In providing this response, Smart identifies April 30, 2015 as the date in which James Logan, Jon Logan, Alexis Logan, and Smart entered into a written agreement that expressly recognized that "Jonathan Logan exclusively owns and will retain exclusive ownership" of the intellectual property for which Jon was the "inventor."

For the avoidance of doubt, though not requested, Smart states that there are numerous documents that evidence, demonstrate, and contain support for the historical existence of a royalty

7

fee long owed by Smart to HLFIP. Nearly every single document created by Smart that discusses, or even mentions or refers to, any products or services that use or deploy HLFIP's IP and technology in any way evidences Smart's royalty fee obligation. However, Smart does not concede the relevance of these documents, nor the proportionality of producing them in this litigation.

Smart, however, specifically identifies the following: the Exclusive Intercompany Intellection Property License Agreement dated August 29, 2023; the Marcum Report; the Agreement between Jon Logan, Jim Logan, and Alexis Logan concerning the creation and ownership of intellectual property dated April 30, 2015 (signed by Alexis Logan on May 18, 2015, and signed by Jim Logan on April 30, 2015); the Memorandum re: Termination of Exclusive Oral License Agreement dated August 29, 2023; and the letters from HLFIP to Smart dated April 15, 2024 and April 17, 2024.

8.      Identify each and every SmartComm employee, officer, director, or agent who was aware of the Royalty Fee prior to August 29, 2023.

**RESPONSE:**

Smart objects to the Interrogatory as vague, ambiguous and misleading. "Royalty Fee" is defined in the Interrogatories as "the defined term in paragraph 5.1 of the Exclusive Intercompany Intellectual Property License Agreement": specifically, "Licensee [SmartComm] shall pay to Licensor [HLFIP] a royalty of 40 percent (40%) of the Net Sales of products and services sold by Licensee to any third party." The License Agreement was executed on August 29, 2023. Subject to the foregoing specific and general objections, Smart incorporates its response to Interrogatory No. 7 as if fully stated herein.

Additionally, for the avoidance of doubt, though not requested, Smart identifies Jonathan Logan and James Logan as employees, officers, directors or agents of Smart aware of HLFIP's

8

royalty fee prior to August 29, 2023. In the interest of completeness, Smart also identifies Alexis Logan as a person with knowledge, though she was not an employee, officer, director, or agent of Smart.

9.      Identify the person(s) who drafted "Note I" to SmartComm's "Consolidated Audited Financial Statements" dated December 31, 2022, found on SMART_B&R 000315.

**RESPONSE:**

Smart identifies M.L. Shreve CPA, P.C. as the preparer of the Consolidated Audited Financial Statements, including that Note. In further response, upon information and belief, the preparer derived the language, at least in part, from the Marcum Report.

10.      Identify each and every SmartComm employee, officer, director, or agent who provided information to Marcum for the Marcum Report.

**RESPONSE:**

Smart identifies Jonathan Logan, Noreen Gunning, and Lisa Eddy.

11.      Identify each and every document and communication SmartComm provided to Marcum for the Marcum Report.

**RESPONSE:**

Smart has requested confirmation of this information from Marcum. Pursuant to Florida Rule of Civil Procedure 1.340(c), Smart will supplement its responses to these Interrogatories to include information specifying the produced records by Bates number from which the answer may be derived or ascertained.

## VERIFICATION

BEFORE ME, the undersigned authority, personally appeared Jonathan Logan as President of Smart Communications Holding, Inc. and Smart Communications Holding, LLC who, after being first duly sworn, deposes and says that he has read the answers to the foregoing Interrogatories and that said answers are, to the best of his knowledge and belief, true and correct.

By: _____
Name: Jonathan Logan
Title:   President

STATE OF FLORIDA            )

COUNTY OF PINELLAS          )

The foregoing instrument was acknowledged before me, by means of remote online notarization, this 27th day of August, 2024, by Jonathan Logan as President of Smart Communications Holding, Inc. and Smart Communications Holding, LLC, who has produced a Florida driver's license as identification.

NOREEN A. GUNNING
Notary Public
State of Florida
Comm# HH257915
Expires 4/27/2026

_____
Notary Public - State of Florida
Printed Name: _NOREEN A. GUNNING_
My Commission Expires: _4/27/2026_

#12387648 v1

**Error! Unknown document property name.**

# EXHIBIT 6

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT**
**IN AND FOR SARASOTA COUNTY, FLORIDA**

JONATHAN LOGAN and SMART
COMMUNICATIONS HOLDING, INC.

                    Plaintiffs,

v.                                                    Case No. 2023-CA-1002-NC

JANICE LOGAN, individually and as Trustee of the
James Logan Family Trust, dated February 10, 2021;
and ALEXIS LOGAN,

                    Defendants.                    /

JANICE LOGAN, as Trustee of the James Logan
Family Trust, dated February 10, 2021,

                    Counterclaim Plaintiff,

v.

JONATHAN D. LOGAN, SMART
COMMUNICATIONS HOLDING, INC., SMART
COMMUNICATIONS HOLDING, LLC, HLFIP
HOLDING, INC, and HLFIP HOLDING, LLC,

                    Counterclaim Defendants.        /

JANICE LOGAN, as Trustee of the James Logan      (CONSOLIDATED)
Family Trust, dated February 10, 2021, and
derivatively on behalf of Smart Communications
Holding, Inc.,

                                                   Case No.: 2023-CA-1280-NC
                    Plaintiff,

        v.

JONATHAN D. LOGAN,
SMART COMMUNICATIONS HOLDING, INC.,
nominal defendant, SMART COMMUNICATIONS
HOLDING, LLC, HLFIP HOLDING, LLC, LOCO
FLORIDA LLC, and SMART
COMMUNICATIONS YACHT HOLDING, LLC,

                    Defendants.                    /

## <u>DEFENDANT HLFIP HOLDING, LLC'S RESPONSES AND OBJECTIONS TO JANICE LOGAN'S FIRST SET OF INTERROGATORIES</u>

1

Defendant HLFIP Holdings, LLC ("HLFIP"), by and through undersigned counsel and pursuant to Fla. R. Civ. P. 1.340, hereby responds and objects to the First Set of Interrogatories to HLFIP Holdings, LLC, served on July 24, 2024, by Plaintiff Janice Logan, as Trustee of the James Logan Family Trust, dated February 10, 2021 ("Janice" or "Plaintiff") as follows:

## **GENERAL OBJECTIONS**

1.     HLFIP objects to any Definition or Instruction that imposes requirements upon HLFIP or seeks to require HLFIP to provide information or assume an obligation beyond those imposed by law or set forth in the Florida Rules of Civil Procedure.

2.     HLFIP objects to the Interrogatories to the extent they seek information for a time period beyond that placed at issue by the claims in the operative pleadings or allowed by applicable statute (e.g., Fla. Stat. § 607.1436(4)). Unless otherwise noted, HLFIP will provide information and documents for the time period placed at issue by the Parties' claims, as limited by applicable laws or the Court.

3.     HLFIP objects to the Interrogatories to the extent they call for information protected by the attorney-client privilege or work product doctrine, or any other applicable privilege, rule, statute, or law. To the extent that any such information is inadvertently provided, it shall not be deemed a waiver of any applicable privilege, immunity, or protection.

4.     HLFIP expressly conditions its Response to each and every Interrogatory upon completion of further discovery and reserves the right to amend and/or supplement any Response as discovery of additional information may from time to time require.

5.     HLFIP objects to the Interrogatories to the extent they are overbroad, unduly burdensome and/or seek to impose upon HLFIP an undue expense or burden that properly should be borne by Plaintiff.

6.     HLFIP objects to the Interrogatories to the extent they seek or encompass information that (a) is not relevant to the issues in the above-captioned case or (b) is not reasonably calculated to lead to the discovery of admissible evidence. HLFIP does not concede the relevance of any information provided in response to the Interrogatories and expressly reserves the right to object to the introduction into evidence of any responses on relevance or any other grounds.

7.     HLFIP reserves the right to rely, at trial or in any other proceeding in this action or any other action, upon information in addition to that identified and/or provided in response to the Interrogatories.

8.     Nothing contained herein shall be deemed to constitute an assent to the terms or definitions used in the Interrogatories. The adoption and/or use by HLFIP of any term that Plaintiff defines in the Interrogatories is for convenience only and is not intended as a waiver of any objection stated herein, nor shall it be deemed an admission in any respect.

