COMMONWEALTH COURT
OF PENNSYLVANIA
2021 JAN 21  AM 10: 51

In the Commonwealth Court of Pennsylvania

Donna Hill

    Petitioner

V.                                                                                      No. 684 M.D. 2018

Secretary for the Pa. Dept. of
Corr., Superintendent at SCI Benner
and Smart Communications

    Respondents

## Second Amended Petition

1. Petitioner, Donna Hill, pro se, is a citizen of the Commonwealth of Pennsylvania, with her residence in Pittsburgh, Pennsylvania.

2. Respondents are the Secretary of the Pennsylvania Dept. of Corrections, the Superintendent at SCI Benner and Smart Communications, which is a correspondence processing center contracted with the Pennsylvania Dept. of Corrections.

3. All of the respondents have acted and continue to act under the color of state law, at all times relevant to this complaint and are being sued in their individual and official capacities, separately.

4. On or about August 29, 2018, the Department of Corrections initiated a system wide lockdown. The initiation of this lockdown also cancelled all inmate visits and stopped the processing of all mail to and from the facilities.

5. After the lockdown, the Department implemented sweeping new mail processing practices. See: exhibit A.

1.

6. Notably, all inmate non legal mail must be sent to Smart Communications (a company in Florida) for processing, where the originals are destroyed and the inmate receives a copy. Smart Communications would also keep a statewide data base of all incoming correspondence.

7. According to the new practice, legal mail would continue to be processed through the Department of Corrections. However, the original would be destroyed and the inmate would be given a copy. The new practice also claimed that the original would be made available upon request.

9. On September 8, 2018, Mr. Hill filed an institutional grievance requesting the original copies of his legal mail.

10. On September 17, 2018, Mr. Hill received a response to his grievance informing him that there was no legal mail procedure that allows him to receive original documents. See: Grievance #757263.

11. Since this original complaint was filed, there has been a number of changes. First, prisoners are now being given the original, of all legal material, that falls neatly into the Department's new practices. Second, they created different mailing addresses for books, legal mail and non-legal mail.

12. Petitioner used to write to her husband every Monday, Wednesday and Friday until her mail started disappearing. Petitioner is missing around 38 pieces of mail.

13. There were photos, drawings by children in the family, announcements of family achievements and occasions, and none of these things can be replaced.

14. This new mailing practice amounts to a constructive ban on all mail. This loss of personal property, and frustration or impedance of the petitioner's conjugal rights satisfies the actual injury requirement.

15. Petitioner has sent mail to her husband at both SCI Benner and to the Smart Communications address in Florida and it just disappeared.

16. Petitioner has no adequate remedy at law.

Wherefore, petitioner respectfully requests that this Court enter an order for a preliminary and final injunction enjoining the respondents from delaying, confiscating, recording her mail, and seeks an unspecified amount in compensatory and punitive damages, and all other relief that the law allows.

Respectfully,

*Donna Hill*
Donna Hill

I declare under penalty of perjury that the above is true and correct.

3.

Certificate of service

I, Donna Hill, certify that I am, this day, serving the foregoing documents upon the persons and in the manner indicated below.

First class mail to:

Clerk of Courts
P.O. Box 69185
Harrisburg, Pa. 17106

Raymond Dorian
I. D. # PA48148
1920 Technology Parkway
Mechanicsburg, Pa. 17050

Smart Communications Holding, Inc.
10491 72nd St.
Seminole, FL 33777

Respectfully,

*Donna Hill*
Donna Hill

Donna Hill
1110 Steuben St.
apt. 213
Pgh., PA 15220

PITTSBURGH PA 150
13 JAN 2021 PM 5 L



Clerk of Courts
P.O. Box 69185
Harrisburg, PA 17106

17106-918585

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Donna Hill, | : | |
|         Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Pennsylvania Dept. of Corrections; | : | |
| Superintendent of SCI Benner and | : | |
| Smart Communications, | : | No. 684 M.D. 2018 |
|         Respondents | : | Submitted: July 9, 2021 |