9.     HLFIP reserves the right to challenge the competency, relevance, materiality, and admissibility of, or to object on any ground to the use of, information set forth in the Responses to the Interrogatories.

10.    HLFIP objects to the Interrogatories to the extent they seek information that Plaintiff already has in her possession, custody, or control.

11.    HLFIP objects to the Interrogatories to the extent they assume the existence of facts that do not exist and the occurrence of events that did not occur. Any Response of HLFIP to an individual Interrogatory is not intended to be, and shall not be construed as, an admission that any factual predicate stated in the Interrogatory is accurate.

12.    Each of the foregoing "General Objections" is hereby incorporated into each of the Responses provided below.

## RESPONSES TO INTERROGATORIES

**1.     Identify all patents HLFIP holds by patent number, date of application, original holder of patent if not HLFIP, and date of grant.**

**Response to Interrogatory No. 1**: HLFIP objects to the term "all" in Interrogatory No. 1 as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. HLFIP further objects to the Interrogatory as vague and ambiguous to the extent it purports to seeks information regarding pending patents. HLFIP interprets the Interrogatory as directed to issued patents only. Subject to and without waiving the foregoing specific and general objections, HLFIP states:

| Patent Number | Patent Application Date | Patent Grant Date |
|---|---|---|
| 11457013 | 5/10/2019 | 9/22/2022 |
| 10291617 | 5/12/2016 | 5/14/2019 |
| 11637940 | 5/18/2020 | 4/25/2023 |
| 10659630 | 2/26/2019 | 5/19/2020 |
| 10862891 | 8/1/2019 | 12/8/2020 |
| 11201974 | 8/27/2020 | 12/14/2021 |
| 11962725 | 12/13/2021 | 4/16/2024 |
| 11918850 | 3/5/2021 | 3/5/2024 |

**2.     For any patent(s) identified in response to Interrogatory No. 1 that HLFIP contends still claim patent-eligible subject matter under 35 U.S.C. §101, notwithstanding the decision of the United States Court of Appeals for the Federal Circuit in *HLFIP Holding, Inc. v. York County PA*, Appeal No. 2022-1940, 2023 U.S. App. LEXIS 21670 (Fed. Circ. Aug. 18, 2023), state all bases for such contentions.**

**Response to Interrogatory No. 2**: HLFIP objects to this Interrogatory as calling for or requiring expert opinion and/or legal conclusions. Subject to and without waiving the foregoing specific and

general objections, HLFIP states: The law affords each issued patent the presumption of validity. *See* 35 U.S.C. § 282(a) ("A patent shall be presumed valid."). A patent's presumption of validity can only be overcome with clear and convincing evidence. *See, e.g., Microsoft Corp. v. i4i Ltd.*, 564 U.S. 91, 102 (2011). Moreover, each claim of a patent, whether independent or dependent, is presumed valid independently of the validity of other claims or other patents. All HLFIP patents are therefore presumed valid.

**3.      Identify all other, non-patent intellectual property HLFIP holds, as well as the dates of registration and/or creation and the original holder of the intellectual property if not HLFIP.**

**Response to Interrogatory No. 3**: HLFIP objects to the term "all" in Interrogatory No. 3 as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. HLFIP further objects to the term "intellectual property" because it is vague and ambiguous insofar as it may or may not include intangible assets (like know-how, proprietary technology, or trade secrets, for example) that HLFIP owns and licenses to SmartComm. Subject to and without waiving the foregoing specific and general objections, pursuant to Fla. R. Civ. P. 1.340(c), HLFIP refers Plaintiff to the Marcum Report dated October 4, 2023 (to be produced in response to Plaintiff's document requests), which acknowledges HLFIP's technology and know-how and includes a list of trademarks HLFIP holds as well as patent applications.

**4.      Identify each and every lawsuit you have filed to enforce a patent you hold.**

**Response to Interrogatory No. 4**: HLFIP objects to Interrogatory #4 as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing specific and general objections, HLFIP states:

- *HLFIP Holding, Inc. v. Rutherford County, Tennessee et al.*, Case No. 3:19-cv-714, United States District Court, Tennessee Middle, Aug. 15, 2019.

- *HLFIP Holding, Inc. v. York County, Pennsylvania et al.*, Case No. 1:20-cv-186, United States District Court, Pennsylvania Middle, Feb. 03, 2020.

- *HLFIP Holding, Inc. v. Wisconsin Dept. of Corrections et al.*, Case No. 3:22-cv-227, United States District Court, Wisconsin Western, Apr. 25, 2022.

     **5.**     **Identify the entity or entities that funded (*i.e.* paid fees and costs related to) each of the lawsuits listed in your response to Interrogatory 4.**

**<u>Response to Interrogatory No. 5</u>**: HLFIP objects to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege or work product doctrine. HLFIP objects to the Interrogatory because the use of the term "funded" is vague and ambiguous. HLFIP objects to the characterization of "funded" as "paid fees and costs related to." Cash is fungible; the entity that wrote checks or wired money is not necessarily the entity that bore the economic burden for those payments.

     **6.**     **Identify each and every lawsuit you have filed to enforce other, non-patent intellectual property held by HLFIP.**

**<u>Response to Interrogatory No. 6</u>**: HLFIP objects to Interrogatory No. 6 as seeking information that is not relevant to this litigation and being overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Further, to the extent that any such lawsuit(s) might exist, details about them, including the mere fact of such litigation, are likely to involve sensitive strategic considerations, confidential information, and could implicate the attorney-client privilege or work product doctrine.

     **7.**     **Identify the entity or entities that funded (*i.e.* paid fees and costs related to) each of the lawsuits listed in your response to Interrogatory 6.**

**<u>Response to Interrogatory No. 7</u>**: HLFIP objects to this Interrogatory to the extent it seeks documents that are protected by the attorney-client privilege or work product doctrine. HLFIP

objects to the Interrogatory because the use of the term "funded" is vague and ambiguous. HLFIP

objects to the characterization of "funded" as "paid fees and costs related to." Cash is fungible; the

entity that wrote checks or wired money is not necessarily the entity that bore the economic burden

for those payments.

**8.      Identify each and every valuation of HLFIP or any of its individual assets that has been performed, and describe the results of the valuation.**

<u>**Response to Interrogatory No. 8**</u>: HLFIP objects to Interrogatory No. 8 as being overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

HLFIP objects to this Interrogatory to the extent it seeks documents that are protected by the

attorney-client privilege or work product doctrine. to the extent that any valuations were performed

at the direction of legal counsel in anticipation of litigation or for the purpose of providing legal

advice. This Interrogatory also seeks confidential and proprietary business information that is not

relevant to the issues in dispute in this litigation. Further, HLFIP objects to this Interrogatory to

the extent it seeks information regarding valuations that are not within the relevant time period or

scope of the claims and defenses asserted in this case.

Subject to and without waiving the foregoing general and specific objections, HLFIP states:

In its analysis of whether the royalty rate that HLFIP charged to SmartComm met the arm's-length

standard for purposes of section 482 of the Internal Revenue Code (26 U.S.C. § 482), the transfer-

pricing report that Marcum prepared for HLFIP indicates that the HLFIP assets have substantial

value but does not determine a dollar value for the HLFIP entity or any of its assets.

9.      **Identify the entity or entities that funded the development the intellectual property HLFIP holds.**

**Response to Interrogatory No. 9**: HLFIP objects to this Interrogatory to the extent it seeks documents that are protected by the attorney-client privilege or work product doctrine. HLFIP objects to the Interrogatory because the use of the term "funded" is vague and ambiguous. To the extent that this Interrogatory characterizes the term "funded" to mean "paid fees and costs related to" (as in Interrogatory #5 and Interrogatory #7), HLFIP objects to that characterization. Cash is fungible; the entity that wrote checks or wired money is not necessarily the entity that bore the economic burden for those payments.

10.     **Identify each and every intellectual property license royalty payment HLFIP has received from SmartComm.**

**Response to Interrogatory No. 10**:   HLFIP objects to the use of the terms "payment" and "received" as vague and ambiguous. Subject to the foregoing specific and general objections, HLFIP states: HLFIP reported income from SmartComm royalty payments on its 2022 Federal income tax return, pursuant to 26 U.S.C. § 482 (which permits the IRS to "allocate gross income" among "businesses … owned or controlled directly or indirectly by the same interests" as "necessary … clearly to reflect the income of any of such . . . businesses") and Treas. Reg. § 1.482-1 (which explains that section 482 "places a controlled taxpayer on a tax parity with an uncontrolled taxpayer by determining the true taxable income of the controlled taxpayer" and provides that "[i]n determining the true taxable income of a controlled taxpayer, the standard to be

applied in every case is that of a taxpayer dealing at arm's length with an uncontrolled taxpayer").