BEFORE:  HONORABLE MARY HANNAH LEAVITT, Judge[1]
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COVEY                                    FILED: February 17, 2022

        Before this Court are Smart Communications' (Smart) preliminary objections (Preliminary Objections) to Donna Hill's (Hill) pro se Second Amended Petition for Review in the Nature of a Complaint (Second Amended Petition) filed in this Court's original jurisdiction. Therein, Hill, Inmate Dwayne Hill's (Inmate Hill) wife, challenges the Department of Corrections' (Department) inmate mailing policy (Mailing Policy), and seeks injunctive relief against Smart - the Department's mail handling contractor - and the Department enjoining them from "delaying, confiscating, [and/or] recording her mail," plus compensatory and punitive damages. Second Amended Petition at 3. After review, this Court overrules Smart's Preliminary Objections.

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

**Background**

The instant matter has a complicated procedural history. Inmate Hill is currently incarcerated at State Correctional Institution (SCI)-Phoenix. On October 30, 2018, Inmate Hill, then incarcerated at SCI-Benner, and Hill (collectively, Petitioners), filed a petition for review (Original Petition) with this Court seeking to enjoin the Department from enforcing its Mailing Policy. Petitioners also challenged the Mailing Policy's validity, arguing that the Department improperly destroyed, delayed, confiscated, and recorded all mail.[2] The Department filed preliminary objections to the Original Petition, asking this Court to dismiss the petition. The Department maintained that this Court lacked jurisdiction over the matter. Additionally, the Department averred that Hill had not stated a claim for relief because she did not have a cognizable interest in original pieces of mail, and because she did not establish irreparable harm resulting from the Mailing Policy. Lastly, the Department argued that its Mailing Policy is constitutional because it reasonably relates to preventing drug entry into SCIs, which is a legitimate penological interest. On September 12, 2019, this Court overruled the Department's preliminary objection to the Court's jurisdiction, sustained its demurrer without prejudice, and granted Hill leave to amend her Original Petition. *See Hill v. Commonwealth* (Pa. Cmwlth. No. 684 M.D. 2018, filed Sept. 12, 2019) (*Hill I*).

On October 17, 2019, Hill filed an amended petition for review (First Amended Petition) adding Smart as a defendant. On October 28, 2019, the Department filed its answer and new matter. On November 27, 2019, Hill filed a new amended petition (New Amended Petition). On December 10, 2019, the Department filed an

---

[2] This Court initially granted Petitioners' *in forma pauperis* (IFP) application in November 2018. However, the Court subsequently granted the Department's motion to revoke Inmate Hill's IFP status under Section 6602(f) of what is commonly referred to as the Prison Litigation Reform Act, 42 Pa.C.S. § 6602(f), based on his history as an abusive litigator. Because Inmate Hill failed to pay the filing fee within the requisite time period, this Court dismissed Inmate Hill as a party in March 2019. The Pennsylvania Supreme Court denied review of that Order.

application to strike the New Amended Petition. On December 23, 2019, Smart filed preliminary objections to the First Amended Petition, alleging that the First Amended Petition was insufficiently specific, and that it was legally insufficient, in that Smart is not a state actor and, thus, cannot be liable to Hill for violating her constitutional rights. On January 8, 2020, this Court granted the Department's application to strike the New Amended Petition.

On July 17, 2020, Hill filed a Motion to File Second Amended Petition, which the Court granted on November 30, 2020. On January 21, 2021, Hill filed the Second Amended Petition, which was substantially similar to her First Amended Petition. On February 5, 2021, Smart filed the Preliminary Objections to Hill's Second Amended Petition, again alleging insufficient specificity in pleading and legal insufficiency because Smart is not a state actor. On March 2, 2021, the Department filed a motion seeking additional time to respond to the Second Amended Petition, which the Court granted on March 4, 2021. On March 15, 2021, Hill filed her response to the Preliminary Objections. On March 29, 2021, the Department filed its Answer and New Matter to the Second Amended Petition (Answer and New Matter). On April 22, 2021, Hill filed her reply to the Department's New Matter.