Therefore, as far as the IRS is concerned, HLFIP has received royalties from SmartComm.

**11. Identify each and every person whom Marcum interviewed for the Marcum Report.**

**Response to Interrogatory No. 11**: HLFIP objects to the term "interviewed" as vague and ambiguous because it is unclear what an interview means and entails in the context of a transfer pricing report such as the Marcum Report.  Subject to and without waiving the foregoing specific and general objections, HLFIP states that Marcum spoke with Jonathan Logan, Noreen Gunning, and Lisa Eddy in connection with the preparation of the Marcum Report.

**12.    Identify each and every document provided to Marcum for the Marcum Report.**

**Response to Interrogatory No. 12**: HLFIP objects to this Interrogatory to the extent it seeks documents that are protected by the attorney-client privilege or work product doctrine. Subject to and without waiving the foregoing general and specific objections, HLFIP states: HLFIP has requested confirmation of this information from Marcum. Pursuant to Florida Rule of Civil Procedure 1.340(c), HLFIP will supplement its responses to these Interrogatories to include information specifying the produced records by Bates number from which the answer may be derived or ascertained.

**13.    Identify the person(s) who drafted the Termination of Exclusive Oral License Memorandum.**

**Response to Interrogatory No. 13**: HLFIP objects to this Interrogatory on the grounds that it seeks information protected by the attorney-client privilege and/or the work product doctrine. The identity of the person(s) who drafted the Termination of Exclusive Oral License Memorandum may reveal information about legal strategies, attorney mental impressions, or legal advice

provided in anticipation of or during litigation. HLFIP further objects to the Interrogatory as seeking information that is not relevant to this litigation and being overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, as the drafting of such agreement involves confidential business information that is irrelevant to the issues in dispute in this litigation.

14. **Identify the person(s) who drafted the Exclusive Intercompany Intellectual Property License Agreement.**

**Response to Interrogatory No. 14**:  HLFIP objects to this Interrogatory on the grounds that it seeks information protected by the attorney-client privilege and/or the work product doctrine. The identity of the person(s) who drafted the Exclusive Intercompany Intellectual Property License Agreement may reveal information about legal strategies, attorney mental impressions, or legal advice provided in anticipation of or during litigation. HLFIP further objects to the Interrogatory as seeking information that is not relevant to this litigation and being overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, as the drafting of such agreement involves confidential business information that is irrelevant to the issues in dispute in this litigation.

15. **Describe in detail the reason for converting HLFIP Holding, Inc. from a Florida corporation to a Delaware Limited Liability Company on August 29, 2023.**

**Response to Interrogatory No. 15**: HLFIP objects to Interrogatory No. 15 as seeking information that is not relevant to this litigation and being overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. HLFIP further objects to this Interrogatory because it seeks information that is protected by the attorney-client privilege or work product doctrine.

**16.**    **Identify each and every distribution, dividend, or transfer HLFIP has made to Jonathan Logan or any third-party entity Jonathan Logan holds an interest in.**

**Response to Interrogatory No. 16**: HLFIP objects to the term "each and every" in Interrogatory No. 16 as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. HLFIP further objects to the use of the term "transfer" as vague and ambiguous. Subject to and without waiving the foregoing general and specific objections, HLFIP states: SmartComm has never paid HLFIP and HLFIP has therefore never made any distribution, dividend, or transfer to Jonathan Logan or any third-party entity Jonathan Logan in which he holds an interest.

**17.**    **Identify each and every HLFIP employee, officer, director, member, or agent who negotiated with SmartComm prior to agreeing to the 40% net sales intellectual property Royalty Fee.**

**Response to Interrogatory No. 17**: HLFIP objects to this Interrogatory as vague, ambiguous and misleading; particularly, HLFIP objects to the use of the term "negotiated" as mischaracterizing the matter addressed by the Interrogatory. HLFIP states that Smart owes and owed HLFIP a royalty fee in connection with its use of HLFIP's IP before 2023. Subject to the foregoing specific and general objections, HLFIP identifies Jon Logan. For completeness, although they are not HLFIP employees, officers, directors, or agents, HLFIP also states that advisors at Marcum LLP were involved in the process.

**18.**    **If you denied any of the Requests for Admission to you served contemporaneously herewith these Interrogatories, state with particularity the basis of each and every denial.**

**Response to Interrogatory No. 18**: HLFIP objects to this Interrogatory insofar as it propounds multiple interrogatories in what purports to be a single Interrogatory and HLFIP answers them accordingly. *See* Fla. R. Civ. P. 1.340(a) ("The interrogatories must not exceed 30, including all subparts . . . .").

RFA #3: Denied because the patents are valid and are presumed valid (*see* response to #2 above).

**19.**    **If you denied any of the Requests for Admission to you served contemporaneously herewith these Interrogatories, state with particularity the basis of each and every denial.**

**Response to Interrogatory No. 19**: HLFIP objects to this Interrogatory insofar as it propounds multiple interrogatories in what purports to be a single Interrogatory and HLFIP answers them accordingly. *See* Fla. R. Civ. P. 1.340(a).

RFA #4: Denied because HLFIP reported income from SmartComm royalty payments on its 2022 Federal income tax return, pursuant to 26 U.S.C. § 482 (which permits the IRS to "allocate gross income" among "businesses … owned or controlled directly or indirectly by the same interests" as "necessary … clearly to reflect the income of any of such . . . businesses") and Treas. Reg. § 1.482-1 (which explains that section 482 "places a controlled taxpayer on a tax parity with an uncontrolled taxpayer by determining the true taxable income of the controlled taxpayer" and provides that "[i]n determining the true taxable income of a controlled taxpayer, the standard to be applied in every case is that of a taxpayer dealing at arm's length with an uncontrolled taxpayer").

**20.     If you denied any of the Requests for Admission to you served contemporaneously herewith these Interrogatories, state with particularity the basis of each and every denial.**

**Response to Interrogatory No. 20**: HLFIP objects to this Interrogatory insofar as it propounds multiple interrogatories in what purports to be a single Interrogatory and HLFIP answers them accordingly. *See* Fla. R. Civ. P. 1.340(a).

RFA #5: Denied because while there may be no documents from before August 29, 2023, that use the term "royalty" or "royalty fee," in 2015, James Logan, Jon Logan, Alexis Logan, Smart Communications US, and Smart Communications Holding entered into a written agreement that expressly recognized that "Jonathan Logan exclusively owns and will retain exclusive ownership" of the intellectual property for which Jon was the "inventor." Jon's ownership of the intellectual property that Jon invented or developed necessarily entitles him to reap the economic benefits of that intellectual property. Therefore, that 2015 agreement necessarily implies that SmartComm owed and owes royalties to Jon Logan (via what is now his wholly owned entity, HLFIP).

**21.    If you denied any of the Requests for Admission to you served contemporaneously herewith these Interrogatories, state with particularity the basis of each and every denial.**

**Response to Interrogatory No. 21**: HLFIP objects to this Interrogatory insofar as it propounds multiple interrogatories in what purports to be a single Interrogatory and HLFIP answers them accordingly. *See* Fla. R. Civ. P. 1.340(a).

RFA #6: Denied because while there may be no documents from before August 29, 2023, that use the term "royalty" or "royalty fee," in 2015, James Logan, Jon Logan, Alexis Logan, Smart Communications US, and Smart Communications Holding entered into a written agreement that expressly recognized that "Jonathan Logan exclusively owns and will retain exclusive ownership" of the intellectual property for which Jon was the "inventor." Jon's ownership of the intellectual property that Jon invented or developed necessarily entitles him to reap the economic benefits of that intellectual property. Therefore, that 2015 agreement necessarily implies that SmartComm owed and owes royalties to Jon Logan (via what is now his wholly owned entity, HLFIP).

Date: August 27, 2024                    Respectfully submitted,

*/s/ Christopher G. Oprison*
Christopher G. Oprison (FBN 122080)
Email:  chris.oprison@dlapiper.com
**DLA PIPER LLP (US)**
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131
Telephone:  (305) 423-8522
Facsimile:  (305) 657-6366

*Attorney for Defendant HLFIP*

14

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 27, 2024, a true and correct copy of the foregoing document was served via email to all entitled parties and counsel of record appearing on the Court's service list at the time of service.