## Second Amended Petition

In her Second Amended Petition, Hill avers that, pursuant to the Department's Mailing Policy, which was implemented to prevent the entry of drugs into the SCIs, all non-legal inmate mail must be sent to Smart's Florida facility for processing, where the originals are destroyed and the inmate receives copies.[3] Hill

---

[3] Hill's Second Amended Petition references "Exhibit A," an undated, untitled document on Department letterhead, which was attached to Hill's Original Petition and First Amended Petition. Exhibit A describes the Mailing Policy in relevant part, including frequently asked questions and answers thereto, and attributes the new mail procedures to the need to "combat the introduction of drugs into the facilities[.]" Ex. A at 1. In its Answer and New Matter, the Department references

3

further alleges that Smart maintains an incoming correspondence database. According to Hill, she has sent mail to Inmate Hill at both the SCI and Smart's mail processing center and it disappeared. She contends that she used to write to Inmate Hill every Monday, Wednesday, and Friday, until her mail started disappearing. She estimates that approximately 38 pieces of mail are unaccounted for, including photos, children's drawings, and announcements of family achievements and occasions. She complains that the Mailing Policy amounts to a constructive ban on all mail, for which she seeks injunctive relief and monetary damages.

## Discussion

Initially,

> [i]n ruling on preliminary objections, we accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that we may draw from the averments. The Court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review. We may sustain preliminary objections only when the law makes clear that the petitioner cannot succeed on his claim, and we must resolve any doubt in favor of the petitioner.

*Highley v. Dep't of Transp.*, 195 A.3d 1078, 1082 (Pa. Cmwlth. 2018) (citations omitted).

---

Hill's Exhibit A as a memorandum summarizing the inmate mail policy and acknowledges that "upon the reopening of all Department facilities, the Department's new inmate mail policy (DC-ADM 803) went into effect." Dep't Answer and New Matter at 2. The Department attached a copy of Section 1 (Mail Processing Procedures) of the Inmate Mail and Incoming Publications Procedures Manual, DC-ADM 803, to its Answer and New Matter.

4

### I. First Preliminary Objection - Legal Insufficiency

Smart first objects that Hill's Second Amended Petition is legally insufficient in that Smart is not a state actor, but rather, is the Department's arm's length independent contractor, and, thus, Smart cannot be liable for violating Hill's constitutional rights.

Section 1983 of the Civil Rights Act of 1871 (Section 1983) provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any [s]tate . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

The United States Supreme Court has held that "[t]o state a claim under [Section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, **and must show that the alleged deprivation was committed by a person acting under color of state law**." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added); *see also Owens v. Shannon*, 808 A.2d 607 (Pa. Cmwlth. 2002). However, "a plaintiff is not required to set forth the statute by stating a 'Section 1983' cause of action in his complaint[.]" *Weaver v. Franklin Cnty.*, 918 A.2d 194, 200 (Pa. Cmwlth. 2007) (quoting *Clark v. Se. Pa. Transp. Auth.*, 691 A.2d 988, 990 (Pa. Cmwlth. 1997)).

Hill did not specifically assert a Section 1983 civil rights violation in her Second Amended Petition, but this Court recognized in *Hill I*, that Hill "raises a discernible constitutional challenge to the Mailing Policy predicated on her First Amendment[, U.S. Const. amend. I,] right as a non-prisoner to communicate by mail with Inmate [Hill]." *Hill I*, slip op. at 8.