*/s/ Christopher G. Oprison*
Christopher G. Oprison

## **VERIFICATION PAGE**

Under penalties of perjury, I declare that I have read the foregoing HLFIP HOLDING, LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES and that the facts stated in it are true to the best of my knowledge and belief.

Dated: October 9, 2024

_____

Jonathan D. Logan

# EXHIBIT 7

**Smart Communications Holding, Inc.**

**Consolidated Audited Financial Statements**

**December 31, 2021**

CONFIDENTIAL

**Prepared by:**

**M. L. Shreve  CPA, P.C.**
**7781  N. Easy Street**
**Whitehall, Michigan  49461**
**231.894.5559**

CONFIDENTIAL

SMART_B&R 000208

**Smart Communications Holding, Inc.**
**Table of Contents**
**December 31, 2021**

| | Page No. |
|---|---|
| **Independent Auditor's Report** | **1 - 2** |
| | |
| **Financial Statements** | |
| Consolidated Balance Sheet | **3** |
| Consolidated Income Statement | **4 - 6** |
| Consolidated Statement of Retained Earnings | **7** |
| Consolidated Statement of Cash Flows | **8** |
| Consolidated Notes to Financial Statements | **9 - 12** |

CONFIDENTIAL



### MLS

**M.L. Shreve CPA, P.C.**
7781 N. Easy Street
Whitehall, Michigan 49461
231.894.5559 (phone)
231.893.2097 (fax)
www.mlshrevecpa.com
mlshrevecpa@frontier.com (email)

December 21, 2022

**Independent Auditor's Report**

To the Board of Directors
Smart Communications Holding, Inc.
Seminole, Florida 33777

**Report on the Audit of the Consolidated Financial Statements**

*Opinion*

We have audited the consolidated financial statements of Smart Communications Holding, Inc., which comprise the consolidated balance sheet as of December 31, 2021, and the related consolidated statements of income, changes in stockholders' equity, and cash flows for the year then ended, and the related notes to the consolidated financial statements.

In our opinion, the accompanying consolidated financial statements present fairly, in all material respects, the financial position of Smart Communications Holding, Inc. as of December 31, 2021, and the results of its operations and its cash flows for the year then ended in accordance with accounting principles generally accepted in the United States of America.

*Basis for Opinion*

We conducted our audit in accordance with auditing standards generally accepted in the United States of America (GAAS). Our responsibilities under those standards are further described in the Auditor's Responsibilities for the Audit of the Financial Statements section or our report. We are required to be independent of Smart Communications Holding, Inc. and to meet our other ethical responsibilities, in accordance with the relevant ethical requirements relating to our audit. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

*Responsibilities of Management for the Consolidated Financial Statements*

Management is responsible for the preparation and fair presentation of the consolidated financial statements in accordance with accounting principles generally accepted in the United States of America, and for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of consolidated financial statements that are free from material misstatement, whether due to fraud or error.

In preparing the consolidated financial statements, management is required to evaluate whether there are conditions or events, considered in the aggregate, that raise substantial doubt about Smart Communications Holding, Inc.'s ability to continue as a going concern for year ended December 31, 2023.

*1*

CONFIDENTIAL

*Auditor's Responsibilities for the Audit of the Consolidated Financial Statements*

Our objectives are to obtain reasonable assurance about whether the consolidated financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditor's report that includes our opinion. Reasonable assurance is a high level of assurance but is not absolute assurance and therefore is not a guarantee that an audit conducted in accordance with GAAS will always detect a material misstatement when it exists. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control. Misstatements are considered material if there is a substantial likelihood that, individually or in the aggregate, they would influence the judgment made by a reasonable user based on the consolidated financial statements.

In performing an audit in accordance with GAAS, we:

Exercise professional judgment and maintain professional skepticism throughout the audit.

Identify and assess the risks of material misstatement of the consolidated financial statements, whether due to fraud or error, and design and perform audit procedures responsive to those risks. Such procedures include examining, on a test basis, evidence regarding the amounts and disclosures in the consolidated financial statements.

Obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances but not for the purpose of expressing an opinion on the effectiveness of Smart Communications Holding, Inc.'s internal control. Accordingly, no such opinion is expressed.

Evaluate the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluate the overall presentation of the consolidated financial statements.

Conclude whether, in our judgment, there are conditions or events, considered in the aggregate, that raise substantial doubt about Smart Communications Holding, Inc.'s ability to continue as a going concern for a reasonable period of time.

We are required to communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit, significant audit findings, and certain internal control-related matters that we identified during the audit.

*Other Matter*

We previously performed a compilation engagement with respect to the 2021 consolidated financial statements, and issued our report thereon, dated October 20, 2022., which stated that the consolidated financial statements were prepared and reported in accordance with the tax basis of accounting, which is a basis of accounting other than accounting principles generally accepted in the United States of America. Our report further stated that we did not audit or review those consolidated financial statements, nor did we express an opinion or any other form of assurance on them.

*M. L. Shreve CPA, P.C.*
Whitehall, Michigan  49461

2

CONFIDENTIAL

**Smart Communications Holding, Inc.**
*Consolidated Balance Sheet*
December 31, 2021

### ASSETS

| | | |
|---|---:|---:|
| **Current Assets** | | |
| Cash and Cash Equivalents | $ 5,404,652 | |
| Accounts Receivable - Trade | 239,086 | |
| Accounts Receivable - Employees | 7,149 | |
| Technology Grant Advances | 37,539 | |
| Taxes Receivable - Florida | 109,937 | |
| Prepaid Corporate Taxes - Florida | 100,000 | |
| Prepaid Expenses | 674,500 | |
| Inventory | 1,894,388 | |
| Total Current Assets | | $ 8,467,251 |
| **Fixed Assets** | | |
| Buildings | 4,034,661 | |
| Kiosk Computer System | 2,987,602 | |
| Computer Software | 2,987,875 | |
| Leasehold Improvements | 355,710 | |
| Vehicles | 2,514,000 | |
| Display System & Demo Build | 43,780 | |
| Equipment | 599,469 | |
| Furniture | 131,051 | |
| | 13,654,148 | |
| Less: Accumulated Depreciation | (5,525,408) | |
| Property & Equipment, Net | | 8,128,740 |
| **Other Assets** | | |
| Shareholder Loans | 428,855 | |
| Accounts Receivable - Affiliated Entities | 1,899,986 | |
| Deferred Income Taxes - Federal | 536,251 | |
| Deferred Taxes - Florida | 90,269 | |
| Total Other Assets | | 2,955,361 |
| **TOTAL ASSETS** | | $ 19,551,352 |

### LIABILITIES AND EQUITY

| | | |
|---|---:|---:|
| **LIABILITIES** | | |
| **Current Liabilities** | | |
| Accounts Payable | $ 1,331,100 | |
| Accrued Credit Cards | 102,916 | |
| Accrued Commissions | 581,378 | |
| Accrued Expenses | 254,750 | |
| Federal Income Tax Payable | 20,153 | |
| Note Payable - ACG Global | 36,694 | |
| Current Portion - Long Term Debt | 825,000 | |
| Total Current Liabilities | | $ 3,151,991 |
| **Long Term Liabilities** | | |
| Lattice Technology License | 1,187,500 | |
| Notes Payable - Vehicles | 68,687 | |
| Less Current Portion | (825,000) | |
| Total Long Term Debt | | 431,187 |
| Total Liabilities | | 3,583,178 |
| **EQUITY** | | |
| Common Stock | 364,667 | |
| Paid In Capital | 392,151 | |
| Retained Earnings | 15,211,356 | |
| Total Equity | | 15,968,174 |
| **TOTAL LIABILITIES AND EQUITY** | | $ 19,551,352 |

*See Notes to Consolidated Financial Statements.*

3

CONFIDENTIAL

**Smart Communications Holding, Inc.**
*Consolidated Income Statement*
**For the year ended December 31, 2021**

| | | |
|---|---|---:|
| **Revenue** | | |
| Mail Services Income | $ | 4,512,000 |
| Messaging Sales | | 21,628,106 |
| Telephone Call Sales | | 5,510,925 |
| Telephone Service Fees | | 638,138 |
| Miscellaneous Income | | 30,252 |
| | | 32,319,421 |
| Sales Reporting Errors | | (370,089) |
| Less Reurns and Allowances | | (22,955) |
| | | 31,926,377 |
| **Total Cost of Sales** | | (15,795,401) |
| **Gross Profit** | | 16,130,976 |
| | | |
| **Total Expenses** | | (10,961,790) |
| | | |
| **Income /Loss from Operations** | | 5,169,186 |
| | | |
| **Other Income and (Expense)** | | |
| Gain on Sale of Assets | | 540,589 |
| Interest Expense | $ (125,242) | |
| Penalties and Late Fees | (170,123) | |
| | | (295,365) |
| **Net Other Income and (Expense)** | | 245,224 |
| **Income Before Taxes** | | 5,414,410 |
| **Provision for Income Taxes** | | |
| Florida Income Tax | (119,794) | |
| Federal Income Tax | (783,902) | |
| **Total Provision for Taxes** | | (903,696) |
| | | |
| **Net Income (Loss) for the Year** | $ | 4,510,714 |

.