"To be sure, the First Amendment to the United States Constitution protects an inmate's general right to communicate by mail." *Rivera v. Silbaugh*, 240 A.3d 229, 238 (Pa. Cmwlth. 2020). "Indeed, interference with an inmate's mail can rise to the level of a constitutional violation." *Id.* The United States Court of Appeals for the Third Circuit[4] has explained:

> [T]he [United States] Supreme Court has generally treated interference with the mail as implicating the First Amendment right to free speech.
>
> In *Procunier v. Martinez*, 416 U.S. 396 . . . (1974), the Supreme Court invalidated California prison regulations which provided for the routine censorship of inmates' outgoing personal correspondence, on the grounds that the regulations violated the free speech rights of the prisoners' correspondents. [*Id.*] at 408 ("whatever the status of a prisoner's claim to uncensored correspondence with an outsider, it is plain that the latter's interest is grounded in the First Amendment's guarantee of freedom of speech"). *See also Wolff* [*v. McDonnell*], 418 U.S. [539,] 576-77 [(1974)].
>
> In the years after *Procunier* and *Wolff*, however, the [Supreme] Court abandoned the distinction between the free speech rights of inmates and their correspondents on the outside. [*Thornburgh v.* ]*Abbott*, 490 U.S. [401,] 411, n.9 [(1989)] ("any attempt to forge separate standards for cases implicating the [First Amendment] rights of outsiders [and inmates] is out of step with the intervening decisions").

---

[4] [W]e recognize that we are not bound to follow the decisions of federal district and intermediate appellate courts on issues of federal law. However, although decisions of the federal courts lower than the U[nited] S[tates] Supreme Court are not binding on Pennsylvania courts, they may be considered as persuasive authority with regard to federal questions.

*W. Chester Area Sch. Dist. v. A.M.*, 164 A.3d 620, 630 (Pa. Cmwlth. 2017) (citations omitted).

> Clearly, then, prisoners do not forfeit their First Amendment rights to use of the mails.[5]

*Bieregu v. Reno*, 59 F.3d 1445, 1451-52 (3d Cir. 1995) (citations omitted), *overruled on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996).

Smart contends that, to the extent Hill's Second Amended Petition is construed as asserting a First Amendment claim, Smart is not a state actor and, thus, cannot be liable for violating Hill's rights. In support of its claim, Smart cites *Hennessy v. Santiago*, 708 A.2d 1269, 1276 (Pa. Super. 1998), for the proposition that "[a]cts of [] private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 841(1982)). *See also Marmolejos v. Global Tel\*Link Corp.* (W.D. Pa., No. 1:17-CV-13, filed Jan. 9, 2019), 2019 WL 981882, at \*2-\*3, *Magistrate's Report and Recommendation adopted by* (W.D. Pa., No. C.A. 17-13 Erie, filed Feb. 28, 2019), 2019 WL 977888 (dismissal of prisoner plaintiffs' Section 1983 claims against a private corporate supplier of tablet devices sold in the prison commissary that allegedly caused prisoners to receive different versions of downloaded songs than they thought they were purchasing).[6]

The United States Court of Appeals for the Third Circuit has also described:

> "Under color of law" and "state action" are interpreted identically under the Fourteenth Amendment[, U.S. Const.

---

[5] "Although it is well settled that inmates have a right to receive mail, that right may be limited by prison regulations that are reasonably related to legitimate penological interests." *Weiler v. Purkett*, 137 F.3d 1047, 1050 (8th Cir. 1998).

[6] *Hennessy* and *Marmolejos* are inapposite. *Hennessy* did not involve prison operations. Instead, it involved a lawsuit for an alleged civil rights deprivation arising from Hennessy's alleged wrongful dismissal from her position as a habilitative counselor where her employer, pursuant to county contracts, provided community living arrangements for county residents. The *Marmolejos* Court held that the plaintiffs failed to allege any facts from which the Court could infer that a private corporation supplying the tablets to the Department was a state actor.

7

> amend. XIV]. [*Leshko v. Servis*, 423 F.3d 337,] 339 [(3d Cir. 2005)]. . . .
>
> Although there is no "simple line" between state and private actors, *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288 . . . (2001), we have explained that "[t]he principal question at stake is whether there is such a close nexus between the [s]tate and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko*, 423 F.3d at 339 (internal quotation marks and citation omitted). To answer that question, we have outlined three broad tests generated by [United States] Supreme Court jurisprudence to determine whether state action exists: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Mark*[ *v. Borough of Hatboro*,] 51 F.3d [1137,] 1142 [(3d Cir. 1995)] (other alterations, internal quotation marks and citations omitted). Under any test, "[t]he inquiry is fact-specific."[7] *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995)[.]