.

*See Notes to Consolidated Financial Statements.*          **4**

CONFIDENTIAL

**Smart Communications Holding, Inc.**
*Consolidated Income Statement - Cost of Sales*
**For the year ended December 31, 2021**

| | | | |
|---|---:|---|---:|
| **Cost of Sales** | | | |
| Beginning Inventory | $ | $ | 1,401,970 |
| Game Revenue Sharing 50/50 | 13,658 | | |
| Computer and Tablet Purchases | 4,097,633 | | |
| Hardware Purchases | 200,910 | | |
| Software Purchases | 8,876 | | |
| Hardware Installation Costs | 28,554 | | |
| Technology Services - Facilities | 311,913 | | |
| Equipment Design | 43,188 | | |
| Vehicle xpenses | 27,914 | | |
| Freight and Shipping | 374,670 | | |
| Repairs and Maintenance | 808,408 | | |
| Telecommunications Taxes Expense | 474,019 | | |
| Labor - Telephone CC Sales | 237,202 | | |
| Touchscreen Kiosk Purchases | 24,085 | | |
| Mobile Mail Carts | 1,447 | | |
| Tablet Purchases | 152,000 | | |
| Contractor Services | 1,256,386 | | |
| Faciliites Commissions Expense | 5,430,350 | | |
| Salesperson Commissions | 269,485 | | |
| Sublicense Royalty Fees Expense | 100,795 | | |
| Data Sorage & Server Hosting | 68,813 | | |
| Internet Services | 299,578 | | |
| Kiosk Software Expense | 161,378 | | |
| Labor - Mail Processing | 497,451 | | |
| Merchant Card Fees | 1,040,790 | | |
| Travel | 325,488 | | |
| Meals | 32,828 | | |
| | | | 16,287,819 |
| | | | 17,689,789 |
| **Less Ending Inventory** | | | (1,894,388) |
| **Cost of Sales** | | | **15,795,401** |

CONFIDENTIAL

SMART_B&R 000214

**Smart Communications Holding, Inc.**
*Consolidated Income Statement - Expenses*
**For the year ended December 31, 2021**

| Description | | Amount |
|---|---|---|
| Advertising and Promotions | $ | 94,873 |
| Bank Service Fees | | 2,227 |
| Depreciation Expense | | 1,737,201 |
| Postage and Shipping | | 4,883 |
| Health Insurance | | 336,556 |
| Workman Compensation Insurance | | 14,800 |
| Business Insurance Expense | | 127,468 |
| Outside Services | | 5,495 |
| Dues and Subscriptions | | 81,789 |
| Computer Expenses | | 38,320 |
| Professional Fees | | 110,811 |
| Regulatory and Registration Fees | | 50,644 |
| Legal Fees | | 3,057,099 |
| Licenses and Permits | | 2,656 |
| Charitable Contributions | | 10,714 |
| Officer Compensation | | 160,945 |
| Wages and Salaries | | 3,421,085 |
| Payroll Service Fees | | 65,651 |
| Payroll Taxes Expense | | 411,561 |
| Property Taxes | | 72,676 |
| Vehicle Expenses | | 172,289 |
| Meals and Entertainment | | 110,879 |
| Office Expense | | 83,999 |
| Computer Expenses | | 20,135 |
| Contract Labor Expense | | 97,916 |
| Rent Expense | | 79,825 |
| Telecommunicataions Expense | | 80,303 |
| Telephone Expense | | 32,947 |
| Website Design and Maintenance | | 3,651 |
| Repairs and Maintenance | | 203,658 |
| Utilities | | 52,574 |
| Client Welfare Expense | | 163,073 |
| Recruitment Fees | | 20,672 |
| Professional Education | | 11,160 |
| Other Expenses | | 21,255 |
| **Total Expenses** | $ | **10,961,790** |

*See Notes to Consolidated Financial Statements.*                    6

CONFIDENTIAL

**Smart Communications Holding, Inc.**
*Consolidated Statement of Retained Earnings*
**For the year ended December 31, 2021**

| | | |
|---|---:|---:|
| Retained Earnings - Beginning of Year | | $ 7,872,214 |
| | | |
| Conversion of Accumulated Depreciation to GAAP | $ 2,480,258 | |
| Prior Period Adjustment - Affiliated Entities | 216,092 | |
| Prior Period Adjustment - Credit Card Liaiblity | 132,078 | |
| | | 2,828,428 |
| Retained Earnings - Beginning of Year Restated | | 10,700,642 |
| | | |
| Net Income for the Year | | 4,510,714 |
| | | |
| Retained Earnings - End of Year | | $ 15,211,356 |

*See Notes to Consolidated Financial Statements.*                    *7*

CONFIDENTIAL

SMART_B&R 000216

**Smart Communications Holding, Inc.**
**Statement of Cash Flows**
**For the year ended December 31, 2021**

| | | |
|---|---|---:|
| **Cash Flows from (Provided to) Operating Activities** | | |
| Net Income (Loss) form Operations | $ | 4,510,714 |
| Adjustments to reconcile increase  in net assets | | |
| to net cash provided by (used in) operating activities: | | |
| Depreciation | | 1,737,201 |
| | | 6,247,915 |
| (Increase) Decrease in operating assets: | | |
| Accounts Receivable | | 560,798 |
| Other Receivables | | (1,375,598) |
| Other Assets | | 117,436 |
| Prepaid Expenses | | (92,860) |
| Inventory | | (492,417) |
| Increase (Decrease) in operating liabilities: | | |
| Accounts Payable | | 889,036 |
| Accrued Credit Cards Payable | | (13,893) |
| Accrued Liabilities | | 313,495 |
| Accrued Payroll and Withholdings | | 109,424 |
| Accrued Corporate Taxes | | (1,368,593) |
| Current Portion of Long Term Debt | | (584,000) |
| | | 4,310,743 |
| Less: Gain on Sale of Asset | | (540,589) |
| **Net Cash Flows from (Provided to) Operating Activities** | | 3,770,154 |
| **Cash Flows From ( Provided to) Investing Activities** | | |
| Proceeds from Sale of Asset | | 1,932,208 |
| Purchase of Fixed Assets | | (1,826,778) |
| **Net Cash Flows From (Provided to) Provided to Investing Activities** | | 105,430 |
| **Cash Flows From (Provided to) Financing Activities** | | |
| Payments on Notes Payable | | (1,045,710) |
| **Net Cash Flows from (Provided to) Financing Activities** | | (1,045,710) |
| | | |
| **Net Increase (Decrease) in Cash From Operating Activities** | | 2,829,874 |
| | | |
| Cash and Cash Equivalents at Beginning of Year | | 2,574,778 |
| | | |
| **Cash and Cash Equivalents at End of Year** | $ | 5,404,652 |

Interest Expense for the year was in the amount of $ 125,242.
Taxes Paid for the year was in the amount of $ 1,907,158.

*See Notes to Consolidated Financial Statements.*      *8*

CONFIDENTIAL

SMART_B&R 000217

**Smart Communications Holding, Inc.**
**Notes to Consolidated Financial Statements**
**For the year ended December 31, 2021**
=======================================================================

## Note A – Significant Accounting Policies

*Basis of Consolidation*

The consolidated financial statements include the financial statements of Smart Communications, U.S, Smart Communications, Pasco, and Smart Communications, Collier. Smart Communications Holding, Inc, owns 100 % of these companies. All transactions between Smart Communications Holding, Inc. and subsidiaries have been eliminated upon consolidation.

*Concentration of Credit Risk*

The Company normally maintains sufficient cash to meet its anticipated working capital needs. Cash in deposit accounts may, at times, exceed the insured amount of $ 250,000 provided by the Federal Deposit Insurance Corporation (FDIC). However, The Company has not experienced any losses in such accounts and believes it is not exposed to any significant credit risk in these accounts.