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). However, "[i]t is clear that a private entity that voluntarily assumes through contract with a state entity the obligation to fulfill **a traditional state function**, such as providing medically prescribed diets to inmates housed within the prison system, acts under color of state law for purposes of [Section] 1983." *Nelson v. ARA Food Serv.* (E.D. Pa., No. 94-4542, filed May 17, 1995), slip op. at ___, 1995 WL 303990, at *3 (emphasis added).

The United States District Court for the Middle District of Pennsylvania clarified:

> It has been well[ ]established that "the function of incarcerating people, whether done publicly or privately, is

---

[7] Notably, "state-hired private contractors are not automatically state actors under [Section] 1983, even if the state is their only patron." *Leshko*, 423 F.3d at 342.

8

> the exclusive prerogative of the state." *Giron v. Corr*[.] *Corp. of Am.*, 14 F. Supp. 2d 1245, 1249 (D.N.M. 1998). Largely, the courts have considered whether private entities in prisons should be considered state actors in the context of *privately-run* prisons, finding that the state actor requirement was met for [Section] 1983 purposes. *See Street v. Corr*[.] *Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (holding that private prison company was a state actor when it incarcerated inmates for the state); *Kesler v. King*, 29 F. Supp. 2d 356, 370-71 (S.D. Tex. 1998) (same); *Giron . . .* , 14 F. Supp. 2d . . . at 1247-51 [] (finding that a corrections officer employed by a private prison company was a state actor for [Section] 1983 purposes when he raped an inmate); *Plain v. Flicker*, 645 F. Supp. 898, 907 (D.N.J. 1986) ("[I]f a state contracted with a private corporation to run its prisons it would no doubt subject the private prison authorities to [Section] 1983 suits under the public function doctrine.").
>
> Furthermore, our colleagues in the Eastern District have considered **what individual functions of incarceration are "public functions**." In *McCullum v. City of Philadelphia*, the court found that a company which privately contracted with a public prison to provide dining services could be considered **a state actor under the public function test because "providing food service, like medical care, to those incarcerated people is one part of the government function of incarceration**." [(E.D. Pa., No. CIV. A. 98-5858, filed July 13, 1999), slip op. at ___, 1999 WL 493696, at *3]. In *McCullum*, the court held that, since the government had an Eighth Amendment[, U.S. Const. amend VIII,] duty to provide "humane conditions of confinement," providing adequate food could be considered acting under the color of state law. *Id*. In addition, "[i]f a state government must satisfy certain constitutional obligations when carrying out its functions, it cannot avoid those obligations and deprive individuals of their constitutionally protected rights by delegating governmental functions to the private sector." *Giron*, 14 F. Supp. 2d at 1249.

*Amig v. Cnty. of Juniata*, 432 F. Supp. 3d 481, 486-87 (M.D. Pa. 2020) (emphasis added). In *Amig*, the court

> similarly f[ou]nd that drug-testing in a prison may be considered a traditional state function. **Under the Eighth**

9

> **Amendment, the state is required to provide** "**humane conditions of confinement**." **Such conditions must necessarily include providing a safe environment** in which inmates may serve their periods of incarceration. **An inmate's safety must**, **in part**, **include maintaining a drug-free setting to the greatest extent possible**. [The court] can easily conceive of the safety concerns that could arise from unchecked drug overdoses, inmates acting under the influence of illicit drugs, or even, as is the case here, the danger of a work-release inmate ingesting illicit drugs outside of the prison and potentially causing harm to herself, other inmates, or innocent bystanders. **Because the [f]acility has a duty to provide a safe environment to its inmates**, [it] also ha[s] a duty to monitor [its] prison population for illicit drug use. Indeed, drug crimes account for a significant number of incarcerations. **The [f]acility cannot then delegate the duty to monitor drug use [to] a private party and absolve inmates of constitutional rights by doing so**.