*Cash and Cash Equivalents*

For purposes of the statement of cash flows, the Company considers all highly liquid investments, generally those assets readily convertible to known amounts of cash with a maturity of three months or less, to be cash equivalents.

*Accounts Receivable*

Accounts Receivable are customer obligations due under normal trade conditions that have been received after the year end but attributable to the current year. The Company considers these accounts receivable to be fully collectible; accordingly, no allowance for doubtful accounts is require. If amounts become uncollectible, they are charged to operations when that determination is made.

*Inventory*

Inventory consists of tablets, kiosks, and various computer parts and accessories, and is stated at the lower of cost or market using the first-in, first-out method.

*Property and Equipment*

Property and equipment is stated at cost less accumulated depreciation. Provisions for depreciation of assets are computed using the straight-line at rates which are intended to amortize the cost of such assets over their useful lives which range from 5 to 40 years. Leasehold Improvements are amortized over the service lives of the improvements, generally 40 years.

*Revenue Recognition*

Revenues are generally recognized when realized or realizable, and when earned (generally when goods are transferred or services rendered), no matter when payment is received. The Company recognizes revenue from messaging services at the point of sale, net of sales taxes (if any). Service contract revenue is recognized when the service is performed.

The Company adopted FASB ASC 606, *Revenues from Contracts with Customers*, which amended the existing standards for revenue recognition. The adoption of this new revenue standard does not have a significant impact on the amount and timing of revenue recognized in the Company's financial statements. Based on the Company's evaluation process and review of its contracts with customers, the timing and amount of revenue recognized previously is consistent with how revenue is recognized under the new standard. No changes were required to reported revenues as a result of the adoption of FASB ASC 606.

*9*

CONFIDENTIAL

SMART_B&R 000218

**Smart Communications Holding, Inc.**
**Notes to Consolidated Financial Statements**
**For the year ended December 31, 2021**

==============================================================================

## Note A – Significant Accounting Policies (continued)

### *Use of Estimates*
These financial statements have been prepared in conformity with accounting principles generally accepted in the United States of America. Management is required to make certain estimates and assumptions that affect amounts reported in the financial statements. Actual results may differ from these estimates.

### *Advertising Costs*
Advertising costs are charged to operations when incurred. For the year ended December 31, 2021, advertising expense amounted to $ 94,873.

## Note B – Property and Equipment

Property and equipment are stated at cost. All property and equipment and leasehold improvements are depreciated on the straight-line method. Repairs and maintenance of property and equipment are charged to operations, and major improvements are capitalized. Upon retirement, sale or other disposition of assets, the costs and accumulated depreciation are eliminated from the accounts, and any resulting gain or loss is included in operations.

For the year ended December 31, 2021, property and equipment consists of the following:

| Description | Cost | 2021 Depreciation | 12.31.2021 Accumulated Depreciation | Net Book Value |
|---|---|---|---|---|
| Kiosk Computer System | $  2,987,602 | $       421,239 | $   2,377,543 | $       610,059 |
| Computer Software | 2,987,875 | 597,009 | 1,780,970 | 1,206,905 |
| Vehicles | 2,514,000 | 486,741 | 842,006 | 1,671,994 |
| Display System | 21,280 | 3,040 | 9,300 | 11,980 |
| Demo Build | 22,500 | 4,500 | 18,883 | 3,617 |
| Furniture and Fixtures | 131,051 | 21,122 | 72,854 | 58,197 |
| Buildings | 4,034,661 | 110,531 | 171,972 | 3,862,689 |
| Leasehold Improvements | 355,710 | 7,381 | 17,822 | 337,888 |
| Mail Service Equipment | 414,217 | 59,174 | 182,453 | 231,764 |
| Equipment | 185,252 | 26,464 | 51,605 | 133,647 |
| | $  13,654,148 | $   1,737,201 | $   5,525,408 | $   8,128,740 |

All property is depreciated using the straight-line method. Furniture and fixtures, computer software, demos, kiosks, and vehicles are depreciated over 5 years. Buildings and leasehold improvements are depreciated over 39 years, and machinery and equipment are depreciated over 7 years. Assets commence depreciation as of the first full month of usage.

*10*

CONFIDENTIAL

SMART_B&R 000219

**Smart Communications Holding, Inc.**
**Notes to Consolidated Financial Statements**
**For the year ended December 31, 2021**
===============================================================================

**Note C – Subsequent Events**

Management has evaluated subsequent events through December 21, 2022, the date financial statements were available to be issued. No events occurred or are pending through this date which would have a material effect on the financial statements or require disclosure in the financial statements.

**Note D – Loans To Shareholder**

At December 31, 2021, a 50 % shareholder owed the Company loans in the amount of $ 428,855. No interest has been accrued on the loans.

**Note E – Accounts Receivable – Affiliated Entities**

As of December 31, 2021, the Company has accounts receivable from the following affiliated entities:

| Description | | Amount |
|---|---|---|
| Smart Communications U.S., Inc. | $ | 72,136 |
| LOCO Florida, LLC | | 35,830 |
| Mailguard Federal, Inc. | | 1,622,935 |
| HLFIP Holding, Inc. | | 169,085 |
| | $ | 1,899,986 |

**Note F – Long Term Debt**

On May 19, 2020, the Company purchased three Ford Trucks at a total financing cost of $ 93,319.44. Payments on this loan commenced as of July 3, 2020 in the amount of $ 622.02 per truck, including interest at the annual rate of 7.2900%, payable monthly for 60 months for each truck. Final payment on this loan is due on June 3, 2025. As of December 31, 2021, the principal balance on the vehicle loan is in the amount of $ 68,970.81. Interest expense on this loan for the year ended December 31, 2021 is in the amount of $ 5,674.83.

As of January 1, 2019, The Company entered into a Technology License Agreement with LATTICE Incorporated. The Agreement is a Licensing Agreement with LATTICE Software wherein Smart Communications Holding, Inc. pays LATTICE a license fee, in the amount of $ 2,850,000.00 payable in monthly installments of $ 47,500.00 for sixty (60) consecutive months beginning on February 1, 2019. Upon payment in full of the License fee, Smart Communications Holding, Inc. shall pay LATTICE an annual royalty payment of $ 100.00 each year (the "Royalty Fee"). The Royalty Fee shall be due on or before December 31, of each year beginning in 2025 and shall continue until the Licensing Agreement is terminated.

As of December 31, 2021, the balance due to LATTICE on the Licensing Agreement is in the amount of $ 1,187,500.00.

*11*

CONFIDENTIAL

**Smart Communications Holding, Inc.**
**Notes to Consolidated Financial Statements**
**For the year ended December 31, 2021**
===============================================================================

**Note G – Income Taxes**

Income taxes are provided for the tax affects of transactions reported in the financial statements and consist of taxes currently due plus deferred taxes. Deferred taxes are recognized for differences between the basis of assets and liabilities for financial statement and income tax purposes. The differences relate primarily to depreciation (use of different depreciation methods for financial statement and income tax purposes), and legal expenses not yet recognized on the Company's tax returns. The deferred tax assets and liabilities represent the future tax return consequences of timing differences, which will either be taxable or deductible when the assets and liabilities are recovered or settled.

The Company is required to recognize, measure, classify and disclose in the financial statements uncertain tax positions taken or expected to be taken in the Company's tax returns. Management has determined that the Company does not have any uncertain tax positions and associated unrecognized benefits that materially impact the financial statements or related disclosures. Since tax matters are subject to some degree of uncertainty, there can be no assurance that the Company's tax returns will not be challenged by the taxing authorities and that the Company will not be subject to additional tax, penalties, and interest as a result of such challenge. Penalties and interest assessed by income taxing authorities would be included in operating expenses.

The Company is taxed as a C Corporation under the Internal Revenue Code. For the year ended December 31, 2021, the provision for income taxes consists of the following:

|  |  | 2021 |
|---|---|---|
| **Provision for Income Taxes:** |  |  |
| Current Income Taxes: |  |  |
| Florida Income Tax | $ | 119,794 |
| Federal Income tax |  | 783,902 |
|  | $ | 903,696 |
| **Analysis of Deferred Tax Assets (Liabilities)** |  |  |
| Depreciation | $ | 196,275 |
| Legal and Professional Fees |  | 430,245 |
|  | $ | 626,520 |

*12*

CONFIDENTIAL

# EXHIBIT 8

## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## IN AND FOR SARASOTA COUNTY, FLORIDA

JONATHAN LOGAN and SMART COMMUNI-
CATIONS HOLDING, INC.