*Id*. at 487 (emphasis added). This Court finds *Amig* instructive and persuasive.

Here, the Department implemented the Mailing Policy to prevent drugs from entering the facility through the SCI mailing system. In its Answer and New Matter to the Second Amended Petition, the Department acknowledged that it "has a constitutional duty under the Eighth Amendment to ensure the health and safety of all inmates in its care and to prevent their exposure to opioids and synthetic cannabinoids." Dep't Answer and New Matter at 9.

The safety concerns that the Department describes are substantially similar to those referenced in *Amig*. Because the Department has a duty to provide a safe prison environment for the inmates, it has a corresponding duty to prevent the introduction of drugs into its facilities. Thus, this Court finds prison mail screening for that purpose is a traditional state function. Smart voluntary assumed the obligation to perform that traditional state function of prison mail screening and, as a result, it acts under color of state law for purposes of Section 1983. Accordingly, this Court overrules Smart's first Preliminary Objection.

## II. Second Preliminary Objection – Specificity of Pleading

Smart alleges in its second Preliminary Objection that Hill's Second Amended Petition should be dismissed for insufficient specificity.[8] Smart argues in its brief to this Court:

> In her [Second Amended Petition], [] Hill still fails to allege her claim with specificity. She vaguely alleges that some mail she has sent to her spouse has gone missing. She does not specify the date of any piece of mail she sent.
>
> As the processor of all non-privileged inmate mail, Smart handles thousands of mail items. The few mail pieces here are a few needles in a massive haystack. For Smart to investigate and respond to [] Hill's allegations, it needs as many details as possible. But [] Hill has not provided almost any.

Smart Br. at 6 (citation omitted).

> The Pennsylvania Supreme Court has declared:
>
> Pennsylvania is a fact-pleading state. "As a minimum, a pleader must set forth concisely the facts upon which his cause of action is based." *Line Lexington Lumber & Millwork Co*[.]*, Inc. v. P*[*a.*] *Publ*[*'g*] *Corp.*, . . . 301 A.2d 684, 688 ([Pa.] 1973). The complaint must not only apprise the defendant of the claim being asserted, but it must also summarize the essential facts to support the claim. *Landau v. W*[.] *P*[*a.*] *Nat*[*'l*] *Bank*, . . . 282 A.2d 335, 339 ([Pa.] 1971) ("The purpose of [Pennsylvania Rule of Civil Procedure (Rule) 1019, Pa.R.Civ.P. 1019,] is to require the pleader to disclose the 'material facts' sufficient to enable the adverse party to prepare his case.") (citation omitted).
>
> Rule 1019(a) requires that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pa.R.[Civ.]P. 1019(a). "Each cause of action and any special damage related thereto shall be stated

---

[8] On March 29, 2021, the Department filed its Answer and New Matter to the Second Amended Petition without objecting to the Second Amended Petition's alleged insufficient specificity.

11

> in a separate count containing a demand for relief." *Id.*, 1020(a).

*McShea v. City of Phila.*, 995 A.2d 334, 339-40 (Pa. 2010) (citation omitted).

> This Court has explained:
>
> [Rule] 1028(a)(3) permits a preliminary objection based on insufficient specificity of a pleading. To determine if a pleading is sufficiently specific, a court must ascertain whether the facts alleged are sufficiently specific to enable a defendant to prepare his defense. Preliminary objections in the nature of a motion for a more specific pleading raise the sole question of whether the pleading is sufficiently clear to enable the defendant to prepare a defense. Further, in pleading its case, the complaint need not cite evidence but **only those facts necessary for the defendant to prepare a defense**.

*Unified Sportsmen of Pa. v. Pa. Game Comm'n*, 950 A.2d 1120, 1134 (Pa. Cmwlth. 2008) (emphasis added; citation omitted).