Plaintiffs,

v.

JANICE LOGAN, individually and as Trustee of the
James Logan Family Trust, dated February 10, 2021;
and ALEXIS LOGAN,

Defendants.    /

Case No. 2023-CA-1002-NC

—————————————————————

JANICE LOGAN, as Trustee of the James Logan
Family Trust, dated February 10, 2021,

Counterclaim Plaintiff,

v.

JONATHAN D. LOGAN, SMART COMMUNICA-
TIONS HOLDING, INC., SMART COMMUNICA-
TIONS HOLDING, LLC, HLFIP HOLDING, INC,
and HLFIP HOLDING, LLC,

Counterclaim Defendants.    /

(CONSOLIDATED)

JANICE LOGAN, as Trustee of the James Logan
Family Trust, dated February 10, 2021, and deriva-
tively on behalf of Smart Communications Holding,
Inc.,

Plaintiff,

Case No.: 2023-CA-1280-NC

v.

JONATHAN D. LOGAN,
SMART COMMUNICATIONS HOLDING, INC.,
nominal defendant, SMART COMMUNICATIONS
HOLDING, LLC, HLFIP HOLDING, LLC, LOCO
FLORIDA LLC, and SMART COMMUNICA-
TIONS YACHT HOLDING, LLC,

Defendants.    /

—————————————————————

## DEFENDANT HLFIP HOLDING, LLC'S AMENDED RESPONSES AND OBJECTIONS TO JANICE LOGAN'S FIRST REQUESTS FOR ADMISSION

1

Defendant HLFIP Holdings, LLC ("HLFIP"), by and through undersigned counsel and pursuant to Fla. R. Civ. P. 1.370, hereby responds and objects to Plaintiff Janice Logan's, as Trustee of the James Logan Family Trust, dated February 10, 2021 ("Janice" or "Plaintiff") First Set of Requests for Admission to HLFIP Holdings, LLC, served on July 24, 2024, as follows:

## GENERAL OBJECTIONS

1.    HLFIP objects to any Definition or Instruction that imposes requirements upon HLFIP or seeks to require HLFIP to provide information or assume an obligation beyond those imposed by law or set forth in the Florida Rules of Civil Procedure.

2.    HLFIP objects to the Requests to the extent they seek information for a time period beyond that placed at issue by the claims in the operative pleadings or allowed by applicable statute (e.g., Fla. Stat. § 607.1436(4)). Unless otherwise noted, HLFIP will provide information and documents for the time period placed at issue by the Parties' claims, as limited by applicable laws or the Court.

3.    HLFIP objects to the Requests to the extent they call for information protected by the attorney-client privilege or work product doctrine, or any other applicable privilege, rule, statute, or law. To the extent that any such information is inadvertently provided, it shall not be deemed a waiver of any applicable privilege, immunity, or protection.

4.    HLFIP expressly conditions its Response to each and every Request upon completion of further discovery and reserves the right to amend and/or supplement any Response as discovery of additional information may from time to time require.

5.    HLFIP objects to the Requests to the extent they are overbroad, unduly burdensome and/or seek to impose upon HLFIP an undue expense or burden that properly should be borne by Plaintiff.

6.      HLFIP objects to the Requests to the extent they seek or encompass information that (a) is not relevant to the issues in the above-captioned case or (b) is not reasonably calculated to lead to the discovery of admissible evidence. HLFIP does not concede the relevance of any information provided in response to the Requests and expressly reserves the right to object to the introduction into evidence of any responses on relevance or any other grounds.

7.      HLFIP reserves the right to rely, at trial or in any other proceeding in this action or any other action, upon information in addition to that identified and/or provided in response to the Requests.

8.      Nothing contained herein shall be deemed to constitute an assent to the terms or definitions used in the Requests. The adoption and/or use by HLFIP of any term that Plaintiff defines in the Requests is for convenience only and is not intended as a waiver of any objection stated herein, nor shall it be deemed an admission in any respect.

9.       HLFIP reserves the right to challenge the competency, relevance, materiality, and admissibility of, or to object on any ground to the use of, information set forth in the Responses to the Requests.

10.     HLFIP objects to the Requests to the extent they seek information that Plaintiff already has in her possession, custody, or control.

11.     HLFIP objects to the Requests to the extent they assume the existence of facts that do not exist and the occurrence of events that did not occur. Any Response of HLFIP to an indi-vidual Request is not intended to be, and shall not be construed as, an admission that any factual predicate stated in the Request is accurate.

12.     Each of the foregoing "General Objections" is hereby incorporated into each of the Responses provided below.

## RESPONSES TO REQUESTS FOR ADMISSION

**1.      Admit that HLFIP holds U.S. Patent No. 10,291,617.**

**Response to RFA No. 1**: Admitted.

**2.      Admit that U.S. Patent No. 10,291,617 was not issued until May 14, 2019.**

**Response to RFA No. 2**: Admitted.

**3.      Admit that the claims of U.S. Patent No. 10,291,617 are invalid under 35 U.S.C.
Section 101, for essentially the reasons articulated in *HLFIP Holding, Inc. d/b/a Smart Com-
munications IP Holdings v. York Cnty., PA, et al.*, 600 F. Supp. 3d 526 (Case No. 1:20-cv-
00186, ECF 135) (M.D. Pa. April 25, 2022) *aff'd sub nom. HLFIP Holding, Inc. v. York Cnty.,
PA*, 2022-1940, 2023 WL 5316529 (Fed. Cir. Aug. 18, 2023).**

**Response to RFA No. 3**: Denied.

**4.      Admit that HLFIP has never received any intellectual property license royalty
payments from SmartComm.**

**Response to RFA No. 4**: HLFIP objects to this Request on the grounds that the terms "payment"
and "received" are vague and ambiguous. HLFIP further objects to this Request because HLFIP
reported income from SmartComm royalty payments on its 2022 Federal income tax return, pur-
suant to 26 U.S.C. § 482 (which permits the IRS to "allocate gross income" among "businesses …
owned or controlled directly or indirectly by the same interests" as "necessary … clearly to reflect
the income of any of such . . . businesses") and Treas. Reg. § 1.482-1 (which explains that section
482 "places a controlled taxpayer on a tax parity with an uncontrolled taxpayer by determining the
true taxable income of the controlled taxpayer" and provides that "[i]n determining the true taxable
income of a controlled taxpayer, the standard to be applied in every case is that of a taxpayer

dealing at arm's length with an uncontrolled taxpayer"). Subject to and without waiving the fore-going general and specific objections, HLFIP denies this Request.

5.      **Admit that there are no documents in your custody, possession, or control from prior to August 29, 2023, that reference the Royalty Fee.**

**Response to RFA No. 5**: HLFIP denies this Request because while there may be no documents from before August 29, 2023, that use the term "royalty" or "royalty fee," in 2015, James Logan, Jon Logan, Alexis Logan, Smart Communications US, and Smart Communications Holding entered into a written agreement that expressly recognized that "Jonathan Logan exclusively owns and will retain exclusive ownership" of the intellectual property for which Jon was the "inventor." Jon's ownership of the intellectual property that Jon invented or developed necessarily entitles him to reap the economic benefits of that intellectual property. Therefore, that 2015 agreement necessarily implies that SmartComm owed and owes royalties to Jon Logan (via what is now his wholly owned entity, HLFIP).

**6.     Admit that there are no documents in your custody, possession, or control from prior to August 29, 2023, that reference a 40% net sales intellectual property royalty license from SmartComm to HLFIP.**

**Response to RFA No. 6**: HLFIP denies this Request because while there may be no documents from before August 29, 2023, that use the term "royalty" or "royalty fee," in 2015, James Logan, Jon Logan, Alexis Logan, Smart Communications US, and Smart Communications Holding entered into a written agreement that expressly recognized that "Jonathan Logan exclusively owns and will retain exclusive ownership" of the intellectual property for which Jon was the "inventor." Jon's ownership of the intellectual property that Jon invented or developed necessarily entitles him to reap the economic benefits of that intellectual property. Therefore, that 2015 agreement necessarily implies that SmartComm owed and owes royalties to Jon Logan (via what is now his wholly owned entity, HLFIP).