Importantly, "[t]he allegations of a *pro se* [petitioner] are held to a less stringent standard than that applied to pleadings filed by attorneys. If a fair reading of the [petition for review] shows that the [petitioner] has pleaded facts that may entitle [her] to relief, the preliminary objections will be overruled." *Danysh v. Dep't of Corr.*, 845 A.2d 260, 262-63 (Pa. Cmwlth. 2004), *aff'd*, 881 A.2d 1263 (Pa. 2005).

> In *Hill I*, this Court stated:
>
> To assert a constitutional violation of the First Amendment right to correspond by mail, a petitioner must allege a "pattern and practice" of mail interference or actual injury. *Jones v. Doe*, 126 A.3d 406, 409 (Pa. Cmwlth. 2015). The United States Court of Appeals for the Third Circuit has held that a "single, isolated interference with [an inmate's] personal mail was insufficient to constitute a First Amendment violation." *Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012). The Court declined to establish a minimum number of mail interferences that would rise to a constitutional violation, but rather found

12

> actual injury is a factual inquiry to be determined on a case-by-case basis. *See Bieregu* . . . .
>
> Here, [Hill] claims she and Inmate [Hill] "correspond regularly," but Inmate [Hill] has not received mail from her "**since September 8, 2018**." [Original Petition], ¶10. [Hill] alludes to a pattern and practice of mail interference, but does not specify the dates of her mailed correspondence or the number of alleged interferences in the petition. As a result, her [Original Petition] lacks sufficient facts that, if true, reflect a pattern and practice of mail interference, or show an actual injury.

*Hill I*, slip op. at 7-8 (emphasis added, footnotes omitted). Hill filed her Original Petition on October 30, 2018. Thus, it appears that the missing mail to which Hill refers was allegedly lost between September 8 and October 30, 2018.

Hill's Second Amended Petition contains the following additional substantive factual allegations:

> 11. Since th[e] [O]riginal [Petition] was filed, there ha[ve] been a number of changes. First, prisoners are now being given the original, of all legal material, that falls neatly into the Department's new practices. Second, they created different mailing addresses for books, legal mail and non-legal mail.
>
> 12. [Hill] used to write to her husband every Monday, Wednesday and Friday until her mail started disappearing. [Inmate Hill] is missing around 38 pieces of mail.
>
> 13. There were photos, drawings by children in the family, announcements of family achievements and occasions, and none of these things can be replaced.

Second Amended Petition at 2-3.

Although sparse, Hill's Second Amended Petition contains sufficient facts necessary for Smart to prepare a defense. Hill alleges in her Second Amended Petition that, following a system-wide lockdown on August 29, 2018, the Department implemented the Mailing Policy and, as a result, since September 8, 2018, and until the

13

day she filed her Original Petition on October 30, 2018, approximately 38 pieces of mail she sent to Inmate Hill, including photos, drawings and other family items, have not been delivered to him.  Hill, thus alleges a "pattern and practice" of mail interference sufficient to assert a constitutional violation of her First Amendment right to correspond by mail.  *Jones*, 126 A.3d at 409 (quoting *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006)).  Accordingly, this Court overrules Smart's second Preliminary Objection.

      For all of the above reasons, this Court overrules Smart's Preliminary Objections.

                                                             */s/ Anne E. Covey*
                                          ANNE E. COVEY, Judge

14

<u>IN THE COMMONWEALTH COURT OF PENNSYLVANIA</u>

| | |
|---|---|
| Donna Hill, | : |
|           Petitioner | : |
| | : |
|       v. | : |
| | : |
| Pennsylvania Dept. of Corrections; Superintendent of SCI Benner and Smart Communications, | :    No. 684 M.D. 2018 |
|           Respondents | : |

<u>O R D E R</u>

AND NOW, this 17th day of February, 2022, Smart Communications' Preliminary Objections to Donna Hill's Second Amended Petition for Review are OVERRULED. Smart Communications is directed to file its answer to the Second Amended Petition for Review within 30 days from the date of this Order.

_____
ANNE E. COVEY, Judge