Date: December 2, 2024                    Respectfully submitted,

                                         */s/ Christopher G. Oprison*
                                         Christopher G. Oprison (FBN 122080)
                                         Email:  chris.oprison@dlapiper.com
                                         **DLA PIPER LLP (US)**
                                         200 South Biscayne Boulevard
                                         Suite 2500
                                         Miami, Florida 33131
                                         Telephone:  (305) 423-8522
                                         Facsimile:  (305) 657-6366

                                         *Attorney for Defendant HLFIP*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 2, 2024, a true and correct copy of the foregoing document was served via email to all entitled parties and counsel of record appearing on the Court's service list at the time of service, and on December 2, 2024, a true and correct copy of the foregoing document was served via the Court's electronic portal to all entitled parties and counsel of record appearing on the Court's service list at the time of service.

*/s/ Christopher G. Oprison*
Christopher G. Oprison

# EXHIBIT 9

---------- Forwarded message ----------
From: **Jon** <jon.logan@smartjailmail.com>
Date: Thu, Apr 30, 2015 at 3:26 PM
Subject: Contract
To: Jim Logan <jim.logan@smartjailmail.com>

Agreement between Jim Logan - president of smart communications us, and smart communications holding, between Jon Logan creator and owner of intellectual property known as (postal mail contraband elimination system).

This contract confirms Jonathan D Logan is the creator and owner of intellectual property and system business model soon to be patented for postal mail elimination system. This intellectual property is solely created and owned by Jonathan Logan (inventor) and this contract acknowledges that Jonathan Logan exclusively owns and will retain exclusive ownership of this service invention to correctional facilities and smart communications us and smart communications holding and Jim Logan, Alexis logan, or any employee, share holder or agent of smart communications us or of Jim Logan and Alexis Logan acknowledges they do not own this service invention and they can not use this postal mail contraband elimination service or system model, unless direct written permission is given by the owner of this intellectual property (Jonathan d Logan) to use this service, model, business plan, or technology.

This agreement encompasses a non disclosure agreement and the technology and system disclosed by Jonathan Logan to Jim Logan, Alexis Logan and smart communications us and smart communications holding can not be used or disclosed in any way shape or form unless written permission is given by Jonathan Logan.

Date and sign.  Alexis sign and Janice as a witness to you.

Thank you!

Jon,
Smartjailmail.com

X Alexis Logan, Dated May 18, 2015

* Jon new technology/Patent/ new IP only

- Alexis Logan

jim.logan

Mail

COMPOSE

**Inbox (1,524)**
Starred
Important
Sent Mail
**Drafts (78)**
Follow up
Misc
Priority
More

Contract     Inbox   x

**Jon**
to me

3:26 PM (18 minutes ago)

More

1 of 3,891

J

SI

Agreement between Jim Logan - president of smart communications us, and smart communications holding, between Jon
Logan creator and owner of intellectual property known as (postal mail contraband elimination system).

This contract confirms Jonathan D Logan is the creator and owner of intellectual property and system business model soon to
be patented for postal mail elimination system. This intellectual property is solely created and owned by Jonathan Logan
(inventor) and this contract acknowledges that Jonathan Logan exclusively owns and will retain exclusive ownership of this
service invention to correctional facilities and smart communications us and smart communications holding and Jim Logan,
Alexis logan, or any employee, share holder or agent of smart communications us or of Jim Logan and Alexis Logan
acknowledges they do not own this service invention and they can not use this postal mail contraband elimination service or
system model, unless direct written permission is given by the owner of this intellectual property (Jonathan d Logan) to use this
service, model, business plan, or technology.

This agreement encompasses a non disclosure agreement and the technology and system disclosed by Jonathan Logan to
Jim Logan, Alexis Logan and smart communications us and smart communications holding can not be used or disclosed in any
way shape or form unless written permission is given by Jonathan Logan.

Date and sign.  Alexis sign and Janice as a witness to you.

Thank you!

**Jim Logan** <jim.logan@smartjailmail.com>
to Alexis

3:42 PM (2 minutes ago)

# EXHIBIT 10

Smart Communications Holding, Inc.
Calculation of IP License Fee
40% Rate

| Smart Communications Holding, Inc. | source | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2015 - 2022 Total All as of December 31, 2022 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Form 1120 | Form 1120 | Form 1120 | Form 1120 and Consolidated Financial Statement | Form 1120 and Consolidated Financial Statement | Form 1120 and Consolidated Financial Statement | Form 1120 and Consolidated Financial Statement | Draft Audited Financial Statement Smart Communications Holding, Inc. | |
| Net Revenue | | $2,166,310 | $3,038,143 | $3,844,269 | $9,598,453 | $15,976,810 | $21,609,555 | $31,742,824 | $44,780,334 | $132,756,698 |
| Deduct: | | | | | | | | | | |
| Miscellaneous Income | | | | | 3,468 | 12,701 | 493,752 | 30,252 | 93,375 | 633,548 |
| Interest Income | | | | | | | 1,115 | | | 1,115 |
| Net Revenue to be used for Calculation of IP License Fees | | $2,166,310 | $3,038,143 | $3,844,269 | $9,594,985 | $15,964,109 | $21,114,688 | $31,712,572 | $44,686,959 | $132,122,035 |
| 40%  IP License Fee | A | $866,524 | $1,215,257 | $1,537,708 | $3,837,994 | $6,385,644 | $8,445,875 | $12,685,029 | $17,874,784 | $52,848,814 |
| Total Interest as of Dec 31, 2022 | | $326,018 | $396,211 | $424,137 | $866,185 | $1,120,996 | $1,058,635 | $953,120 | $446,870 | $5,592,170 |
| Total IP License Fee and Interest | | $1,192,542 | $1,611,468 | $1,961,845 | $4,704,179 | $7,506,640 | $9,504,510 | $13,638,148 | $18,321,653 | $58,440,984 |

**Calculation of Interest (simple interest on an annual basis)**

| | | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|---|---|---|---|
| | | 1/1/2015 | 1/1/2016 | 1/1/2017 | 1/1/2018 | 1/1/2019 | 1/1/2020 | 1/1/2021 | 1/1/2022 |
| | | 12/31/2015 | 12/31/2016 | 12/31/2017 | 12/31/2018 | 12/31/2019 | 12/31/2020 | 12/31/2021 | 12/31/2022 |
| | # of days | 364 | 365 | 364 | 364 | 364 | 365 | 364 | 364 |
| Mid-Year Convention: | Divided by 2 | 182 | 182.5 | 182 | 182 | 182 | 182.5 | 182 | 182 |
| | Mid-Period Convention Date in First Year | 7/2/2015 | 7/1/2016 | 7/2/2017 | 7/2/2018 | 7/2/2019 | 7/1/2020 | 7/2/2021 | 7/2/2022 |
| | End Date for Interest | 12/31/2022 | 12/31/2022 | 12/31/2022 | 12/31/2022 | 12/31/2022 | 12/31/2022 | 12/31/2022 | 12/31/2022 |
| | Time Period in no. of days | 2,739 | 2,374 | 2,008 | 1,643 | 1,278 | 913 | 547 | 182 |
| | Time Period through 12/31/22 based on No. of Years | 7.52 | 6.52 | 5.52 | 4.51 | 3.51 | 2.51 | 1.50 | 0.50 |
| | Interest Rate   B | 5.00% | 5.00% | 5.00% | 5.00% | 5.00% | 5.00% | 5.00% | 5.00% |

* Based on review of quarterly Florida Statutory Rates, review of Florida maximum late fees rate, and discussion with client and counsel.

| | | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|---|---|---|---|
| | Annual Interest   (A *B) | $43,326 | $60,763 | $76,885 | $191,900 | $319,282 | $422,294 | $634,251 | $893,739 |
| | No. of years outstanding through 12/31/22 | 7.52 | 6.52 | 5.52 | 4.51 | 3.51 | 2.51 | 1.50 | 0.50 |
| | Interest Through 12/31/22 | $326,018 | $396,211 | $424,137 | $866,185 | $1,120,996 | $1,058,635 | $953,120 | $446,870 |

1) Miscellaneous Income and Other Income items

For years 2018, 2019, 2020, and 2022, Consolidated Net Revenue equals amount recorded on Form 1120. For year 2021, Net Revenue from Consolidated Income Statement does not equal the Net Revenues recorded on Form 1120, a difference $183,553; however, relied on Miscellaneous Income from Consolidated Audited Financial Statements for 2021.

For years 2015 - 2017, it was explained *other income items* were not reported in Net Revenue.

CONFIDENTIAL

Plaintiffs0001789